**OUTTEN & GOLDEN LLP**
Molly A. Brooks
Jalise R. Burt
685 Third Ave., 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAFINIS FILHO, RAQUEL ERNEST, and CHANTEL LYNCH on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**OTG Management, LLC,**<br><br>**Defendant.** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.     OTG Management, LLC ("OTG Management" or "Defendant") is a privately-owned company that owns and operates hundreds of restaurants, bars, and retail stores in airport terminals across North America, including Newark Liberty Airport in Newark, New Jersey; LaGuardia Airport and John F. Kennedy Airport in New York, New York; O'Hare International Airport in Chicago, Illinois; Minneapolis-Saint Paul International Airport in Minneapolis, Minnesota; Toronto Pearson International Airport in Toronto, Ontario, Canada; George Bush Intercontinental Airport in Houston, Texas; Philadelphia International Airport in Philadelphia,

Pennsylvania; Ronald Regan Washington National Airport in Arlington, Virginia; and Orlando International Airport in Orlando, Florida.

2.      Claiming to "reinvent the airport experience"[1] with its recent "terminal refreshes in New York, Chicago, Minneapolis, Orlando, Toronto, and five other markets"[2] OTG Management has built dozens of new airport restaurants and installed iPads in restaurant seats as well as at gates for ordering food with delivery at gate seating.

3.      For example, in recent years, OTG Management partnered with United Airlines on a $120 million "overhaul" of Newark International Airport's Terminal C restaurants,[3] and funded a $30 million redesign of the "dining experiences" at Philadelphia International Airport.[4]

4.      This lawsuit seeks to recover minimum wages, overtime compensation, misappropriated tips, and statutory penalties for Plaintiffs and their similarly situated co-workers – servers, bartenders, and other tipped workers ("Tipped-Workers") who work or have worked at OTG Management nationwide.

5.      Plaintiffs Filho and Ernest (together, the "FLSA Plaintiffs") bring this action on behalf of themselves and Tipped-Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the

---

[1]      OTG, https://www.otgexp.com/ (last visited September 5, 2019).
[2]      Most Innovative Companies: OTG Management, Fast Company, https://www.fastcompany.com/company/otg-management (last visited August 7, 2019).
[3]      Marissa Rothkopf Bates, *Newark Airport's Terminal C Is a Refuge From the Cardboard Pizza Slice*, N.Y. Times, May 20, 2016, at NJ8, https://www.nytimes.com/2016/05/22/nyregion/newark-airports-terminal-c-is-a-refuge-from-the-cardboard-pizza-slice.html?_r=0.
[4]      Linda Loyd, *Philadelphia Airport's tasty Terminal B plan: High-end food with high-tech flair*, The Philadelphia Inquirer (May 18, 2016 12:00 AM), http://www.philly.com/philly/business/transportation/20160518_PHL_s_tasty_Terminal_B_plan__High-end_food_with_high-tech_flair.html.

FLSA by OTG Management that have deprived the FLSA Plaintiffs and Tipped-Workers of their lawfully earned wages.

6.       Plaintiff Dafinis Filho ("Filho" or "the New Jersey Plaintiff") also brings this action on behalf of herself and Tipped-Workers in New Jersey pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey Wage and Hour Law ("NJWL"), N.J.S.A. § 34:11-56a, *et seq*. and the supporting New Jersey Department of Labor and Workforce Development regulations.

7.       Plaintiffs Raquel Ernest and Chantel Lynch ("the New York Plaintiffs") also bring this action on behalf of themselves and Tipped-Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190, *et seq.*, and Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

**THE PARTIES**

**Plaintiffs**

      **Dafinis Filho**

8.       Dafinis Filho ("Filho") is an adult individual who is a resident of North Arlington, New Jersey.

9.       Filho was employed by OTG Management as a server, bartender, and training captain at OTG Management's restaurants and bars, including those branded EONO, Abruzzo Steakhouse, Vanguard, and Proof, among others located at Newark Liberty International Airport ("EWR") in Newark, New Jersey, from in or around November 2014 until approximately February 2017.

10.      OTG Management owned and operated EONO, Abruzzo Steakhouse, Vanguard, and Proof, where Filho worked.

11.    Filho is a covered employee within the meaning of the FLSA and the NJWL.

12.    Filho's written Consent to Join form, pursuant to the FLSA, 29 U.S.C. § 216(b), is attached hereto as **Exhibit A**.

**Raquel Ernest**

13.    Raquel Ernest ("Ernest") is an adult individual who is a resident of Brooklyn, New York.

14.    Ernest was employed by OTG Management as a server and bartender at OTG Management's restaurants and bars, including those branded New York Sports Bar ("NYSB"), Drinks, and O'Neil's, among others located at John F. Kennedy International Airport ("JFK") in Queens, New York, from in or around June 2013 until May 2018.

15.    OTG Management owned and operated NYSB, Drinks, O'Neil's, and the other restaurants and bars at which Ernest worked.

16.    Ernest is a covered employee within the meaning of the FLSA and the NYLL.

17.    Ernest's written Consent to Join form, pursuant to the FLSA, 29 U.S.C. § 216(b), is attached hereto as **Exhibit B**.

**Chantel Lynch**

18.    Chantel Lynch ("Lynch") is an adult individual who is a resident of Brooklyn, New York.

19.    Lynch was employed by OTG Management as a bartender at OTG Management's bars, including Horizon, among others located at JFK in Queens, New York, from in or around December 2013 until May 2015.

20.    OTG Management owned and operated Horizon and the other bars at which Lynch worked.

- 4 -

21.     Lynch is a covered employee within the meaning of the NYLL.

**Defendant**

22.     OTG Management employed Plaintiffs and Tipped-Workers at all relevant times.

23.     During all relevant times, OTG Management has been Plaintiffs' and Tipped-Workers' employer within the meaning of the FLSA and the relevant state wage laws.

24.     OTG Management owned, operated, and/or controlled OTG's restaurants and bars where Plaintiffs worked during the relevant period.

25.     OTG Management maintains offices at 352 Park Avenue South, 10th Floor, New York, NY 10010-1726.

26.     OTG Management is a foreign limited liability company existing under the laws of the state of Delaware and doing business in the state of New York.

27.     At all relevant times, OTG Management maintained control, oversight, and direction over Plaintiffs and Tipped-Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

28.     OTG Management allowed employees to freely transfer between, or be shared by, the various OTG restaurants it operated without retraining such employees.

29.     OTG Management applied the same employment policies, practices, and procedures to all tipped workers at its OTG restaurants, including policies, practices, and procedures with respect to payment of minimum wage and overtime compensation, and the provision of wage notices and wage statements.

30.     Upon information and belief, at all relevant times, OTG Management had an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

32.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy between at least one named Plaintiff and the OTG Management exceeds the sum or value of $75,000.00.

33.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the OTG Management in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

34.     The members of each of the proposed classes are citizens of states different from that of OTG Management.

35.     There are at least 100 members in each of the proposed classes.

36.     OTG Management is subject to personal jurisdiction in New York.

37.     This Court also has jurisdiction over the FLSA Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

38.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

39.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

40.    Plaintiffs Filho and Ernest (together, the "FLSA Plaintiffs") bring the First and Second Causes of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former servers, bartenders, and other tipped workers ("Tipped-Workers") who were employed at restaurants and bars owned, operated, and/or controlled by OTG Management in airports nationwide, for a period of three years prior to the filing of the original Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

41.    At all relevant times, the FLSA Plaintiffs and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to OTG Management's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the FLSA Plaintiffs and the FLSA Collective Members at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of 40 hours per workweek, requiring tipped workers to engage in dual job duties and side work for more than twenty percent of their time at work, and failing to provide proper notice that they would be paid a subminimum wage.  OTG Management also required the FLSA Plaintiffs and FLSA Collective Members to work off-the-clock and without compensation in violation of the FLSA.  The FLSA Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

42.    OTG Management's unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

43.    OTG Management is aware or should have been aware that federal law requires it

to pay employees minimum wage for all the hours they work.

44.     OTG Management is aware or should have been aware that federal law requires it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of 40 per workweek.

45.     OTG Management's unlawful conduct has been widespread, repeated, and consistent.

46.     The First and Second Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

47.     The FLSA Collective Members are readily ascertainable.

48.     For the purpose of notice and other purposes related to this action, the FLSA Collective Members' names and addresses are readily available from OTG Management's records.

## NEW JERSEY CLASS ACTION ALLEGATIONS

49.     Plaintiff Dafinis Filho brings the Third, Fourth, and Fifth causes of action, the New Jersey Wage and Hour Law claims under Rule 23, on behalf of all similarly situated current and former bartenders, servers, and other tipped workers ("Tipped-Workers") employed at restaurants and bars in New Jersey owned, operated, and/or controlled by OTG Management for a period of two years prior to the filing of the original Complaint and the date of final judgment in this matter ("NJ Rule 23 Class").

50.     Excluded from the NJ Rule 23 Class Members are OTG Management, OTG Management's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in OTG Management; the Judge(s) to whom this case is assigned and any member of the Judges'

immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the NJ Rule 23 Class.

51.     The members of the NJ Rule 23 Class ("NJ Rule 23 Class Members") are readily ascertainable.  The number and identity of the NJ Rule 23 Class Members are determinable from the OTG Management's records.  The hours assigned and worked, the positions held, and the rates of pay for each NJ Rule 23 Class Member are also determinable from OTG Management's records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from OTG Management.  Notice can be provided by means permissible under Rule 23.

52.     The NJ Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

53.     There are more than 100 NJ Rule 23 Class Members.

54.     Plaintiff Filho's claims are typical of those claims which could be alleged by any NJ Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each NJ Rule 23 Class Member in separate actions.

55.     All the NJ Rule 23 Class Members were subject to the same corporate practices of OTG Management, as alleged herein, of failing to pay minimum wages, failing to pay overtime, failing to pay for off-the-clock work, failure to pay uniform expenses, and failing to properly distribute tips.

56.     Plaintiff Filho and the NJ Rule 23 Class Members have all sustained similar types of damages as a result of OTG Management's failure to comply with the New Jersey Wage Laws.

57.     Plaintiff Filho and the NJ Rule 23 Class Members have all been injured in that

they have been uncompensated or under-compensated due to OTG Management's common policies, practices, and patterns of conduct. OTG Management's corporate-wide policies and practices affected all NJ Rule 23 Class Members similarly, and OTG Management benefited from the same type of unfair and/or wrongful acts as to each of the NJ Rule 23 Class Members.

58.     Plaintiff Filho and other NJ Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

59.     Plaintiff Filho is able to fairly and adequately protect the interests of the NJ Rule 23 Class Members and has no interests antagonistic to the NJ Rule 23 Class Members.

60.     Plaintiff Filho is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

61.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual NJ Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NJ Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources;

however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual NJ Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual NJ Rule 23 Class Members, establishing incompatible standards of conduct for OTG Management and resulting in the impairment of the NJ Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

62.    Upon information and belief, OTG Management and other employers throughout the state violate the New Jersey Wage Laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

63.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

64.    Common questions of law and fact exist as to the NJ Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether OTG Management violated New Jersey Wage and Hour Law;

(b)    whether OTG Management paid Plaintiff Filho and the NJ Rule 23 Class at the proper minimum wage rate for all hours worked;

(c)    whether OTG Management maintained a policy or practice of requiring, suffering,

or permitting Plaintiff Filho and the NJ Rule 23 Class Members to work off-the-clock without proper compensation;

(d)      whether OTG Management misappropriated tips from Plaintiff Filho and the NJ Rule 23 Class Members by retaining tips and/or service charges paid by customers that were intended for the New Jersey Plaintiff and the NJ Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the NJ Rule 23 Class Members;

(e)      whether OTG Management failed to keep true and accurate time and pay records for all hours worked by Plaintiff Filho and the NJ Rule 23 Class Members, and other records; and

(f)      the nature and extent of class-wide injury and the measure of damages for those injuries.

## <u>NEW YORK CLASS ACTION ALLEGATIONS</u>

1.      The New York Plaintiffs bring the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims under Rule 23, on behalf of themselves and all similarly situated current and former servers, bartenders, and other tipped workers ("Tipped-Workers") who were paid a sub-minimum, tipped-credit wage employed at restaurants or bars in airports in New York that are owned, operated, and/or controlled by OTG Management for a period of six years prior to the filing of the original Complaint and the date of final judgment in this matter ("NY Rule 23 Class").

2.      Excluded from the NY Rule 23 Class Members are OTG Management, OTG Management's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in OTG Management; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the NY Rule 23 Class.

3.      The members of the NY Rule 23 Class ("NY Rule 23 Class Members") are readily ascertainable.  The number and identity of the NY Rule 23 Class Members are determinable from the OTG Management's records.  The hours assigned and worked, the positions held, and the rates of pay for each NY Rule 23 Class Member are also determinable from OTG Management's records.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from OTG Management.  Notice can be provided by means permissible under Rule 23.

4.      The NY Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

5.      There are more than 100 NY Rule 23 Class Members.

6.      The New York Plaintiffs' claims are typical of those claims which could be alleged by any NY Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each NY Rule 23 Class Member in separate actions.

7.      All the NY Rule 23 Class Members were subject to the same corporate practices of OTG Management, as alleged herein, of failing to pay minimum wages, failing to pay overtime, failing to pay for off-the-clock work, failing to provide proper wage statements, and failing to provide proper wage and hour notices.

8.      The New York Plaintiffs and the NY Rule 23 Class Members have all sustained similar types of damages as a result of OTG Management's failure to comply with the NYLL.

9.      The New York Plaintiffs and the NY Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to OTG Management's common policies, practices, and patterns of conduct.  OTG Management's corporate-wide policies and practices affected all NY Rule 23 Class Members similarly, and OTG Management

benefited from the same type of unfair and/or wrongful acts as to each of the NY Rule 23 Class Members.

10.    The New York Plaintiffs and other NY Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

11.    The New York Plaintiffs are able to fairly and adequately protect the interests of the NY Rule 23 Class Members and have no interests antagonistic to the NY Rule 23 Class Members.

12.    The New York Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

13.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual NY Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NY Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

The prosecution of separate actions by individual NY Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual NY Rule 23 Class Members, establishing incompatible standards of conduct for OTG Management and resulting in the impairment of the NY Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

14.     Upon information and belief, OTG Management and other employers throughout the state violate the NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

15.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

16.     Common questions of law and fact exist as to the NY Rule 23 Class that predominate over any questions only affecting the New York Plaintiffs and the NY Rule 23 Class Members individually and include, but are not limited to, the following:

(a)     whether OTG Management violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

(b)     whether OTG Management paid the New York Plaintiffs and the NY Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(c)     whether OTG Management had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to the New York Plaintiffs and the NY Rule 23 Class Members;

(d)     what notice is required for OTG Management to take a tip credit;

(e)     at what common rate, or rates subject to common methods of calculation, OTG Management was required to pay the New York Plaintiffs and the NY Rule 23 Class Members for their work;

(f)     whether OTG Management has a policy of requiring tipped employees to engage in side work for two hours or more per day and/or for more than twenty percent of their time at work;

(h)     whether OTG Management properly compensated the New York Plaintiffs and the NY Rule 23 Class Members for hours worked in excess of 40 hours per workweek;

(i)     whether OTG Management maintained a policy or practice of requiring, suffering, or permitting the New York Plaintiffs and the NY Rule 23 Class Members to work off-the-clock without proper compensation;

(j)     whether OTG Management misappropriated tips from the New York Plaintiffs and the NY Rule 23 Class Members by retaining tips and/or service charges paid by customers that were intended for the New York Plaintiffs and the NY Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiffs and the NY Rule 23 Class Members;

(k)     whether OTG Management failed to keep true and accurate time and pay records for all hours worked by the New York Plaintiffs and the NY Rule 23 Class Members, and other records;

(l)     whether OTG Management failed to furnish the New York Plaintiffs and the NY Rule 23 Class Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the Wage Theft Prevention Act;

(m)     whether OTG Management failed to furnish the New York Plaintiffs and the NY Rule 23 Class Members with an accurate annual notice, as required by the Wage Theft Prevention Act; and

(n)     the nature and extent of class-wide injury and the measure of damages for those injuries.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

17.    At all times relevant, OTG Management paid Tipped-Workers at a reduced minimum wage rate.

18.    Instead of paying Tipped-Workers the full minimum wage, OTG Management took a "tip credit" against the minimum wage.

19.    OTG Management did not satisfy the strict requirements under the FLSA, NYLL, and the NJWL that would allow it to take a "tip credit" against its minimum wage obligations.

20.    Pursuant to its policy and practice, OTG Management failed to provide Tipped-Workers with the statutorily required notice that OTG Management intended to pay them a reduced minimum wage rate.

21.    Pursuant to its policy and practice, OTG Management required Tipped-Workers to perform non-tip producing side work ***unrelated*** to their tipped occupation.  As a result, Tipped-Workers are engaged in a dual occupation while being compensated at the tip credit rate.

22.    Pursuant to its policy and practice, OTG Management also required Tipped-Workers to spend a substantial amount of time, more than 20 percent, performing non-tip-producing side work ***related*** to the employees' tipped occupation.

23.    Specifically, OTG Management required Tipped-Workers to spend a substantial amount of time performing non-tip-producing "side work" including, but not limited to, (1) washing silverware, glassware, and dishes; (2) wiping tables and bar tops; (3) slicing and preparing garnishes for the bar; (4) restocking server stations and bars; (5) rolling silverware; (6) setting tables with paper placemats, knives, forks, and napkins; (7) pouring condiments into containers; (8) brewing coffee; (9) cleaning and breaking down the coffee station and soda machines; (10) cleaning rubber mats kept behind the bar; (11) draining and cleaning ice bins;

(12) keeping inventory of liquor and soda; (13) wiping down iPads on which customers placed orders; and (14) sweeping, mopping, and scrub-brushing the floors ("side work").

24.    OTG Management typically scheduled Tipped-Workers to work opening, mid-shift, and closing shifts.

25.    OTG Management required Tipped-Workers to perform side work before the restaurant opened, at the end of their shifts, and/or after the restaurant closed and customers had left.

26.    For instance, OTG Management typically required Tipped-Workers to arrive at least fifteen minutes to an hour prior to the start of customer service and to stay at work approximately one hour after the restaurant or bar closed.

27.    OTG management also required Tipped-Workers to stay until the departure of the last plane in the terminal, often several hours after serving their last customer.

28.    During these periods, OTG Management required Tipped-Workers to perform side work.

29.    The side work and dual job duties described above are not specific to particular customers, tables, or sections, but are performed in mass quantities for the entire shift or for future shifts.

30.    OTG Management did not track the time that Tipped-Workers spent performing non-tipped side work or dual job duties.

31.    OTG Management also maintained a policy and practice whereby Tipped-Workers were encouraged and/or required to work off-the-clock.

32.    For example, managers clocked Plaintiffs and Tipped-Workers out for lunch breaks and other breaks that they did not take.

33.    Managers often punched Plaintiffs and Tipped-Workers out after their scheduled shift was over even if managers required Plaintiffs and Tipped-Workers to continue working to reduce the recorded number of hours worked.

34.    Although Plaintiffs and Tipped-Workers continued to perform work for OTG Management after their managers clocked them out, they did so off-the-clock and without compensation.

35.    Some of the work that Plaintiffs and Tipped-Workers performed off-the-clock was in excess of 40 hours in a workweek.

36.    While working off-the-clock at the end of their shifts, Plaintiffs and Tipped-Workers engaged in non-tip producing side work, as described above in paragraph 87.

37.    On information and belief, when managers did not assign servers tables in the OTG system, Plaintiffs and Tipped-Workers did not receive tips that they earned from those tables and instead, those tips went to OTG Management.

## PLAINTIFFS' FACTUAL ALLEGATIONS

38.    Consistent with their policies and patterns or practices as described herein, OTG Management harmed Plaintiffs, individually, as follows:

**Dafinis Filho**

39.    OTG Management did not pay Filho the proper wages for all the time that she was suffered or permitted to work each workweek.

40.    Throughout the duration of her employment at OTG, Filho received paychecks from OTG Management that did not properly record or compensate her for all the hours that she worked.

41.     OTG Management paid Filho at the New Jersey tipped minimum wage rate when she should have been paid at the full minimum wage rate.

42.     OTG Management did not provide Filho with proper notification of the tipped minimum wage or tip credit provisions of the FLSA or the NJWL, or their intent to apply a tip credit to her wages.

43.     While paying her at the sub-minimum, tip-credit wage, OTG Management required Plaintiff Filho to spend over 20 percent of her work time during bartending and serving shifts performing work that had no customer interaction and that did not generate tips ("non-tipped duties").

44.     Plaintiff Filho typically spent up to approximately 25 to 45 percent of her work time performing non-tipped duties as a bartender and server.

45.     When Plaintiff Filho worked opening shifts as a bartender at OTG, OTG Management required her to perform opening duties, including but not limited to: cutting fruit and vegetables for drink garnishes such as lemons, limes, oranges, celery, jalapenos; and mint leaves; filling fruit compartments on the bar with drink garnishes such as onions, olives, cherries, bleu cheese, bacon strips, and grilled shrimp; pour juices and milk into carafes and place them at the bar; retrieving ice from another restaurant in the terminal and filling ice bin for the bar; placing hot sauce bottles, steak sauce on the bar; filling ramekins with ketchup; receiving the morning delivery of beer, wine, and liquor, unpacking the boxes, and stocking the refrigerator and shelves;  place bottles of water in the refrigerator; polishing glassware and coffee mugs and placing them on the shelves behind the bar; polishing forks and placing them in the silverware tray; filling sugar caddies and placing them on the bar; brewing coffee at another restaurant in the terminal; stocking the coffee station with coffee, coffee mugs, tea kettles, sugar caddies, and

spoons; setting tables for fifteen seats at the bar with knives, forks, napkins, and water glasses; wiping tablets in which customers input their orders; filling a bucket with sanitizer solution. Plaintiff Filho spent approximately two hours completing these tasks.

46.    When Plaintiff Filho worked opening shifts as a server at OTG, OTG Management required her to arrive at the restaurant or bar approximately on hour before it opened and perform opening duties, including but not limited to: unplug iPads from charging cart, placing them at each seat, programming them for each seat number, and locking them to a cable; brewing coffee at another restaurant in the terminal and bringing it back to the restaurant; retrieving milk, cream, and juices from basement and stocking them in the restaurant's refrigerator; polishing glassware and coffee mugs; polishing forks and placing them in the silverware tray; filling sugar caddies and placing them on the tables; setting tables with knives, forks, napkins, water glasses, coffee mugs, salt, pepper, and flowers; filling ramekins with ketchup; and stocking the coffee station with coffee, coffee mugs, tea kettles, sugar caddies, and spoons.  Plaintiff Filho spent approximately two hours completing these tasks.

47.    Before the end of her morning bartender shifts, for approximately 20 minutes, OTG required Plaintiff Filho to perform shift change duties, including but not limited to: bringing coffee and milk carafes to the kitchen; putting coffee mugs, sugar caddies, and spoons away in a station cart or cabinet; stocking a server station with water glasses, silverware trays, table turners, and napkins; filling ramekins with ketchup, mayonnaise, and mustard; setting seats at bar with knives, forks, napkins, water glasses, salt, pepper, and flowers; wiping down the bar countertop; wiping down iPads; and sweeping floors.

48.    Before the end of her morning server shifts, for approximately thirty minutes, OTG required Plaintiff Filho to perform shift change duties, including but not limited to:

bringing coffee and milk carafes to the kitchen; putting coffee mugs, sugar caddies, and spoons away in a station cart or cabinet; cutting bread and placing it in a basket; stocking a server station with water glasses, silverware trays, table turners, and napkins; filling bottles with olive oil and placing at server station; filling ramekins with ketchup, mayonnaise, and mustard; setting tables with knives, forks, napkins, water glasses, salt, pepper, and flowers; wiping down tables; wiping down iPads; and sweeping floors.

49.    Before the end of her mid-shifts as a server, for approximately 40 to 45 minutes, OTG Management required Plaintiff Filho to perform shift change duties, including but not limited to: washing, polishing, and restocking glassware and forks, restocking knives in silverware tray; wiping down tables; wiping down iPads; fill salt and pepper; sweep under table section; clean bread station; and fold linen napkins.

50.    During her employment, when Plaintiff Filho worked evening bartender shifts as a closer, OTG Management required her to perform closing duties, including but not limited to: sweeping the floor; moping the floor; wiping down iPads; unlocking iPads and plugging them into charging cart; taking out the trash; washing glassware and silverware; wiping down bar top, barstool; using aluminum cleaner on footrest at bar; cleaning the dishwasher, emptying sanitizer buckers; melting ice; emptying and cleaning the ice bin; taking inventory of liquor, wine, and beer; wiping down liquor and wine bottles; wrapping liquor and wine bottles in plastic; putting liquor, wine, and beer away in refrigerator and shelves; cleaning out espresso coffee machine; cleaning sink; and removing flowers from bar top and placing them into refrigerator; stock silverware tray with forks, napkins, and knives.  Plaintiff Ernest spent approximately one hour and a half to two hours completing these closing tasks.

51.     During her employment, when Plaintiff Filho worked evening server shifts as a closer, OTG Management required her to perform closing duties, including but not limited to: sweeping the floor; moping the floor; wiping down iPads; unlocking iPads and plugging them into charging cart; taking out the trash; washing glassware and silverware; wiping down tables, countertops, chairs, and barstools; and removing flowers from tables and placing them into refrigerator.  Plaintiff Ernest spent approximately one to one and a half hours completing these closing tasks.

52.     During bartending shifts, Plaintiff Filho was required to perform duties in between serving customers, for approximately twenty-five to thirty minutes, including but not limited to: washing glasses and forks; polishing glasses and forks; resetting the seats at the bar with knives, forks, napkins, and water glasses; retrieving liquor from other restaurants in the terminal; restocking liquor; refilling the ice bin; taking out the trash; changing the beer kegs; brewing tea and coffee; changing the soda for the soda machine; cleaning the bar tops; replenishing straws.

53.     During serving shifts, Plaintiff Filho was required to perform duties in between serving customers, for approximately 30-40 minutes minutes, including but not limited to: polishing glasses and forks; folding napkins; resetting the tables with knives, forks, napkins, and water glasses; refilling the ice bin at the bar; brewing tea and coffee; sweeping floors in my section; and cutting bread.

54.     As a bartender, Plaintiff Filho performed required deep cleaning duties that varied including but not limited to: wipe down walls, shelves, and barstools, cleaning the footrests at the bar with aluminium cleaner; deck brushing the floor; cleaning the drains behind the bar; mopping; cleaning behind the refrigerators; cleaning the garbage can.

55.     As a server Plaintiff Filho performed required deep cleaning duties that varied including but not limited to: cleaning between booths; wiping down table and chair legs; deck brushing; mopping floors; removing gum from tables; cleaning windows; dusting light fixtures; clean the salt and pepper shakers.

56.     OTG Management did not track the time that Plaintiff Filho spent performing non-tipped side work or dual job duties.

57.     Although Plaintiff Filho should have been paid the full minimum wage, OTG Management paid her an hourly rate that fell below the minimum wage.

58.     OTG Management frequently required Plaintiff Filho to perform work off-the-clock without compensation.

59.     For instance, OTG Management clocked Plaintiff Filho out for breaks she did not take.

60.     OTG Management compensated Plaintiff Filho only for the time Plaintiff Filho punched in.

61.     During her employment, Plaintiff Filho generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays: From approximately November 2014 until approximately May 2015, three opening shifts per week starting at approximately 4:00 a.m. and ending at approximately 12:00 p.m., and three shifts a week either during mid-shift starting at approximately 12:00 p.m. and ending at approximately 8:00 p.m. or the closing shift starting at approximately 4:00 p.m. and ending between 10:00 p.m. and 1:00 a.m. From approximately June 2015 until December 2015, two opening shifts per week starting at approximately 4:00 a.m. and ending at approximately 12:00 p.m., and three shifts a week either during mid-shift starting at approximately 12:00 p.m. and ending at approximately

8:00p.m. or the closing shift starting at approximately 4:00 p.m. and ending between 10:00 p.m. and 1:00 a.m. From January 2016 until approximately February 2016, two opening shifts per week starting at approximately 4:00 a.m. and ending at approximately 12:00 p.m., one mid-shift per week starting at approximately 12:00 p.m. and ending at approximately 8:00 p.m., and two closing shifts per week starting at approximately 4:00 p.m. and ending between 10:00 p.m. and 1:00 a.m. From approximately March 2016 to approximately February 2017, three opening shifts per week starting at approximately 6:00 a.m. and ending at approximately 3:00 p.m., two mid-shifts per month starting at approximately 12:00 p.m. and ending at approximately 8:00 p.m., and two closing shifts per week starting at approximately 3:00 p.m. and ending between 10:00 p.m. and 1:00 a.m.

62.    OTG Management did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff Filho.

63.    OTG Management failed to furnish Plaintiff Filho with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, or an accurate annual notice.

**Raquel Ernest**

64.    OTG Management did not pay Ernest the proper wages for all the time that she was suffered or permitted to work each workweek.

65.    Throughout the duration of her employment at OTG, Ernest received paychecks from OTG Management that did not properly record or compensate her for all the hours that she worked.

66.    OTG Management paid Ernest at the New York tipped minimum wage rate when she should have been paid at the full minimum wage rate.

67.    OTG Management did not provide Ernest with proper notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

68.    While paying her at the sub-minimum, tip-credit wage, OTG Management required Plaintiff Ernest to spend over 20 percent of her work time during bartending and serving shifts performing work that had no customer interaction and that did not generate tips ("non-tipped duties").

69.    Plaintiff Ernest typically spent up to approximately 65 to 70 percent of her work time performing non-tipped duties as a bartender and server.

70.    When Plaintiff Ernest worked opening shifts as a bartender and server at OTG, OTG Management required her to arrive at the restaurant or bar approximately one hour before it opened and perform opening duties, including but not limited to: refilling ice for the bar; cutting up lemons and limes; unrolling mats and placing them behind the bar; turning on lights and televisions; placing ketchup, mustard, salt, pepper, bottles of sparkling and flat water, and a sugar caddy on each table; removing stoppers from beer taps; pouring dressings into bottles and placing them on ice at the expeditor station; setting up the expeditor station with syrups, butters, jelly, cream cheese, lettuce, tomatoes; brewing the coffee; setting tables with knives, forks, napkins, and paper placemats; wiping the computers behind the bars; filling a bucket with sanitizer solution; screwing nozzles into soda machines; retrieving ice and delivering it to different restaurants and bars; cutting lemons, limes, oranges, and cucumbers and preparing olives and jalapeños for drink garnishes; placing bags into trash cans; restocking the server station with napkins, silverware, tea bags, and table turners; and restocking the refrigerator with beers.  Plaintiff Ernest spent approximately one hour completing these tasks.

71.     Before the end of her morning bartender shifts, for approximately five and a half hours, OTG required Plaintiff Ernest to perform shift change duties, including but not limited to: cleaning out the refrigerator; restocking the coffee station with filters; brewing coffee; taking syrups, butters, jelly, and cream cheese from the expeditor station to the back of the house; stocking the expeditor station with dressings, lettuce, tomatoes, jalapeños, salsa, and guacamole; pouring chips into a container at the expeditor station; pouring dressings into bottles and placing them on ice at the expeditor station; retrieving beers, wines, and juices from one part of the terminal to the bar and restocking the refrigerator; restocking liquor bottles and wine bottles; washing silverware and glasses by hand; and changing the sanitizer solution in the sanitizer sink.

72.     When Plaintiff Ernest worked mid-shifts, OTG Management required her to perform shift change duties at the start of her shift including, but not limited to: gathering and restocking beer bottles, beer kegs, wines bottles, and liquor bottles and cutting lemons, limes, and other fruits for drink garnishes.  Plaintiff Ernest spent 45 to 60 minutes on these duties when she worked at Drinks or O'Neil's because she had to gather the items for restocking from NYSB. Plaintiff Ernest spent approximately 30 minutes on these duties when she worked at NYSB.

73.     Before the end of her mid-shifts, for approximately 50 to 60 minutes, OTG Management required Plaintiff Ernest to perform shift change duties, including but not limited to: sweeping; cleaning, reorganizing, and restocking the refrigerator; washing silverware; rolling silverware; and wiping down the bar top.

74.     During her employment, when Plaintiff Ernest worked evening bartender shifts as a closer, OTG Management required her to perform closing duties, including but not limited to: moving mats from behind the bar; sweeping and moping floors; wiping down chairs, tables, and bar top; placing chairs on the top of bars and tables; pouring bleach down a drain; wiping down

garbage pails and the wall behind garbage pails; handwashing silverware and glasses; rolling silverware; retrieving caddies with ketchup and mustard from tables and placing them in a cabinet behind the bar; taking inventory of liquor and beers; wiping liquor bottles; breaking down the soda machine and cleaning nozzles; removing table caddies from tables; draining and cleaning the ice bin; and placing stoppers in the beer taps. Plaintiff Ernest spent approximately one hour completing these closing tasks.

75.     During bartending shifts, Plaintiff Ernest was required to perform duties in between serving customers, for approximately five hours, including but not limited to: cutting garnishes for drinks; changing the beer kegs; brewing tea and coffee; changing the soda for the soda machine; cleaning the bar tops; obtaining napkins, table turners, straws, stirrers, juices, liquor, wine, and beer from another location in the terminal and bringing them to the bar to restock the server station, bar, and refrigerator; and washing glasses and silverware.

76.     As a bartender, approximately three times a month and occasionally in preparation for inspections, Plaintiff Ernest performed required deep cleaning duties that varied including but not limited to: cleaning booths; removing gum from tables; cleaning walls; cleaning the garbage can; cleaning windows; dusting light fixtures; cleaning drains; cleaning the refrigerator; cleaning mats behind the bar; and scrubbing the drain with bleach.

77.     OTG Management did not track the time that Plaintiff Ernest spent performing non-tipped side work or dual job duties.

78.     Although Plaintiff Ernest should have been paid the full minimum wage, OTG Management paid her an hourly rate that fell below the minimum wage.

79.     OTG Management frequently required Plaintiff Ernest to perform work off-the-clock without compensation.

80.    For instance, OTG Management clocked Plaintiff Ernest out for breaks and lunches she did not take.

81.    OTG Management often clocked Plaintiff Ernest out when her scheduled shift was over, despite requiring her to continue working off-the-clock. For example, when Plaintiff Ernest worked as a closer, her managers punched her out at the conclusion of her scheduled shift so that the additional hours Plaintiff Ernest spent performing side work were off-the-clock.

82.    OTG Management compensated Plaintiff Ernest only for the time Plaintiff Ernest punched in.

83.    During her employment, Plaintiff Ernest generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays: between June 2013 until approximately July 2014, two opening shifts per week starting at approximately 5:00 a.m. and ending at approximately 12:00 p.m., one mid-shift per week starting at approximately 11:00 a.m. or 12:00 p.m. and ending at approximately 6:00 p.m. or 7:00 p.m., and one to two closing shifts per week starting at approximately 1:00 p.m. or 2:00 p.m. and ending between 10:30 p.m. and 1:00 a.m.; and between approximately August 2014 until May 2018, four closing shifts per week starting at starting at approximately 1:00 p.m. or 2:00 p.m. and ending between 10:30 p.m. and 1:00 a.m.

84.    OTG Management did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff Ernest.

85.    OTG Management failed to furnish Plaintiff Ernest with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, or an accurate annual notice.

**Chantel Lynch**

86.     OTG Management did not pay Plaintiff Lynch the proper wages for all the time that she was suffered or permitted to work each workweek.

87.     Throughout the duration of her employment at OTG, Plaintiff Lynch received paychecks from OTG Management that did not properly record or compensate her for all the hours that she worked.

88.     OTG Management paid Plaintiff Lynch at the New York tipped minimum wage rate when she should have been paid at the full minimum wage for her work as a bartender.

89.     For the period when Plaintiff Lynch worked for OTG Management as a bartender, OTG Management did not provide Lynch with notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to her wages.

90.     While paying her at the sub-minimum, tip-credit wage, OTG Management required Plaintiff Lynch to spend over 20 percent of her work time during bartending shifts performing work that had no customer interaction and that did not generate tips.

91.     Plaintiff Lynch typically spent up to approximately 30 to 65 percent of her work time performing such duties as a bartender.

92.     When Plaintiff Lynch worked opening shifts as a bartender at OTG, OTG required her to arrive at the restaurant approximately fifteen minutes before it opened and perform opening duties, including but not limited to: wiping down chairs, bar tops, and tables; obtaining flowers from another restaurant in the terminal, bringing them back to the restaurant, and creating a bouquet; setting tables with plastic mats, utensils, cups, napkins, and flower bouquets;  restocking table caddies with menus, salt, sugar, and pepper and placing them on tables; washing dishes by hand; sweeping the floors; filling the bar refrigerator with ice;

obtaining fruits, snacks, drinks, dressings, and pastries from other restaurants in the terminal and bringing them back to the restaurant; setting up the liquor display; filling up sinks and buckets with sanitizer solution and soap and water; screwing nozzles into the soda machines; cutting up fruits for drink garnishes and fruit salads; turning on televisions; removing stoppers from beer taps; placing pourers on liquor bottles; changing keg and soda machines; pouring dressings into containers and placing them in the refrigerator; brewing coffee; pouring milk into cannisters; placing pastries into the pastry display; restocking beer in the refrigerator; restocking utensil containers in the cupboards; and restocking napkins behind the bar.  Plaintiff Lynch spent approximately one hour and thirty minutes on opening duties.

93.     Before the end of her morning bartending shifts, OTG Management required Plaintiff Lynch to perform shift change duties, including but not limited to: cutting up fruits for drink garnishes; washing dishes, utensils, and glasses; restocking pastries; sweeping behind and around the bar; wiping down the countertops; and restocking milk, sugar, silverware, and glasses.  Plaintiff Lynch spent approximately one hour on these shift change duties.

94.     When Plaintiff Lynch worked mid-shifts, for approximately 60 to 90 minutes, OTG required her to perform shift change duties at the start of her shift including, but not limited to: wiping down chairs, bar tops, and tables; re-setting tables with plastic mats, utensils, cups, and napkins; restocking table caddies with menus, salt, sugar, and pepper and placing them on tables; sweeping the floors; filling the bar refrigerator with ice; obtaining fruits, snacks, drinks, dressings, and pastries from other restaurants in the terminal and bringing them back to the restaurant; re-setting the liquor display; filling up sinks and buckets with sanitizer solution and soap and water; cutting up fruits for drink garnishes and fruit salads; placing pourers on liquor bottles; changing keg and soda machines; pouring dressings into containers and placing them in

the refrigerator; placing pastries into the pastry display; emptying coffee carafes; washing milk out of cannisters; restocking beer in the refrigerator; restocking utensil containers in the cupboards; and restocking napkins behind the bar.

95.    Before the end of her mid-shifts, for approximately 45 to 60 minutes, OTG Management required Plaintiff Lynch to perform shift change duties, including but not limited to: washing dishes, utensils, and glasses; sweeping behind and around the bar; wiping down the countertops; wiping chair and table legs; pulling booths away from the wall and cleaning the booths; restocking pastries into the pastry display; and cutting up fruit for drink garnishes.

96.    During her employment, when Plaintiff Lynch worked evening bartender shifts as a closer, OTG Management required her to perform closing duties, including but not limited to: removing placemats, napkins, forks, glasses, menus, and flowers from countertops and tables; storing and labeling fruit garnishes and drinks; throwing away expired fruit; washing dishes, utensils, and glasses; removing nozzles from soda dispensers and placing them in sanitizer and soap; removing pourers from wine and liquor bottles and placing them in sanitizer and soap; emptying an ice cooler; throwing away pastries and cleaning the pastry display; sweeping behind and around the bar; wiping down the countertops; stocking shelves with glassware; taking inventory of the liquor bottles, taking them down from the shelves, stocking them in cages, and transporting the cages to another location in the terminal; emptying coffee carafes; washing milk out of cannisters; turning off and wiping down the television; wiping chair and table legs; and pulling booths away from walls and cleaning the booths.  Plaintiff Lynch spent approximately one hour and thirty minutes completing these closing tasks.

97.    During bartending shifts, OTG required Plaintiff Lynch to perform duties in between serving customers for approximately one hour, including, but not limited to: delivering

prizes from the CIBO market to customers who won games played on the iPad; wiping tables and countertops; resetting tables with placemats, menus, utensils, and glassware; washing dishes; restocking the pastry display; and sweeping.

98.     Also as a bartender, OTG Management required Plaintiff Lynch to perform required deep cleaning duties that varied, including but not limited to: cleaning out the refrigerator every Sunday; cleaning underneath the sinks; cleaning behind the refrigerator and storage spaces; scrapping gum from underneath the tables; dusting the cupboards and televisions; cleaning the storage containers twice weekly; and refilling the salt and pepper shakers weekly.

99.     OTG Management did not track the time that Plaintiff Lynch spent performing non-tipped side work or dual job duties.

100.     Although Plaintiff Lynch should have been paid the full minimum wage, OTG Management paid her an hourly rate that fell below the minimum wage.

101.     During her employment, Plaintiff Lynch generally worked the following scheduled hours unless she missed time for vacation, sick days, or holidays: four to five opening and mid shifts per week.  The opening shifts typically started at 4:45 a.m. and ended at or around 10:00 a.m. or 11:00 a.m. and the mid-shifts typically started around 10:00 a.m. or 11:00 a.m. and ended at some point between 2:00 p.m. to 4:00 p.m.   On occasion, Plaintiff Lynch worked a closing shift which typically started at or around 4:00 p.m. or 5:00 p.m. and ended between 12:00 a.m. and 1:00 a.m.

102.     OTG Management did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff Lynch.

103.    OTG Management failed to furnish Plaintiff Lynch with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, or an accurate annual notice.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of the FLSA Plaintiffs and the FLSA Collective)**

104.    The FLSA Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

105.    OTG Management has engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class and Collective Action Complaint.

106.    At all relevant times, OTG Management has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, OTG Management has employed "employee[s]," including the FLSA Plaintiffs and the FLSA Collective Members.

107.    OTG Management was required to pay directly to the FLSA Plaintiffs and the FLSA Collective Members the applicable state minimum wage rates for all hours worked.

108.    OTG Management failed to pay the FLSA Plaintiffs and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

109.    OTG Management was not eligible to avail itself of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201, *et seq.*, because OTG Management failed to inform the FLSA Plaintiffs and the FLSA Collective Members of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

110.    OTG Management also required the FLSA Plaintiffs and the FLSA Collective Members to perform a substantial amount of dual job duties and side work in excess of twenty percent of their work time.  During these periods, OTG Management compensated the FLSA Plaintiffs and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201, *et seq.*

111.    OTG Management also regularly required the FLSA Plaintiffs and the FLSA Collective Members to perform non-tipped side work ***unrelated*** to their tipped occupation such as sweeping floors, mopping floors, and washing dishes.  During these periods, OTG Management compensated the FLSA Plaintiffs and the FLSA Collective Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. §§ 201, *et seq.*

112.    Further, OTG Management required the FLSA Plaintiffs and the FLSA Collective Members to perform work off-the-clock and without compensation, depriving them of the minimum wage.

113.    OTG Management's unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional.  OTG Management was aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful.  OTG Management has not made a good faith effort to comply with the FLSA with respect to the compensation of the FLSA Plaintiffs and the FLSA Collective Members.

114.    Because OTG Management's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201, *et seq.*

115.    As a result of OTG Management's willful violations of the FLSA, the FLSA Plaintiffs and the FLSA Collective Members have suffered damages by being denied minimum

wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of the FLSA Plaintiffs and the FLSA Collective)

116.    The FLSA Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

117.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to OTG Management and protect the FLSA Plaintiffs and the FLSA Collective Members.

118.    The FLSA Plaintiffs and the FLSA Collective Members worked in excess of 40 hours during some workweeks in the relevant period.

119.    OTG Management willfully failed to pay the FLSA Plaintiffs and the FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.  OTG Management's unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional.  OTG Management was aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful.  OTG Management has not made a good faith effort to comply with the FLSA with respect to the compensation of the FLSA Plaintiffs and the FLSA Collective Members.

120.    Because OTG Management's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201, *et seq.*

121.    As a result of OTG Management's violations of the FLSA, the FLSA Plaintiffs and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201, *et seq.*

### THIRD CAUSE OF ACTION
**New Jersey Wage Law – Minimum Wage**
**(Brought on behalf of Plaintiff Filho and the NJ Rule 23 Class)**

1.    Plaintiff Filho, on behalf of herself and the NJ Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

2.    OTG Management has engaged in a widespread pattern, policy, and practice of violating the NJWL, as detailed in this Class and Collective Action Complaint.

3.    At all times relevant, Plaintiff Filho and the NJ Rule 23 Class Members have been employees of OTG Management, and OTG Management has been an employer of Plaintiff Filho and the NJ Rule 23 Class Members within the meaning of the N.J.S.A § 34:11-56a, et seq., and the supporting New Jersey State Department of Labor Regulations.

4.    At all times relevant, Plaintiff Filho and the NJ Rule 23 Class Members have been covered by the NJWL.

5.    The wage provisions of N.J.S.A § 34:11-56a, et seq., and the supporting New Jersey State Department of Labor Regulations apply to OTG Management and protect Plaintiff Filho and the NJ Rule 23 Class Members.

6.    OTG Management failed to pay Plaintiff Filho and the NJ Rule 23 Class Members the minimum hourly wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

7.      Further, OTG Management required Plaintiff Filho and the NJ Rule 23 Class Members to perform work off-the-clock and without compensation, depriving them of the minimum wage.

8.      OTG Management was required to pay Plaintiff Filho and the NJ Rule 23 Class Members the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from January 1, 2013 to December 31, 2013; (b) $8.25 per hour for all hours worked from January 1, 2014 to December 31, 2014; (c) $8.38 per hour for all hours worked from January 1, 2015 to December 31, 2015; (d) $8.38 per hour for all hours worked from January 1, 2016 to December 31, 2016; (e) $8.44 per hour for all hours worked from January 1, 2017 to December 31, 2017; and (f) $8.60 per hour for all hours worked from January 1, 2018 to the present, under the N.J.S.A § 34:11-56a, et seq. and the supporting New Jersey State Department of Labor Regulations.[5]

9.      Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff Filho and the NJ Rule 23 Class Members, OTG Management has willfully violated the N.J.S.A § 34:11-56a, et seq., and the supporting New Jersey State Department of Labor Regulations.

10.      Due to OTG Management's willful violations of the NJWL, Plaintiff Filho and NJ Rule 23 Class Members are entitled to recover from OTG Management their unpaid minimum wages, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

---

[5]      On August 6, 2019, New Jersey's governor signed into law an amendment to N.J.S.A. 34:11-56a25.1.  *See* New Jersey Legislature, https://www.njleg.state.nj.us/bills/BillsByNumber.asp (then enter "S1790"; then follow "S1790") (last visited Aug. 13, 2019).  The amendment provides for a six-year limitations period, which goes into effect immediately.  S1790, 218th N.J. Leg. (2019) (enacted).

## FOURTH CAUSE OF ACTION
### New Jersey Wage Law – Unpaid Overtime
### (Brought on behalf of Plaintiff Filho and the NJ Rule 23 Class)

11.     Plaintiff Filho, on behalf of herself and the NJ Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

12.     OTG Management failed to pay Plaintiff Filho and the NJ Rule 23 Class Members the proper overtime wages to which they are entitled under the NJWL and the supporting New Jersey State Department of Labor Regulations.

13.     OTG Management failed to pay Plaintiff Filho and the NJ Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.

14.     Through their knowing or intentional failure to pay Plaintiff Filho and the NJ Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per workweek, OTG Management has willfully violated the N.J.S.A § 34:11-56a, et seq., and the supporting New Jersey State Department of Labor Regulations.

15.     Due to OTG Management's willful violations of the NJWL, Plaintiff Filho and the NJ Rule 23 Class Members are entitled to recover from OTG Management their unpaid overtime wages, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New Jersey Wage Law –Tip Misappropriation
### (Brought on behalf of Plaintiff Filho and the NJ Rule 23 Class Members)

16.     Plaintiff Filho, on behalf of herself and the NJ Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

17.    OTG Management unlawfully retained part of the gratuities earned by Plaintiff Filho and the NY Rule 23 Class Members in violation of N.J. Admin. Code § 12:56-8.4.

18.    By OTG Management's knowing or intentional retention of a portion of the gratuities received by Plaintiff Filho and the NJ Rule 23 Class Members, OTG Management has willfully violated N.J. Admin. Code § 12:56-8.4.

19.    Due to OTG Management's willful violations of the NJWL, Plaintiff Filho and the NJ Rule 23 Class Members are entitled to recover from OTG Management retained gratuities, liquidated damages as provided for by the NJWL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SITXTH CAUSE OF ACTION
### New York Labor Law – Minimum Wage
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

20.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

21.    OTG Management has engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class and Collective Action Complaint.

22.    At all times relevant, the New York Plaintiffs and the NY Rule 23 Class Members have been employees of OTG Management, and OTG Management has been the employer of the New York Plaintiffs and the NY Rule 23 Class Members within the meaning of the NYLL §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

23.    At all times relevant, Plaintiffs and the NY Rule 23 Class Members have been covered by the NYLL.

24.     The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to OTG Management and protect the New York Plaintiffs and the NY Rule 23 Class Members.

25.     OTG Management failed to pay the New York Plaintiffs and the NY Rule 23 Class Members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

26.     OTG Management failed to provide the New York Plaintiffs and the NY Rule 23 Class Members with the statutorily required language that it would be paying the New York Plaintiffs and the NY Rule 23 Class Members the tipped minimum wage rate.

27.     OTG Management required the New York Plaintiffs and the NY Rule 23 Class Members to perform a substantial amount of non-tipped side work in excess of two hours or more than twenty percent of their work time.  During these periods, the New York Plaintiffs and the NY Rule 23 Class Members were engaged in a non-tipped occupation, yet they were compensated by OTG Management at the tipped minimum wage or lower rate, rather than the full hourly minimum wage rate as required by the NYLL and the supporting New York State Department of Labor Regulations.

28.     Further, OTG Management required the New York Plaintiffs and the NY Rule 23 Class Members to perform work off-the-clock and without compensation, depriving them of the minimum wage.

29.     OTG Management was required to pay the New York Plaintiffs and the NY Rule 23 Class Members the full minimum wage at a rate of: (a) $7.15 per hour for all hours worked on and after June 24, 2009 through December 30, 2013; (b) $8.00 per hour for all hours worked on and after December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours

worked on and after December 31, 2014 through December 30, 2015; (d) $9.00 per hour for all hours worked on or after December 31, 2015 through December 30, 2016; (e) $11.00 per hour for all hours worked on or after December 31, 2016 through December 30, 2017; (f) $13.00 per hour for all hours worked on or after December 31, 2017 through December 30, 2018; and (g) $15.00 per hour for all hours worked on or after December 31, 2018 through present under the NYLL §§ 650, *et seq.* and the supporting New York State Department of Labor Regulations.

30.    Through its knowing or intentional failure to pay minimum hourly wages to the New York Plaintiffs and the NY Rule 23 Class Members, OTG Management have willfully violated the NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

31.    Due to OTG Management's willful violations of the NYLL, the New York Plaintiffs and NY Rule 23 Class Members are entitled to recover from OTG Management their unpaid minimum wages, liquidated damages, as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Overtime**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

32.    The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

33.    OTG Management failed to pay the New York Plaintiffs and the NY Rule 23 Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

34.     OTG Management failed to pay the New York Plaintiffs and the NY Rule 23 Class Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek.

35.     Through their knowing or intentional failure to pay the New York Plaintiffs and the NY Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per workweek, OTG Management has willfully violated the NYLL, Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

36.     Due to OTG Management's willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from OTG Management their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### EIGHTH CAUSE OF ACTION
**New York Labor Law –Tip Misappropriation**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class Members)**

37.     The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

38.     OTG Management unlawfully retained part of the gratuities earned by the New York Plaintiffs and the NY Rule 23 Class Members in violation of the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

39.     By OTG Management's knowing or intentional retention of a portion of the gratuities received by the New York Plaintiffs and the NY Rule 23 Class Members, OTG Management has willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

40.     Due to OTG Management's willful violations of the NYLL, the New York Plaintiffs and the NY Rule 23 Class Members are entitled to recover from OTG Management their unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Wage Notices
### (Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)

41.     The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

42.     OTG Management has willfully failed to supply the New York Plaintiffs and the NY Rule 23 Class Members with wage notices at the time of their hiring and annually between April 8, 2011 and December 2014, as required by the NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing the New York Plaintiffs' and the NY Rule 23 Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

43.     Through their knowing or intentional failure to provide the New York Plaintiffs and the NY Rule 23 Class Members with the wage notices required by the NYLL, OTG Management has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

44.     Due to OTG Management's willful violations of NYLL, Article 6, § 195(1), the New York Plaintiffs, and the NY Rule 23 Class Members are entitled to statutory penalties of $50 for each workday that OTG Management failed to provide them with wage notices, or up to a total of $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-b).

**TENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of the New York Plaintiffs and the NY Rule 23 Class)**

45.     The New York Plaintiffs, on behalf of themselves and the NY Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

46.     OTG Management has willfully failed to supply the New York Plaintiffs and the NY Rule 23 Class Members with accurate statements of wages as required by the NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

47.     Through their knowing or intentional failure to provide the New York Plaintiffs and the NY Rule 23 Class Members with the accurate wage statements required by the NYLL, OTG Mangement has willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

48.     Due to OTG Management's willful violations of NYLL, Article 6, § 195(3), the New York Plaintiffs and the NY Rule 23 Class Members are entitled to statutory penalties of $250 for each workweek that OTG Management failed to provide them with accurate wage statements, or a

total of up to $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, Plaintiffs Filho and Ernest, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiff Filho and Ernest as Representatives of the FLSA Collective Action;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201, *et seq.*;

D.      An award of damages, according to proof, including liquidated damages, to be paid by OTG Management;

E.      Costs of action incurred herein, including expert fees;

F.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216(b);

G.      Pre-judgment and post-judgment interest, as provided by law; and

H.      Such other legal and equitable relief as this Court deems necessary, just, and proper.

**WHEREFORE**, Plaintiff Filho, on behalf of herself and all members of the NJ Rule 23 Class, prays for judgment and the following specific relief:

A.      Certification of this case as a class action pursuant to Rule 23;

B.      Designation of Plaintiff Filho as representative of the NJ Rule 23 Class and counsel of record as Class Counsel;

C.      Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the N.J.S.A § 34:11-56a, et seq. and the supporting New Jersey Department of Labor Regulations and Workforce Development Regulations;

D.      Unpaid minimum wages, overtime pay, retained gratuities and liquidated damages pursuant to the NJWL and the supporting New Jersey Department of Labor and Workforce Development Regulations;

E.      Appropriate equitable and injunctive relief to remedy OTG Management's violation of New Jersey law, including but not limited to an order enjoining OTG Management from continuing its unlawful practices;

F.      Penalties, as provided by law;

G.      Attorneys' fees and costs of action incurred herein, including expert fees;

H.      Pre-judgment and post-judgment interest, as provided by law; and

I.      Such other legal and equitable relief as this Court deems necessary, just, and proper.

Finally, Plaintiffs request reasonable service awards for each named Plaintiff to compensate them for the time they spent attempting to recover wages for Class and Collective Members and for the risks they took in doing so.

**WHEREFORE**, Plaintiffs Ernest and Lynch on behalf of themselves and all members of the NY Rule 23 Class, pray for judgment and the following specific relief:

A.      Certification of this case as a class action pursuant to Rule 23;

B.      Designation of the New York Plaintiffs as representatives of the NY Rule 23 Class and counsel of record as Class Counsel;

C.      Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the NYLL, Article 6, §§ 190*, et seq.*, NYLL, Article 19, § 650*, et seq.*, and the supporting New York State Department of Labor Regulations;

D.      Unpaid minimum wages, overtime pay, retained gratuities, other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

E.      Statutory penalties of $50 for each workday that OTG Management failed to provide the New York Plaintiffs and the NY Rule 23 Class Members with a wage notice, or a total of $5,000, as provided for by the NYLL, Article 6 § 198;

F.      Statutory penalties of $250 for each workweek that OTG Management failed to provide Plaintiffs and the NY Rule 23 Class Members with accurate wage statements, or a total of $5,000, as provided for by the NYLL, Article 6 § 198;

G.      Appropriate equitable and injunctive relief to remedy OTG Management's violation of New York law, including but not limited to an order enjoining OTG Management from continuing its unlawful practices;

H.      Penalties, as provided by law;

I.      Attorneys' fees and costs of action incurred herein, including expert fees;

J.      Pre-judgment and post-judgment interest, as provided by law; and

K.      Such other legal and equitable relief as this Court deems necessary, just, and

proper.

Dated:          New York, New York
                September 5, 2019

                                        Respectfully submitted,

                                        /s/ Molly A. Brooks__
                                         Molly A. Brooks

                                        **OUTTEN & GOLDEN LLP**
                                        Molly A. Brooks
                                        Jalise R. Burt
                                        685 Third Ave., 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000

                                        *Attorneys for Plaintiffs and*
                                        *the Collective and Putative Rule 23 Class*