# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DAFINIS FILHO, RAQUEL ERNEST, and
CHANTEL LYNCH, on behalf of
themselves and all others similarly situated,

                                           Plaintiffs,

    v.

OTG MANAGEMENT, LLC

                                           Defendant.
-------------------------------------------------------------x

ECF CASE

Civil Action No. 19-cv-08287

## DECLARATION OF PEG OERTER

I, Peg Oerter, declare as follows:

1.     I submit this Declaration in support of OTG Management, LLC's (hereinafter "OTG") opposition to the Motion for Court-Authorized Notice pursuant to Section 216(b) of the Fair Labor Standards Act filed by Plaintiffs, and former OTG employees, Dafinis Filho, Raquel Ernest and Chantel Lynch. I am over 18 years of age and have personal knowledge of the facts in this Declaration.

2.     I am currently employed by OTG as a Director of Human Resources, and have worked at OTG since 2014.

3.     Two of the current opt-ins, Sangeeta Nimi Thompson and Alyssa Gilles, signed Mutual Agreements to Arbitrate ("MAA"). A true and correct copy of Ms. Gilles's MAA is attached hereto as Exhibit A. A true and correct copy of Ms. Thompson's signature page is attached hereto as Exhibit B.

4.     The MAA contains, among other things, a provision requiring the arbitration of wage and hour claims.

Scanned with CamScanner

5. The MAA also contains a class and collective action wavier that precludes an employee-party to the MAA from joining a wage and hour class and/or collective action like the lawsuit filed here by Plaintiffs.

6. OTG began distributing the MAA to employees in 2016. OTG generally distributes a MAA to new hires as a condition of employment. OTG distributes a MAA through its various local HR departments at each airport.

7. Records related to MAAs, including the number of current and former employees who signed them, are maintained by the local HR representative(s) at each airport.

8. As of December 31, 2019, review of MAA records indicate that the following numbers of current and former employees are party to a MAA the same or similar to that which is attached hereto as Exhibit A (broken down by airport):

   a. EWR (Newark): 2,209 signatories out of 3,554 employees (current/former)

   b. JFK: 1,391 signatories out of 3,368 employees (current/former)

   c. LGA: 893 signatories out of 3,293 employees (current/former)

   d. DCA (Reagan National): 412 signatories out of 539 employees (current/former)

   e. IAH (Houston): 2,305 signatories out of 2,740 employees (current/former)

   f. MCO (Orlando): 66 signatories out of 66 employees (current/former)

   g. MSP (Minneapolis): 686 signatories out of 844 employees (current/former)

   h. PHL: 446 signatories out of 729 employees (current/former)

Scanned with CamScanner

9. Since January 1, 2020, substantial numbers of additional employees have signed the MAA.

Pursuant to the laws of the United States of America, I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
Peg Oerter

Dated: 4-9-2020

Scanned with CamScanner

# EXHIBIT A

## **MUTUAL AGREEMENT TO ARBITRATE CLAIMS**

In recognition of the fact that differences may arise between OTG Management, LLC or its operating subsidiary by which you are employed and their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, and their officers, employees, directors, agents, and representatives (collectively, "Employer") and the undersigned ("Employee") arising out of or in connection with Employee's employment with Employer or the termination of that employment and in recognition of the fact that the resolution of differences in the courts is rarely timely or cost-effective for either Party, Employer and Employee (collectively, the "Parties") have entered into this Mutual Agreement to Arbitrate Claims ("Agreement") in order to establish and gain the benefits of a speedy, impartial, and cost-effective dispute resolution procedure.

This Agreement is deemed to be a written agreement to arbitrate pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. The Parties mutually agree that this Agreement satisfies the writing requirement of the FAA. Employee hereby acknowledges that he/she has read and understands the implications of this Agreement.

**1.** <u>Employment At-Will:</u> Employee is employed on an at-will basis. The Parties mutually agree that this Agreement does not contain or constitute a guarantee of employment for any specific period. This means that Employee may resign his/her employment at any time and that Employer may terminate Employee's employment at any time.

**2.** <u>Consideration:</u> Employee acknowledges that his/her execution of this Agreement is a condition of his/her employment with Employer. Employee also acknowledges that his/her employment constitutes the consideration for Employee's agreement to the terms of this Agreement, and that such consideration is adequate. The Parties further acknowledge that each Party's promise to resolve Claims (as defined herein) in accordance with the provisions of this Agreement, rather than through the courts, is adequate consideration for the other Party's like promise.

**3.** <u>Claims:</u> The Parties mutually agree that, except as provided below, the dispute resolution procedure set forth in this Agreement applies to any and all claims, grievances, and/or causes of action (whether based in contract, tort, statute, regulation or otherwise), arising out of or in connection with Employee's employment relationship with Employer, the terms and conditions of employment, the termination of employment or any post-employment obligations of the Parties, including, but not limited to, all claims arising under federal, state or local laws and regulations, including Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the False Claims Act, any state laws affecting an employee's rights (i.e., any applicable state human relations act), and any common law claims recognized now or later (hereinafter referred to as "Claims").

**EMPLOYEE AND EMPLOYER HEREBY WAIVE THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT AND OTHER RIGHTS THAT EMPLOYEE AND EMPLOYER WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**The foregoing agreement between the parties to resolve disputes pursuant to arbitration as provided herein shall not apply to the following Claims: (1) workers' compensation claims; (2) unemployment compensation claims; (3) claims subject to grievance and/or arbitrations procedures contained in any collective bargaining agreement between Employer and a union of which Employee is a member; and (4) claims brought by a Party under any other agreement between the Parties that contains its own separate provisions relating to arbitration or dispute resolution.**

In addition, nothing in this Agreement should be interpreted as restricting or prohibiting an Employee from filing a charge or complaint with a federal, state or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation.

4. Submission of Claims to Arbitration: The Parties hereby agree to attempt, in good faith, to resolve any and all Claims promptly by utilizing the procedures outlined in the Employer's employee handbook/manual (as may be amended or modified from time to time, the "Crewmember Manual"). If a resolution acceptable to both Employer and Employee does not result from informal discussions pursuant to the procedures outlined in the Crewmember Manual, the Claim shall be submitted to and determined exclusively by binding arbitration in accordance with the Comprehensive Arbitration Rules & Procedures of JAMS (or any successor of that organization in effect at the time the arbitration is initiated), a copy of which may be obtained online at http://www.jamsadr.com, or by calling 1-800-352-5267. A single, impartial arbitrator will be selected to hear the Claim according to the rules and procedures of JAMS, which shall administer the arbitration. The duty to arbitrate Claims under this Agreement survives any termination of Employee's employment with Employer.

5. Form of Arbitration: In any arbitration, any Claim shall be arbitrated only on an individual basis and not on a class, collective, multiple-party, or private attorney general basis. Employee and Employer expressly waive any right to arbitrate as a class representative, as a class member, in a collective action, or in or pursuant to a private attorney general capacity, and there shall be no joinder or consolidation of parties.

6. **NO CLASS ACTIONS. Employee and Employer expressly understand and acknowledge that by signing this Agreement they are waiving their rights to trial by jury and their rights to pursue class action, collective action, multiple-party, and private attorney general remedies in any court and in any arbitration forum, except as expressly provided herein.** To the fullest extent permitted by applicable law, any Claim will be arbitrated only on an individual basis and will not be consolidated with any other arbitrations or proceedings that involve any action, dispute or controversy by Employer or Employee or any other person or party. The Parties expressly intend and irrevocably and voluntarily agree that each will not assert a class action or representative action against the other in arbitration, in court or otherwise. The Parties further agree that each do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any controversy or Claim filed in either court or submitted to arbitration with respect to the other. This provision is material and essential to the arbitration of any controversy or Claim.

7. Authority of Arbitrator: The arbitrator shall have all of the powers and authority granted to arbitrators under the Comprehensive Arbitration Rules & Procedures of JAMS (or any successor of that organization in effect at the time the arbitration is initiated), including but not limited to ordering discovery, fixing the time of the arbitration, and settling disputes regarding the law, subject or conduct of the arbitration. To the extent there is a conflict between the JAMS' rules and this Agreement, the terms of this Agreement will control. The arbitrator may grant any remedy or relief that would have been available to the Parties had the matter been heard in court. The decision of the arbitrator shall be final and binding upon the Parties and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

8. Location of Arbitration: The Parties hereby agree the arbitration will be held at the JAMS office closest to where Employee lives or works, New York, New York, or any agreed to location.

9. Confidentiality: The Parties agree all arbitration proceedings hereunder shall be kept

confidential and, except as may be required by law, neither a Party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all Parties.

**10.** <u>Costs of Arbitration:</u> The fees to initiate the arbitration and for the arbitrator shall be paid by Employer. Employee and Employer shall otherwise bear their own respective attorneys' fees and costs incurred in connection with the arbitration, except that the arbitrator may award attorneys' fees and costs to either Party in accordance with applicable law.

**11.** <u>Injunctive Relief:</u> Notwithstanding anything contained herein, either Party, before or during the arbitration contemplated by this Agreement, may apply to a court for a temporary restraining order, preliminary injunction, or similar equitable relief to protect its interests pending completion of such arbitration proceedings or to enforce the provisions of this Agreement or any other agreement entered into between the Parties.

**12.** <u>Non-Retaliation:</u> Employee understands that he/she will not be disciplined or otherwise penalized for initiating and utilizing the dispute resolution procedures set forth in this Agreement.

**13.** <u>Severability:</u> In the event that any provision of this Agreement, or any portion thereof, is found to be unenforceable or deemed in contravention of law, it shall be severed and/or modified by the arbitrator or court and remainder of this Agreement shall be enforceable; provided, however, that if the "Form of Arbitration" provision above prohibiting class, collective, multiple-party, or other group arbitration is deemed invalid, then this entire Agreement shall be null and void.

**14.** <u>Entire Agreement:</u> Any modification to this Agreement must be entered into, in writing, by an authorized officer of Employer. **Oral representations made before or after Employee is hired do not alter this Agreement.**

**IN WITNESS WHEREOF, the Parties attest to the fact that they have read, understand, and voluntarily, knowingly, and without duress or coercion agree to be legally bound by the terms of this Agreement. The Parties expressly understand that they will be required to arbitrate all disputes and Claims that are covered by this Agreement.**

For the Employer:

*[signature: Christopher J. Redd]*

Christopher J. Redd, Vice President

*[signature: Alyssa Grilles]*

(Employee Name – Print)

*[signature: Alyssa Grilles]*

(Employee Signature)

01/09/2019

(Date)

# EXHIBIT B

existence, content, or results of any arbitration hereunder without the prior written consent of all Parties.

**9.** Costs of Arbitration: The fees to initiate the arbitration and for the arbitrator shall be paid by Employer. Employee and Employer shall otherwise bear their own respective attorneys' fees and costs incurred in connection with the arbitration, except that the arbitrator may award attorneys' fees and costs to either Party in accordance with applicable law.

**10.** Injunctive Relief: Notwithstanding anything contained herein, either Party, before or during the arbitration contemplated by this Agreement, may apply to a court for a temporary restraining order, preliminary injunction, or similar equitable relief to protect its interests pending completion of such arbitration proceedings or to enforce the provisions of this Agreement or any other agreement entered into between the Parties.

**11.** Non-Retaliation: Employee understands that he/she will not be disciplined or otherwise penalized for initiating and utilizing the dispute resolution procedures set forth in this Agreement.

**12.** Severability: In the event that any provision of this Agreement, or any portion thereof, is found to be unenforceable or deemed in contravention of law, it shall be severed and/or modified by the arbitrator or court and remainder of this Agreement shall be enforceable; provided, however, that if the "Form of Arbitration" provision above prohibiting class, collective, multiple-party, or other group arbitration is deemed invalid, then this entire Agreement shall be null and void.

**13.** Entire and Exclusive Agreement: This Agreement supersedes any and all prior agreements regarding arbitration, including, but not limited to, any arbitration provisions in employment agreements. Any modification to this Agreement must be entered into, in writing, by an authorized officer of Employer. **Oral representations made before or after Employee is hired do not alter this Agreement.**

**IN WITNESS WHEREOF, the Parties attest to the fact that they have read, understand, and voluntarily, knowingly, and without duress or coercion agree to be legally bound by the terms of this Agreement. The Parties expressly understand that they will be required to arbitrate all disputes and Claims that are covered by this Agreement.**

OTG Management EWR, LLC

By: _____
Name: Christopher J. Redd
Title: Vice President

SANGEETA N. THOMPSON
(Employee Name – Print)

_____
(Employee Signature)

02/01/2016
(Date)