**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

DAFINIS FILHO, et al.,

                                          **Plaintiffs,**

                    -against-

OTG MANAGEMENT, LLC,

                                          **Defendant.**

-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 3/30/2021 __
```

**19-CV-8287 (ALC)(SN)**

<u>**OPINION & ORDER**</u>

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch, on behalf of themselves and others similarly situated (and together, "Plaintiffs"), allege that their former employer OTG Management, LLC ("Defendant" or "OTG") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., New Jersey Wage and Hour Law ("NJWL"), N.J.S.A. 34:11-56a, *et seq*., and New York Labor Law (NYLL") Article 6, §§ 190 *et seq*. and Article 19, §§ 650 *et seq*., by denying certain employees proper minimum wage and overtime pay. Plaintiffs move for conditional certification of a collective action pursuant to Section 216(b) of the FLSA and seek authorization to send notice to all potential collective members. ECF No. 21; <u>see also</u> ECF No. 22 ("Pls. Mem."). Defendant opposes the motion. ECF No. 31 ("Def. Opp."). The motion is GRANTED in part.

## BACKGROUND

Defendant is a privately held business owning and operating hundreds of bars, restaurants, and retail stores in nine airport terminals across the U.S., including at Newark Liberty Airport in Newark, New Jersey ("EWR"); LaGuardia Airport ("LGA") in New York,

New York; and John F. Kennedy Airport ("JFK") in New York, New York.[1] Compl., ¶ 1. The named Plaintiffs worked as servers, bartenders, and training captains at Defendant's restaurants and bars in terminals at EWR and JFK between 2013 and 2018. Id., ¶¶ 8-21. Specifically, plaintiff Dafinis Filho worked as a server, bartender, and training captain from approximately November 2014 to February 2017 at several of Defendant's bars and restaurants located at EWR, id., ¶¶ 8-10; plaintiff Raquel Ernst worked as a server and bartender from approximately June 2013 to May 2018 at several of Defendant's bars and restaurants located at JFK, id., ¶¶ 14-15; and plaintiff Chantel Lynch worked as a bartender from approximately December 2013 to May 2015 at one or more of Defendant's bars located at JFK, id., ¶¶ 19-20.

Plaintiffs Filho and Ernest (the "FLSA Plaintiffs") bring claims under the FLSA, alleging that Defendant unlawfully availed itself of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201, *et seq*., by failing to inform employees of the relevant tipped-wage FLSA provision, by distributing a portion of employees' tips to workers who do not customarily and regularly receive tips, and by requiring certain employees to perform non-tipped work more than 20 percent of the time. The FLSA Plaintiffs bring these claims on behalf of themselves and a proposed collective composed of all similarly situated current and former servers, bartenders, and other tipped workers who opt-in to this action and who were employed at restaurants and bars owned or operated (or both) by Defendant for a period of three years before the complaint's filing (the "FLSA Collective"). In support of their motion, Plaintiffs have submitted declarations from Plaintiffs Filho, Ernest, and Lynch as well as from former employees Sangeeta Thompson, who worked at Defendant's restaurants and bars at EWR, and Nazmul Hussain, who worked at

[1] The facts are taken from the complaint (ECF No. 1, "Compl.") and Plaintiffs' declarations submitted in support of this motion (ECF Nos. 22-1 to 22-5).

Defendant's restaurants and bars at LGA. See Pls. Mem., Ex. 1 ("Filho Decl."); Ex. 2 ("Ernest Decl."); Ex. 3 ("Lynch Decl."); Ex. 4 ("Thompson Decl."); Ex. 5 ("Hussain Decl."). These declarations describe similar work experiences at restaurants and bars owned and operated by Defendant and located at the three New York City-area airports. Plaintiffs also submit job descriptions for both OTG management and server positions. Pls. Mem., Exs. 6-10.

The FLSA Plaintiffs claim that Defendant maintained a policy and practice of paying servers, bartenders, and other tipped workers (together, "Tipped Workers") a reduced minimum wage rate by taking a "tip credit" against the minimum wage, despite failing to meet the FLSA's strict requirements for doing so. Compl., ¶ 19. The FLSA Plaintiffs' support for this claim is threefold, including allegations that: (1) Defendant required Tipped Workers to perform significant work unrelated to their tipped occupations; (2) Defendant required Tipped Workers to spend too many of their working hours performing non-tipped (but related to tipped) work, *i.e.*, "side work;" and (3) Defendant failed to provide Tipped Workers the required notice under the FLSA stating its intent to pay Tipped Workers the reduced minimum wage. Id., ¶ 17. The FLSA Plaintiffs also claim that Defendant failed to compensate Tipped Workers for all work, including work performed outside of scheduled work hours, such as before and after employee shifts, and during artificial "breaks" where management clocked out Tipped Workers but required them to work. Id., ¶¶ 25-36. At times, this additional uncompensated work triggered Defendant's overtime pay obligations by requiring work in excess of 40 hours per week; however, Defendant failed to pay Tipped Workers the appropriate overtime rate for those hours. Id., ¶¶ 41, 55, 58, 79; Filho Decl., ¶¶ 32-34; Ernest Decl., ¶¶ 7, 30-32; Thompson Decl., ¶¶ 30-32.

**DISCUSSION**

I.    **Conditional Collective Action Certification**

    A.  **Standard for Conditional Collective Action Certification**

A plaintiff may seek certification for a case to proceed as a collective action under the FLSA to allow other "similarly situated" employees to join as parties to the litigation. 29 U.S.C. § 216(b); see also Cohen v. Gershon Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). Where appropriate, district courts may implement this provision of the FLSA by "facilitating notice to potential plaintiffs to the pendency of the action." Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). Orders authorizing such notice are often referred to as orders "certifying" a collective action. Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010). Certification, however, is a term of art: rather than creating a class of plaintiffs for a collective action, it serves as a "case management tool" to facilitate notice to potential class members. Myers, 624 F.3d at 555 n.10.

While the FLSA does not define the term "similarly situated," see 29 U.S.C. § 216(b), courts widely recognize that the standard for certifying a conditional collective action is not a stringent one. See Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010); Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Party plaintiffs are considered similarly situated to other employees to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims. Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020). Courts in this Circuit apply a two-step analysis to determine whether to certify a collective action on this basis. The first step requires a "modest factual showing" that the putative collective members were "victims of a common policy or plan that violated the law." Korenblum v.

Citigroup, Inc., 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016) (citing Myers, 624 F.3d at 555). A

plaintiff's burden at this stage is a "low standard of proof." McGlone v. Contract Callers, Inc.,

867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (citations omitted).

At this stage, the court does not "resolve factual disputes, decide substantive issues going

to the ultimate merits, or make credibility determinations." Diaz v. New York Paving Inc., 340 F.

Supp. 3d 372, 382 (S.D.N.Y. 2018) (citing Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d

357, 368 (S.D.N.Y. 2007)); Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)

("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not

weigh the merits of the underlying claims."). "When there are ambiguities in the papers seeking

collective action status, the court must draw all inferences in favor of the plaintiff at the

preliminary certification stage." Contrera v. Langer, 278 F. Supp. 3d 702, 715 (S.D.N.Y. 2017)

(internal quotation marks omitted). Although the burden of proof is modest at this stage,

conclusory statements alone cannot support conditional certification. See Yu Zhang v. Sabrina

USA Inc., No. 18-CV-12332 (AJN)(OTW), 2019 WL 6724351, at *3 (S.D.N.Y. Dec. 10, 2019);

Lijun Geng v. Shu Han Ju Rest. II Corp., No. 18-CV-12220 (PAE)(RWL), 2019 WL 4493429, at

*7 (S.D.N.Y. Sept. 9, 2019) ("Although the allegations contained in these documents cannot be

entirely conclusory, they need not contain a high level of specificity." (internal quotation marks

and citation omitted)).

To certify a collective of employees with different job functions, courts often require

"concrete facts evidencing a common scheme or plan of wage and hour violations." Mata v.

Foodbridge LLC, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015); see

also Liping Dai v. Lychee House, Inc., No. 17-CV-6197 (DF), 2018 WL 4360772, at *10

(S.D.N.Y. Aug. 29, 2018) ("[C]ourts may conditionally certify collectives of individuals with a

variety of job titles, but only where a common unlawful policy is shown."). A plaintiff may present evidence of a common policy through pleadings, affidavits, and declarations, including any hearsay statements contained therein. Chhab v. Darden Restaurants, Inc., No. 11-CV-8345 (NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013).

At the second step, following notice to the collective and the presentation of a more complete record, the court examines whether the opt-in plaintiffs are "similarly situated" to the named plaintiffs. Meyers, 624 F.3d at 555. If the record shows that they are not, the conditional collective can be "de-certified" and the opt-in plaintiffs' claims dismissed without prejudice. Id.

## B.  Plaintiffs' Factual Showing Supports Conditional Certification

Plaintiffs seek conditional certification for a broad class of workers that encompasses all "current or former server[s], bartender[s], or tipped worker[s] … employed at restaurants and bars owned, operated, and/or controlled by OTG Management in airports nationwide between September 5, 2016 and the present." See Pls. Mem., Ex. 11 at 4 ("Proposed Notice"). At this stage, where Plaintiffs' burden is modest, Plaintiffs' declarations in support of their motion show that conditional certification, subject to partial modification, is appropriate.

### 1.  OTG Management Centrally Controls Tipped Workers at Its Locations

Plaintiffs claim that Defendant maintains centralized control over its Tipped Workers at its hospitality locations in airports nationwide by enforcing common policies and practices with respect to hiring, job duties, scheduling, and compensation. Specifically, Plaintiffs allege: (1) Defendant hires new employees through centralized screening, interviewing, and onboarding (Pls. Mem. at 2-3); (2) Defendant centralizes compensation and compliance through a central human resources department (Id. at 3); and (3) Defendant has a standardized training program

for employees and trains its managers to carry out their supervisory roles in accordance with common corporate policies (Id.).

Plaintiffs offer job descriptions of corporate-level officers involved in payroll and human resources to establish Defendant's centralized control over payroll and FLSA compliance policies. Pls. Mem., Exs. 6-7. Plaintiffs also offer evidence of Defendant's standardized job descriptions for servers and bartenders, which they allege are used to ensure that Tipped Workers share the same job duties and responsibilities regardless of the airport or hospitality location where they work. Id. at 3, Exs. 9-10. For example, Defendant pays all bartenders on an hourly basis and requires them to perform substantially the same duties, including substantial non-tipped work related to opening, shift-changes or closing; occasional cleaning duties; and other ongoing duties between serving customers. Id. at 3-4. Employees may also transfer between, or be shared by, various restaurant locations under Defendant's management without retraining. Id. at 4.

### 2. Plaintiffs Never Received Appropriate Notice of the Tip Credit Provisions of the FLSA

Plaintiffs allege that Defendant avails itself of the federal "tip credit" to pay Tipped Workers less than the full statutory minimum wage. See Compl., ¶¶ 18, 43, 68, 90; Filho Decl., ¶¶ 7, 14; Ernest Decl., ¶¶ 7, 14; Lynch Decl., ¶¶ 7, 14; Thompson Decl., ¶¶ 7, 15; Hussain Decl. ¶¶ 7, 14. Defendant did not provide Tipped Workers notice of this practice, in violation of the FLSA's requirements. Filho Decl., ¶¶ 8, 9; Ernest Decl., ¶¶ 8, 9; Lynch Decl., ¶¶ 8, 9; Thompson Decl., ¶¶ 9, 10; Hussain Decl., ¶¶ 8, 9.

Defendant argues that "Plaintiffs submit no evidence that OTG had a common policy of not providing notice of the tip credit to all of the putative class members." Def. Mem. at 13. Defendant notes that each restaurant functions as a separate entity and sets its own policies,

including tip credit notification policy. Plaintiffs' Declarations, however, demonstrate that the Plaintiffs and other declarants worked at numerous OTG locations and were subjected to the same policies at each location. The Declarations also identify approximately 50 other Tipped Workers who worked at the same OTG locations as the Declarants, and with whom the Declarants had personally spoken about the FLSA violations, including the tip credit violation, alleged in Plaintiffs' complaint. See Filho Decl., ¶¶ 36, 43; Ernest Decl., ¶¶ 34, 39-40; Lynch Decl., ¶¶ 31-32; Thompson Decl., ¶¶ 33, 35, 40; Hussain Decl., ¶ 30. These statements demonstrate both a relatively high degree of centralized control and consistent policies across locations, encompassing similarly situated Tipped Workers. Plaintiffs also submit evidence that Defendant exercises corporate-level control over payroll and FLSA and federal law compliance policies by citing to Defendant's job descriptions for OTG's Director of Payroll (Pls. Mem., Ex. 6) and Director of HR (Pls. Mem., Ex. 7). Thus, the record supports a reasonable inference that Plaintiffs' experiences reflected a company-wide policy of failure to provide notice of the tipped credit practice.

### 3. Defendant Required Tipped Workers to Perform Substantial Non-Tipped Work

Plaintiffs and other Tipped Workers claim they regularly spend at least 25 percent of their time engaged in nontipped work. See Filho Decl., ¶ 26; Ernest Decl., ¶ 24; Lynch Decl., ¶ 24; Thompson Decl., ¶ 24; Hussain Decl., ¶ 24. This work consists of opening, shift-change, or closing duties; occasional cleaning duties; and other ongoing duties that do not include serving customers. Filho Decl., ¶¶ 16, 17, 21-22, 24-25; Ernest Decl., ¶¶ 16, 20, 22-23; Lynch Decl., ¶¶ 16, 20, 22-23; Thompson Decl., ¶¶ 17, 19, 22, 23; Hussain Decl., ¶¶ 16, 20, 22- 23. Defendant also required some Plaintiffs and other Tipped Workers to attend pre-shift meetings, for which they received the sub-minimum, tipped wage. Filho Decl., ¶ 41; Lynch Decl., ¶ 33; Hussain

Decl., ¶ 30. Plaintiffs' Declarations also recount observations of OTG requiring "side work" of other Tipped Workers at a variety of OTG locations. See Filho Decl., ¶¶ 36, 43; Ernest Decl., ¶¶ 34, 39-40; Lynch Decl., ¶¶ 31-32; Thompson Decl., ¶¶ 14, 33, 35, 40; Hussain Decl., ¶ 30, 31.

Defendants argue that Plaintiffs cannot present any evidence of a uniform policy applicable to all employees related to non-tipped side work. Def. Mem. at 14. The test for conditional certification, however, only asks "whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." Contrera, 278 F. Supp. 3d at 715; see also Flood v. Carlson Restaurants Inc., No. 14-CV-2740 (AT), 2015 WL 260436, at *4 (S.D.N.Y.  2015) ("Plaintiffs need only show evidence of a *de facto* policy which, in practice, resulted in a pattern of FLSA violations." (internal quotation marks omitted)). I find that Plaintiffs have carried their burden with respect to this inquiry. Plaintiffs provide Declarations that detail repeated instances of both Plaintiffs and others being required by Defendant to perform substantial non-tipped work and allegations that that work was compensated at the tipped hourly wage.

### 4.  Defendant Did Not Pay Plaintiffs for All Hours Worked, Including Overtime

According to Plaintiffs, Defendant regularly required Tipped Workers to perform work off-the-clock. Compl., ¶ ¶ 31, 35- 36, 58, 79, 81, 112; Filho Decl., ¶¶ 28-36; Ernest Decl., ¶¶ 26-34; Thompson Decl., ¶ 26. Specifically, Plaintiffs allege that Defendant's managers clocked Plaintiffs Filho and Ernest and other Tipped Workers out for breaks that they did not actually take. Compl., ¶¶ 32, 59, 80; Filho Decl., ¶¶ 35-36; Ernest Decl., ¶¶ 28, 33; Thompson Decl., ¶¶ 28, 34. Plaintiffs also allege that Defendant clocked Plaintiffs and other Tipped Workers out after their scheduled shifts were over even though managers required Plaintiffs and other Tipped

Workers to continue working. Compl., ¶¶ 33, 81; Filho Decl., ¶ 31; Ernest Decl., ¶ 29; Thompson Decl., ¶ 29. Finally, Plaintiffs allege that Defendant did not compensate Tipped Workers who worked more than 40 hours per week, including overtime work completed as a result of required off-the-clock work. Compl., ¶¶ 41, 55, 58, 79, 112; Filho Decl., ¶¶ 32-34; Ernest Decl., ¶¶ 7, 30-32; Thompson Decl., ¶¶ 8, 30-32. This evidence is sufficient to allege a practice of failing to compensate workers for the totality of hours worked, including potential overtime hours.

### C. Notice is Appropriate to Potential Plaintiffs Who Worked at the Same Airports as the Declarants

Plaintiffs' evidence as summarized above, in combination with other evidence regarding Defendant's posted job descriptions, is sufficient to establish that Tipped Workers at EWR, LGA, and JFK were "similarly situated" to the Named Plaintiffs such that notice of a potential collective action is warranted for the Plaintiffs' FLSA claims. The bulk of Defendant's arguments attack the merits of the case, raise factual disputes, or question the credibility of Plaintiffs' declarations by introducing additional evidence. The Court does not address these issues at the conditional certification stage and finds that Plaintiffs have met their burden supporting conditional certification. To that end, Defendant argues that notice should be limited to employees at the restaurant locations within each terminal and airport where the Named Plaintiffs worked. Plaintiffs argue the Court should find all Tipped Workers at OTG locations nationwide "similarly situated."

Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan. Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011). When determining which employees at

various locations may be similarly situated, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management." Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) (emphasis omitted).

Plaintiffs have made the required factual showing to demonstrate that other Tipped Workers at Defendant's locations at EWR, JFK, and LGA are similarly situated to the Plaintiffs. The Declarations—which cover at least twenty restaurant and bar locations in those three airports—contain common allegations of FLSA violations, including Defendant's denial of full minimum wage and overtime compensation for tipped workers. This evidence, coupled with Plaintiffs' evidence of Defendant's centralized control over OTG Management's bars and restaurants, meets the minimal burden for conditional certification. Because of the amount of evidence presented (sworn statements of Plaintiffs' and other Tipped Workers' personal experiences and their observations of others' experiences) regarding Tipped Workers at EWR, LGA, and JFK, I find that notice is proper to all employees at these airports regardless of whether they worked at the same restaurant or bar locations as the Named Plaintiffs. See Grant v. Warner Music Grp. Corp., No. 13-CV-4449 (PGG), 2014 WL 1918602, at *7 (S.D.N.Y. May 13, 2014) ("Courts routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at different locations, perform somewhat different duties, and are managed by different supervisors.") (collecting cases).

This conclusion is bolstered by the interchangeability of employees across restaurant and bar locations within each airport, as described in Plaintiffs' Declarations. Moreover, the evidence is sufficient to overcome Defendant's objection that Plaintiffs are not similarly situated to Tipped Workers employed after May 2018: I find that the evidence offered by the Declarations, coupled

11

with evidence of OTG's centralized control, establishes that the Plaintiffs are similarly situated
to employees who worked for Defendant in the same general timeframe. Accordingly, the
collective action is conditionally certified as to all servers, bartenders, and other tipped
employees who were supervised or managed by Defendant's agents and who operated out of
EWR, LGA, or JFK between September 5, 2016 and the present.

The question of whether to authorize notice to all OTG Tipped Workers nationwide (at
OTG's locations at six other airports) presents a closer call. The sum of Plaintiffs' evidence that
the Plaintiffs are similarly situated to Tipped Workers from locations at airports other than EWR,
LGA, and JFK consists of: (1) Declarant statements that OTG utilized central training managers
(Filho Decl., ¶ 39); (2) Declarant statements that OTG policy allowed employees to work at
multiple airport locations, or to transfer between airport locations without re-training (id., ¶ 42;
Lynch Decl., ¶¶ 28-29);[2] (3) job descriptions implying national, centralized responsibility for
human resources, payroll, and employee training (Pls. Mem., Exs. 6-8); and (4) job descriptions
for Tipped Workers such as bartender or server, which are standardized (*i.e.*, identical or very
similar to each other), regardless of airport location, implying similarly situated workers across
airport locations (id., Exs. 9-10). Plaintiffs, however, present no "bottom-up evidence"—*i.e.*,
sworn testimony from employees about their own experiences or their observations of other
employees' experiences—concerning any Tipped Workers at locations other than EWR, LGA,
and JFK.

To find that employees of locations where the named plaintiffs did not work to be
"similarly situated" to plaintiffs, both groups of employees must have been subject to the same
allegedly unlawful policy or practice. See Trinidad, 962 F. Supp. 2d at 558. Although all OTG

---

[2] None of the Declarants, however, submitted evidence that he or she worked at more than one airport.

locations nationwide are owned by the same parent company and Plaintiffs have introduced evidence of some degree of centralized control, Plaintiffs have not demonstrated across all locations a uniform policy or practice of the FLSA violations alleged. Plaintiffs do not introduce direct evidence that employees at airports other than EWR, LGA, or JFK experienced minimum wage or overtime violations, did not receive tip credit notice, or were inappropriately paid using of the tip credit (due to the proportion of side work). Because these wage-and-hour claims are highly fact intensive, the absence of *any* direct evidence about the work conditions at other locations suggests that a nationwide certification overreaches. Thus, despite evidence of central control of employees and Plaintiffs' modest burden, the conditional collective should be limited to those Tipped Workers employed at EWR, LGA, and JFK.

### D. Notice is Appropriate to Potential Plaintiffs Regardless of Agreements to Arbitrate

Defendant argues that any conditional certification should exclude current and former employees who signed an Arbitration Agreement with Defendant.

Federal courts are divided as to whether notice of an FLSA collective action should be sent to employees who have agreed to arbitrate claims against their employer. See, e.g., In re JPMorgan Chase & Co., 916 F.3d 494, 499 n.6 (5th Cir. 2019) (discussing at least three ways district courts address the issue: (1) excluding employees who have signed arbitration agreements from receiving notice of the collective action; (2) sending notice to employees subject to arbitration agreements based on the rationale that they have a right to receive notice of potential FLSA claims; and (3) sending notice to employees subject to arbitration agreements based on the proposition that the agreements might be unenforceable). Courts in this Circuit have taken the third approach described by the Fifth Circuit and authorized notice to potential collective members even if they may be subject to arbitration agreements. See Lijun Geng, 2019

WL 4493429, at *8; Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 646-47 (S.D.N.Y. 2013) (allowing notice distribution to employees who signed arbitration agreements because agreements to arbitrate are irrelevant to whether employees were "similarly situated" regarding alleged FLSA violation).

In light of the practice in this Circuit, notice to employees who presumptively signed the Arbitration Agreement is proper. While Defendant argues that Plaintiffs have waived any challenges to the enforcement of those agreements, Plaintiffs are correct that the process for resolving the arbitrability of any plaintiff's claims is available only after notice has issued and those employees have consented to put themselves before the Court. Nothing in this Opinion shall be construed as affecting Defendant's ability to seek dismissal, before the second stage of the two-part inquiry, of the claims of any opt-in plaintiffs with valid arbitration agreements who join the action.

## II. Contents and Form of the Proposed Notice

### A. With Minor Modification, the Court Approves the Contents of Plaintiffs' Proposed Notice

In connection with their motion for certification, Plaintiffs have submitted a Proposed Class Notice for approval by the Court. ECF No. 22-11. Plaintiffs supply a second version of the Proposed Notice with their Reply in Support of their motion. ECF No. 33-1 (the "Second Proposed Notice"). Defendant raises several objections to the contents and form of the Proposed Notice and submits a counterproposal for the notice. ECF No. 31-3 ("Def. Proposed Notice").

Once a court determines that a plaintiff has met the burden for initial collective action certification, it may authorize notice to advise all potential opt-in plaintiffs of their rights to join the litigation. See Lynch, 491 F. Supp. 2d at 370-71. The court has discretion in fashioning the form and content of the notice. Flood, 2015 WL 260436, at *5. The Court approves Plaintiffs'

Second Proposed Notice over Defendant's objections, subject to one modification regarding the information in paragraph 7 (discussed below).

First, Defendant argues the Notice should include a reference to the effect of agreements to arbitrate. As indicated by its proposed language, Defendant argues in favor of a more thorough explanation of the potential effects of valid arbitration agreements for plaintiffs. To the extent such language could help explain the scope of a potential plaintiff's recovery, it should be included in the notice. Defendant's suggested language, however, overreaches and could unjustifiably deter plaintiff participation. Thus, the Court orders the addition of the following language to paragraph 7 on page 4 of the Second Proposed Notice: "The Court has not yet made a decision about the validity of any arbitration agreement, which may affect your ability to participate in this action at a later time."

Second, Defendant argues the Notice should be amended to indicate the identity of defense counsel. The Court is not persuaded that the possibility defense counsel can provide unique information to prospective plaintiffs outweighs the risk of confusion. The request therefore is denied.

Third, Defendant requests the Consent to Join forms be sent to the Clerk of Court, rather than Plaintiffs' counsel. Courts routinely require opt-ins to return Consent to Join forms to plaintiffs' counsel. She Jian Guo v. Tommy's Sushi Inc., No. 14-CV-3946 (PAE), 2014 WL 5314822, at *5 (S.D.N.Y. Oct. 16, 2014) ("The majority of courts, however, have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel."). Here, the Court is assured that the Notice clearly notifies opt-in plaintiffs of their right to acquire independent counsel. See Second Proposed Notice at 5 ("You do not need to hire your own lawyer because the Plaintiffs' attorneys will be working on your behalf. You may hire your own lawyer at your own expense.").

Moreover, this Court routinely approves proposals directing that Consent to Join Forms be sent to plaintiffs' counsel. Accordingly, the Consent to Join forms shall be sent to Plaintiffs' counsel, and Plaintiffs' counsel shall file the Consent to Join forms on the docket.

Fourth, Defendant argues that the Notice should be amended to more explicitly state that no monetary recovery is guaranteed should a plaintiff opt-in. I find the Notice language is sufficiently clear regarding the possibility of recovery and need not be altered. See Second Proposed Notice at 3 ("[Y]ou may be entitled to share in any monetary recovery that might come from a trial or a settlement in this lawsuit.").

Defendant's remaining requests to further edit the Second Proposed Notice in accordance with its proposed notice are denied. Plaintiffs are directed to submit a final version of the Proposed Notice for the Court's approval within 10 days of this Order.

**B. The Court Approves Plaintiffs' Methods of Distribution**

**1. The Court Approves Notice by Mail, Email, and Facebook**

Plaintiffs request that Notice be sent by U.S. mail, email, and Facebook, and that Collective Members should be permitted to view the Notice and submit Consent to Join forms via a website established by Plaintiffs' counsel, by mail, and by email. Defendant does not object to the use of U.S. mail or Facebook to effectuate notice or to the use of a dedicated website to furnish information to plaintiffs. Defendant does, however, object to the use of email to send notice. As Courts in this Circuit have approved the use of email to distribute notice in FLSA cases as reasonable, the Court finds email an appropriate method of notice here. See Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 130 (S.D.N.Y. 2014); Hamadou, 915 F. Supp. 2d at 669; Pippins v. KPMG LLP, No. 11-CV-0377 (CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012).

### 2. Defendant is Ordered to Produce Prospective Plaintiffs' Contact Information to Facilitate Notice

Plaintiffs request the Court order Defendant to produce "a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for all collective members, and the last four digits of Social Security numbers for those collective members whose notices are returned undeliverable." Pls. Mem. at 21. Defendant opposes the request, arguing the Court should order only the production of employee names and mailing addresses. Def. Mem. at 21.

The "district court has the power to direct a defendant to produce the names and contact information of potential plaintiffs." Flood, 2015 WL 260436, at *5; see also Ack v. Manhattan Beer Distribs., Inc., No. 11-CV-5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions.") (collecting cases). As a practical matter, courts often order the production of this information at the notice stage. Id. I find that the production of the information sought appropriately balances current and former employees' privacy, Plaintiffs' needs, and the interests of all other parties. Courts routinely order production of employee names, mailing addresses, email addresses, and telephone numbers in FLSA actions. Schear, 297 F.R.D. at 129 (collecting cases). Further, Plaintiffs' proposal allows for the production of the last four digits of Social Security numbers only where Plaintiffs are unable to effectuate notice on potential opt-in plaintiffs with the aforementioned information. This is a reasonable approach. See Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) ("While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice."). Accordingly, Defendant shall provide

Plaintiffs with the names, last known addresses, telephone numbers, email addresses (if available[3]), and dates and locations of employment of all potential opt-in plaintiffs who have worked at any OTG establishment at EWR, LGA, or JFK within the three years preceding the Complaint. Plaintiffs may also request from Defendant the last four digits of Social Security numbers for those collective members whose notices are returned undeliverable.

### 3.   The Look Back Period Should Run from the Date of the Complaint

The parties dispute the relevant time period covering potential opt-in plaintiffs. Plaintiffs claim the notice should be sent to Tipped Workers employed by OTG between "September 5, 2016 and the present," a date measured by subtracting three years from the filing of the Complaint. Defendants argue that the "look back" period should start no earlier than the date on which the Court enters its Order approving notice and that the notice should only be sent to individuals employed by OTG within three years from today's date. Defendant is correct that, because the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action, notice is generally directed to those employed within three years of the date of the mailing of the notice. See 29 U.S.C. §§ 255, 256; see also Whitehorn, 767 F. Supp. 2d at 451. At the same time, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period before the filing of the complaint, with the understanding that challenges to the timeliness of any individual plaintiff's actions, including arguments in favor of equitable tolling, may be entertained at a later date. See Hamadou, 915 F. Supp. 2d at 668; Slamna v. API Restaurant Corp., No. 12-CV-757 (RWS), 2013 WL 3340290, at *4 (S.D.N.Y. July 2, 2013). On that basis, it is appropriate here to calculate the three-year look back period for notice from the

---

[3] Defendant maintains it does not collect email addresses for employees.

filing of the Complaint. <u>Bittencourt v. Ferrara Bakery & Cafe Inc.</u>, 310 F.R.D. 106, 116-17 (S.D.N.Y. 2015).

### 4. Notice Should Be Included in Current Workers' Pay Envelopes

Defendant objects to the inclusion of the notice in employees' pay envelopes.[4] Defendant's sole argument in support of this objection is that Plaintiffs have failed to justify that particular form of notice. <u>See</u> Def. Mem. at 21. Yet courts in this Circuit have signaled approval of the use of pay envelopes as a useful method of providing notice in FLSA actions. <u>See</u> <u>Alvarez v. Schnipper Restaurants LLC</u>, No. 16-CV-5779 (ER), 2017 WL 6375793, at *6 (S.D.N.Y. Dec. 12, 2017); <u>Garcia v. Spectrum of Creations Inc.</u>, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015). The Court agrees that the provision of notice in pay envelopes is a valid form of disseminating notice and Plaintiffs' request to supply notice in such manner is granted.

### 5. Plaintiffs are Authorized to Send One-Time Reminder Notices

The parties disagree as to whether Plaintiffs shall send "Reminder Notices" (<u>see</u> ECF No. 33 ("Pls. Reply"), Ex. 12) to potential opt-in plaintiffs 30 days into the 60-day notice period.[5] Reminder notices promote the FLSA's broad remedial purpose and the goals of court-authorized notice generally. <u>See</u> <u>Morris v. Lettire Const., Corp.</u>, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012); <u>Brown v. AvalonBay Communities, Inc.</u>, No. 17-CV-6897 (AKT), 2019 WL 1507901, at *13 (E.D.N.Y. Mar. 29, 2019) ("The weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA."). Further, Plaintiffs will bear the cost of the reminder postcard mailing and the mailing will not

---

[4] Defendant objects to posting the notice in OTG restaurants, citing Plaintiffs' Proposed Form of Order at paragraph 5. Plaintiffs represent they do not seek that form of notice. Pls. Reply at n.16. To avoid doubt, the Court clarifies that notice shall not be posted in OTG restaurants and shall be distributed solely by the means authorized in this Order.

[5] The Court approves a 60-day notice period, which Defendant does not contest. <u>See</u> Def. Mem. at n.16.

affect the length of the notice period, minimizing any burden or prejudice to Defendant. Plaintiffs' proposed reminder notice—a one-time mailing—is therefore approved as to content and form.

## CONCLUSION

Plaintiffs' motion for conditional certification of a collective action under the FLSA at ECF No. 21 is GRANTED in part. The collective action is conditionally certified as to all servers, bartenders, and other tipped employees who were supervised or managed by Defendant's agents and who operated out of EWR, LGA, or JFK between September 5, 2016, and the present.

The Court authorizes notice to be sent to all servers, bartenders, and all other tipped workers employed by Defendant at EWR, LGA, or JFK between September 5, 2016, and the present, in accordance with the directions on contents and form set forth herein. Defendant is to provide Plaintiffs the approved contact information within 30 days of this Order. Plaintiffs shall file a final proposed notice for the Court's approval within 14 days of this Order. The parties are also directed to meet and confer and submit a joint letter to the Court by no later than 14 days from this Order. The joint letter should state whether the parties believe a settlement conference before me or a referral to the Court's mediation program would be productive at this time. Additionally, the letter should propose a discovery schedule.

The Clerk of Court is respectfully directed to GRANT in part the motion at ECF No. 21.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      March 30, 2021
            New York, New York

20