IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAFINIS FILHO, RAQUEL ERNEST, and CHANTEL LYNCH** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br> -against-<br><br>**OTG Management, LLC,**<br><br>        Defendant. | Case No. 19-CV-8287 (ALC) (SN) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OPT-IN PLAINTIFFS FROM THE ACTION**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 3

I.   This Court—Not an Arbitrator—Has Authority to Decide the Gateway Issue of Whether Plaintiffs Agreed to Arbitration. ................................................................................ 3

II.  OTG Failed to Prove that the Opt-In Plaintiffs Agreed to Arbitration of Their Claims. ......................................................................................................................... 5

III. Plaintiffs Need Discovery as to Contract Formation. ................................................. 8

IV.  If the Court Finds That Any Opt-In Plaintiff Must Arbitrate, It Should Stay Such Opt-In Plaintiff's Claims Pending Arbitration, Not Dismiss Them. ............................. 11

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Accardo v. Equifax, Inc.*,
  No. 18 Civ. 5030, 2019 WL 5695947 (E.D.N.Y. Aug. 9, 2019) ...................................... 4, 9, 10

*Aleksanian v. Uber Techs. Inc.*,
  No. 19 Civ. 10308, 2021 WL 860127 (S.D.N.Y. Mar. 8, 2021) ............................................... 9

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ...................................................................................................... 4

*Bensadoun v. Jobe-Riat*,
  316 F.3d 171 (2d Cir. 2003) ...................................................................................................... 8

*Charter Commc'ns, Inc. v. Garfin*,
  No. 20 Civ. 7049, 2021 WL 694549 (S.D.N.Y. Feb. 23, 2021) ............................................. 11

*Hudson v. Babilonia*,
  No. 14 Civ. 01646, 2015 WL 1780879 (D. Conn. Apr. 20, 2015) ......................................... 10

*Iota Shipholding Ltd. v. Starr Indem. & Liab. Co.*,
  No. 16 Civ. 4881, 2017 WL 2374359 (S.D.N.Y. May 31, 2017) ............................................. 4

*Kalfas v. E.F. Hutton & Co.*,
  No. 86 Civ. 3414, 1987 WL 10831 (E.D.N.Y. Apr. 30, 1987) ................................................. 8

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) .................................................................................................... 11

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) .................................................................................................... 8, 9

*Mobile Real Est., LLC v. NewPoint Media Grp., LLC*,
  460 F. Supp. 3d 457 (S.D.N.Y. 2020) ....................................................................................... 4

*Moss v. BMO Harris Bank, N.A.*,
  No. 13 Civ. 05438, 2014 WL 2565824 (E.D.N.Y. June 9, 2014) ............................................. 9

*Moton v. Maplebear Inc.*,
  No. 15 Civ. 8879, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) .................................................. 9

*Nicosia v. Amazon.com, Inc.*,
  No. 14 Civ. 4513, 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017) .......................................... 4

*Occilien v. Related Partners, Inc.*,
  No. 19 Civ. 7634, 2021 WL 184399 (S.D.N.Y. Jan. 19, 2021) .............................................. 11

*Ohanian v. Apple Inc.*,
　　No. 20 Civ. 5162, 2021 WL 871501 (S.D.N.Y. Mar. 9, 2021) ................................................8

*Russell v. Mimeo, Inc.*,
　　No. 08 Civ. 5354, 2008 WL 6559743 (S.D.N.Y. Oct. 29, 2008) .........................................5, 8

*Scotti v. Tough Mudder Inc.*,
　　97 N.Y.S.3d 825 (N.Y. Sup. Ct. 2019) ................................................................................5, 7

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
　　999 F.3d 828 (2d Cir. 2021) .................................................................................................1, 7

*Specht v. Netscape Commc'ns Corp.*,
　　306 F.3d 17 (2d Cir. 2002) ........................................................................................................4

*Starke v. SquareTrade, Inc.*,
　　913 F.3d 279 (2d Cir. 2019) .............................................................................................5, 6, 7

*TIG Ins. Co. v. Am. Home Assurance Co.*,
　　No. 18 Civ. 10183, 2020 WL 605974 (S.D.N.Y. Feb. 7, 2020) ..............................................11

*UBS Secs. LLC v. Prowse*,
　　No. 20 Civ. 217, 2020 WL 433859 (S.D.N.Y. Jan. 27, 2020)...................................................5

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
　　363 U.S. 574 (1960)..................................................................................................................4

*Zambrano v. Strategic Delivery Sols., LLC*,
　　No. 15 Civ. 8410, 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ..........................................11

**Statutes**

9 U.S.C. § 3 ....................................................................................................................................11

29 U.S.C. § 216(b) ...........................................................................................................................1

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* .....................................................................1

**PRELIMINARY STATEMENT**

OTG Management, LLC ("OTG")'s motion to compel arbitration should be denied because it failed to prove that it formed contracts to arbitrate the Opt-In Plaintiffs' wage and hour claims. The only evidence OTG relies on—signature pages—are insufficient to meet their evidentiary burden. The validity and enforceability of an arbitration agreement depends not only on whether the document is signed, but proof that employees knew what they were signing. *See e.g., Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 840 (2d Cir. 2021) (online arbitration agreement unenforceable because the terms and conditions were not reasonably conspicuous). The declarations of a dozen Opt-in Plaintiffs confirm that they never saw full copies of OTG's arbitration agreements. *See infra* at 3-4. In the absence of evidence that the Opt-in Plaintiffs understood what they were signing and thereby assented to be bound by the terms of the arbitration agreements, OTG's Motion to Compel Arbitration, ECF No. 93, should be denied.

Alternatively, Plaintiffs respectfully request that the Court deny OTG's Motion to Compel Arbitration without prejudice (or hold it in abeyance) and allow Plaintiffs to take discovery on the contract formation dispute relating to the arbitration agreements.

**BACKGROUND**

Plaintiffs are airport restaurant and bar workers who brought this class and collective action to recover minimum wages, overtime compensation, misappropriated tips, and statutory penalties resulting from OTG's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and New York and New Jersey wage and hour laws. ECF No. 1 at 34-46.

On March 30, 2021, the Court granted in part Plaintiffs' motion for Court-authorized notice pursuant to 29 U.S.C. § 216(b) and permitted notice to be sent to tipped workers who

worked at LaGuardia, Newark, and John F. Kennedy airports since September 5, 2016. ECF No. 39. On June 24, 2021, Plaintiffs disseminated notice to 2,153 putative collective members and 690 individuals submitted timely consent forms.[1] On August 27, 2021, OTG filed a motion to compel 462 Opt-in Plaintiffs to arbitration and dismiss their claims from the case. ECF No. 93; ECF No. 95-1 (Exhibit B). In support of its Motion, OTG relies wholly on the signature pages purportedly signed by the Opt-in Plaintiffs. The signature line appears on the third page of the three-page Mutual Agreement to Arbitrate Claims, and OTG's exhibit includes only the last page of each agreement. *See, e.g.*, ECF No. 95-1 at 2.[2]

The declarations of 12 Opt-in Plaintiffs demonstrated that they never formed contracts with OTG because they did not understand what they were signing.[3] The Opt-in Plaintiffs reviewed the signature pages OTG filed in support of its Motion,[4] some of which appear to have been signed electronically, and others by hand.[5] Despite some recognizing their signatures, none of the Opt-in Plaintiffs who submitted declarations recall signing—or even reviewing—the arbitration agreement.[6] All but one Opt-in Plaintiff did not recall OTG ever informing them that

---

[1] Nineteen individuals submitted consent forms after the deadline, which Plaintiffs have requested that the Court deem as timely filed. ECF No. 100. If the Court grants that motion, which is still currently pending, the total number of collective members in this case will be 709.
[2] OTG does not have arbitration agreements for the three Named Plaintiffs in this action, Dafinis Filho, Raquel Ernest, and Chantel Lynch, or 220 other members of the collective.
[3] Ex. A (Declaration of Molly Brooks ("Brooks Decl.")) ¶ 3. Unless otherwise indicated, all exhibits are attached to the Declaration of Molly Brooks.
[4] *See* Ex. 1 (Decl. of Erick Ramos) ¶ 4; Ex. 2 (Decl. of Gregory Butler) ¶ 4; Ex. 3 (Decl. of Henri Culquicondor) ¶ 4; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 4; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 4; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 4; Ex. 7 (Decl. of Syed Hossain) ¶ 4; Ex. 8 (Decl. of Corina Liranzo) ¶ 4; Ex. 9 (Decl. of Brijesh Katal) ¶ 4; Ex. 10 (Decl. of Shapphire Palmer) ¶ 4; Ex. 11 (Decl. of Dynasia Brown) ¶ 4; Ex. 12 (Decl. of Blanca Nieves) ¶ 4.
[5] Ex. A (Brooks Decl.) ¶ 2.
[6] *See* Ex. 1 (Decl. of Erick Ramos) ¶ 5-6; Ex. 2 (Decl. of Gregory Butler) ¶¶ 5, 8; Ex. 3 (Decl. of Henri Culquicondor) ¶¶ 5, 8; Ex. 4 (Decl. of Katherine Szmurlo) ¶¶ 5, 8; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶¶ 5, 8; Ex. 6 (Decl. of Rosemarie Magrino) ¶¶ 5, 8; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶¶ 5, 8; Ex. 9 (Decl. of Brijesh Katal) ¶¶ 5, 8;

it required them to sign an arbitration agreement.[7]  Virtually none of the Opt-in Plaintiffs understood what arbitration or an arbitration agreement was until they became involved in this lawsuit,[8] and all but two state that OTG never explained what an arbitration agreement is.[9] While some of the Opt-in Plaintiffs acknowledge that their signatures appear on the signature pages of the arbitration agreements,[10] some either cannot confirm the signature is theirs or know with certainty that it is not.[11]

## ARGUMENT

### I.   This Court—Not an Arbitrator—Has Authority to Decide the Gateway Issue of Whether Plaintiffs Agreed to Arbitration.

The Court, as opposed to an arbitrator, decides whether the parties formed a valid and enforceable arbitration agreement.  In deciding whether a dispute is arbitrable, a district court

---

Ex. 10 (Decl. of Shapphire Palmer) ¶¶ 5, 8; Ex. 11 (Decl. of Dynasia Brown) ¶ 5; Ex. 12 (Decl. of Blanca Nieves) ¶¶ 5, 7.

[7]  *See* Ex. 2 (Decl. of Gregory Butler) ¶ 6; Ex. 3 (Decl. of Henri Culquicondor) ¶ 6; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 6; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 6; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 6; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶ 6; Ex. 9 (Decl. of Brijesh Katal) ¶ 6; Ex. 10 (Decl. of Shapphire Palmer) ¶ 6; Ex. 11 (Decl. of Dynasia Brown) ¶ 7; Ex. 12 (Decl. of Blanca Nieves) ¶ 8.

[8]  *See* Ex. 1 (Decl. of Erick Ramos) ¶ 8; Ex. 2 (Decl. of Gregory Butler) ¶ 9; Ex. 3 (Decl. of Henri Culquicondor) ¶ 9; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 9; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 9; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶ 9; Ex. 9 (Decl. of Brijesh Katal) ¶ 9; Ex. 10 (Decl. of Shapphire Palmer) ¶ 9; Ex. 11 (Decl. of Dynasia Brown) ¶ 9; Ex. 12 (Decl. of Blanca Nieves) ¶ 10.

[9]  *See* Ex. 2 (Decl. of Gregory Butler) ¶ 6; Ex. 3 (Decl. of Henri Culquicondor) ¶ 6; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 6; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 6; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶ 6; Ex. 9 (Decl. of Brijesh Katal) ¶ 6; Ex. 10 (Decl. of Shapphire Palmer) ¶ 6; Ex. 11 (Decl. of Dynasia Brown) ¶ 7; Ex. 12 (Decl. of Blanca Nieves) ¶ 8.

[10]  Ex. 1 (Decl. of Erick Ramos) ¶ 6; Ex. 2 (Decl. of Gregory Butler) ¶ 8; Ex. 3 (Decl. of Henri Culquicondor) ¶ 8; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 8; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 8; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 8; Ex. 8 (Decl. of Corina Liranzo) ¶ 8; Ex. 9 (Decl. of Brijesh Katal) ¶ 8; Ex. 10 (Decl. of Shapphire Palmer) ¶ 8.

[11]  Ex. 7 (Decl. of Syed Hossain) ¶ 5; Ex. 11 (Decl. of Dynasia Brown) ¶ 6; Ex. 12 (Decl. of Blanca Nieves) ¶ 6.

must first determine two threshold issues based on state law: "(1) Did the parties enter into a contractually valid arbitration agreement? and (2) if so, does the parties' dispute fall within the scope of the arbitration agreement?" *Accardo v. Equifax, Inc.*, No. 18 Civ. 5030, 2019 WL 5695947, at *6 (E.D.N.Y. Aug. 9, 2019) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960); *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011).

"Before determining who decides arbitrability, however, the Court must determine the initial validity of the agreement to arbitrate." *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 470-71 (S.D.N.Y. 2020). It is the role of the Court, not the arbitrator, to resolve challenges to "'the very existence' of the contract embodying the arbitration clause." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)). "[I]f a party challenges the formation *or* execution of the contract, 'it is the court's role to determine whether a contract exists.'" *Nicosia v. Amazon.com, Inc.*, No. 14 Civ. 4513, 2017 WL 10111078, at *16 n.32 (E.D.N.Y. Aug. 18, 2017) (quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427, 2016 WL 4617159, at *10 (E.D.N.Y. Sept. 2, 2016)), *adopted by* 384 F. Supp. 3d 254 (E.D.N.Y. 2019); *see also Mobile Real Est., LLC*, 460 F. Supp. 3d at 471; *Iota Shipholding Ltd. v. Starr Indem. & Liab. Co.*, No. 16 Civ. 4881, 2017 WL 2374359, at *6 (S.D.N.Y. May 31, 2017) ("[E]ven the broadest arbitration clause cannot bind a party who *never* agreed to it." (quoting *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016))).

OTG relies on *UBS Secs. LLC v. Prowse* to assert that the question of arbitrability is delegated to the arbitrator. No. 20 Civ. 217, 2020 WL 433859, at *4 (S.D.N.Y. Jan. 27, 2020). This case is easily distinguishable, however, because the court in *UBS* first determined that the arbitration agreement was valid, and only then did it decide if arbitrability was a question for the arbitrator. *Id.* Here, the question of whether the arbitration agreements are valid has not yet been answered. As explained below, Opt-in Plaintiffs dispute the formation and enforceability of the arbitration agreements. The Court must therefore first determine whether a valid contract was formed between OTG and the Opt-in Plaintiffs.

**II.    OTG Failed to Prove that the Opt-In Plaintiffs Agreed to Arbitration of Their Claims.**

OTG's motion must be denied because it failed to prove that the Opt-in Plaintiffs agreed to arbitration of their claims. *See Russell v. Mimeo, Inc.*, No. 08 Civ. 5354, 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008) ("The party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." (quoting *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487, 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004))). "It is well settled that '[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Scotti v. Tough Mudder Inc.*, 97 N.Y.S.3d 825, 831 (N.Y. Sup. Ct. 2019) (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006)). As the party seeking arbitration, OTG bears the burden of establishing that an agreement to arbitrate exists. *See id.*

Arbitration is "a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). In order for a contract to be binding, the parties must have a "meeting of the minds" and a "manifestation of mutual assent." *Id.* "The manifestation of mutual assent must be

5

sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* at 289. An offeree is bound by the terms of an agreement if she has actual or "inquiry" notice of the terms *and* "assents to them through conduct that a reasonable person would understand to constitute assent." *Id.*

To meet its burden here, OTG was required prove that the 462 Opt-in Plaintiffs who are subject to this motion assented to its arbitration agreements. It failed to do so. OTG relies on signature pages alone, omitting any evidence that Opt-in Plaintiffs assented to—let alone were aware of—the arbitration agreements. In fact, none of the Opt-in Plaintiffs who submitted declarations recall reviewing or signing the agreement,[12] most had no understanding whatsoever regarding the process of arbitration,[13] and some dispute that their true signatures appear on the agreements.[14]

While there is no evidence of the process OTG used to obtain signatures, the signature pages appear to have signatures that were applied either by hand or by electronic signature. Ex. A (Brooks Decl.) ¶ 2. To establish assent to its online contracts, OTG is required to show that

---

[12] Ex. 1 (Decl. of Erick Ramos) ¶ 6; Ex. 2 (Decl. of Gregory Butler) ¶ 8; Ex. 3 (Decl. of Henri Culquicondor) ¶ 8; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 8; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 8; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 8; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶ 8; Ex. 9 (Decl. of Brijesh Katal) ¶ 8; Ex. 10 (Decl. of Shapphire Palmer) ¶ 8; Ex. 11 (Decl. of Dynasia Brown) ¶ 5-6; Ex. 12 (Decl. of Blanca Nieves) ¶ 7.
[13] *See* Ex. 1 (Decl. of Erick Ramos) ¶ 8; Ex. 2 (Decl. of Gregory Butler) ¶ 9; Ex. 3 (Decl. of Henri Culquicondor) ¶ 9; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 9; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 9; Ex. 8 (Decl. of Corina Liranzo) ¶ 9; Ex. 9 (Decl. of Brijesh Katal) ¶ 9; Ex. 10 (Decl. of Shapphire Palmer) ¶ 9; Ex. 11 (Decl. of Dynasia Brown) ¶ 9; Ex. 12 (Decl. of Blanca Nieves) ¶ 10.
[14] Ex. 7 (Decl. of Syed Hossain) ¶ 5; Ex. 11 (Decl. of Dynasia Brown) ¶ 6; Ex. 12 (Decl. of Blanca Nieves) ¶ 6.

"the notice of the arbitration provision was reasonably conspicuous, and manifestation of assent is unambiguous as a matter of law." *Scotti*, 97 N.Y.S.3d at 832-33. "In the context of web-based contracts, [courts] look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms." *Starke*, 913 F.3d at 289; *see also id.* (citing 22 N.Y. Jur. 2d Contracts § 29 ("[A] party should not be bound by clauses printed on the reverse side of a contract unless it is established that they were properly called to his or her attention and that he or she assented to them.")). In *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, the Second Circuit found Subway's online arbitration agreement unenforceable because the terms and conditions were not reasonably conspicuous. *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 840 (2d Cir. 2021). Specifically, the court analyzed both the design of the advertisement and the language used to determine whether a "reasonably prudent" person would be on inquiry notice. *Id.* at 835. *See also Starke*, 913 F.3d at 289 (for web-based contracts, courts look to the design and content of the webpage to determine if the offeree was on inquiry notice of contract terms).

OTG has not provided a scintilla of evidence that the process for executing the online or hardcopy agreements put Opt-ins on notice of the arbitration terms. Instead, they rely entirely on the mere existence of signature pages to claim that the arbitration agreements are valid. ECF No. 93 at 6-8. This meager evidentiary showing is insufficient for a motion to compel arbitration. *See, e.g.*, *Scotti*, 97 N.Y.S.3d at 854 (denying motion to compel because defendant failed to set forth how the arbitration agreement appeared to plaintiffs and other users on the website). Contract formation is further called into question, regardless of whether the signature was obtained electronically or in person, where, as here, employees have never seen the complete

7

arbitration agreement.[15] *See, e.g., Ohanian v. Apple Inc.*, No. 20 Civ. 5162, 2021 WL 871501, at *3 (S.D.N.Y. Mar. 9, 2021) (finding genuine issue of material fact based on sworn affidavit from plaintiff that he had never seen the arbitration agreement and denying motion to compel arbitration); *Kalfas v. E.F. Hutton & Co.*, No. 86 Civ. 3414, 1987 WL 10831, at *8 (E.D.N.Y. Apr. 30, 1987) (finding genuine issue of material fact based on sworn affidavit from plaintiff disavowing authenticity of signature and denying motion to compel arbitration).

OTG failed to meet its burden to prove by a preponderance of the evidence that the Opt-in Plaintiffs agreed to arbitrate their claims. *See Russell*, 2008 WL 6559743, at *1. Its motion should be denied.

### III. Plaintiffs Need Discovery as to Contract Formation.

OTG must meet the summary judgment standard for each Opt-in Plaintiff—that there is no material issue of fact as to whether there was an agreement to arbitrate—to prevail on its Motions to Compel. When reviewing a motion to compel arbitration, courts in the Second Circuit apply a "standard similar to that applicable for a motion for summary judgment," and "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is

---

[15] Ex. 1 (Decl. of Erick Ramos) ¶ 6; Ex. 2 (Decl. of Gregory Butler) ¶¶ 5, 7, 8; Ex. 3 (Decl. of Henri Culquicondor) ¶¶ 5, 7, 8; Ex. 4 (Decl. of Katherine Szmurlo) ¶¶ 5, 7, 8; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶¶ 5, 7, 8; Ex. 6 (Decl. of Rosemarie Magrino) ¶¶ 5, 7, 8; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8 (Decl. of Corina Liranzo) ¶¶ 5, 7, 8; Ex. 9 (Decl. of Brijesh Katal) ¶¶ 5, 7, 8; Ex. 10 (Decl. of Shapphire Palmer) ¶¶ 5, 7, 8; Ex. 11 (Decl. of Dynasia Brown) ¶¶ 5, 8; Ex. 12 (Decl. of Blanca Nieves) ¶¶ 5, 9.

required to determine arbitrability."). The Court draws all reasonable inferences in favor of the non-moving party. *Meyer*, 868 F.3d at 74.

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Accardo*, 2019 WL 5695947, at *6 (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)). Therefore, "[i]n a typical motion to compel arbitration . . . some discovery may be allowable or necessary." *Moss v. BMO Harris Bank, N.A.*, No. 13 Civ. 05438, 2014 WL 2565824, at *2 (E.D.N.Y. June 9, 2014) (quoting *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 06705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012)); *see also Aleksanian v. Uber Techs. Inc.*, No. 19 Civ. 10308, 2021 WL 860127, at *4 (S.D.N.Y. Mar. 8, 2021) (Carter, J.) (noting that, under the lower motion to dismiss standard as applied to motions to compel arbitration, if "the documents do not suffice" or where "plaintiff responds to the motion with additional facts that place the issue in dispute, the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing." (quoting *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019))).

Where, as is the case here, the party opposing arbitration "come[s] forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did," courts "permit[] limited discovery into the validity of the arbitration agreement." *Moton v. Maplebear Inc.*, No. 15 Civ. 8879, 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013)). The dozen Opt-ins Plaintiffs' declarations call into question the enforceability of the arbitration agreements and raise a genuine issue of material fact as to whether the parties entered into an agreement. *See,*

9

*e.g.*, *Accardo*, 2019 WL 5695947, at *7 (allowing additional discovery on the issue of whether a valid arbitration agreement existed where the plaintiff submitted a sworn affidavit denying he signed an agreement containing an arbitration provision); *Hudson v. Babilonia*, No. 14 Civ. 01646, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015) (providing that plaintiff's "sworn affidavit suffice[d] to raise genuine disputes of material fact as to whether an arbitration agreement . . . was ever formed").

Here, as discussed above, in support of its Motion, OTG filed no more than copies of signature pages. Def's Motion Ex. C. The Opt-in Plaintiffs declarations show that they have no recollection of even signing the agreement[16] and create a genuine dispute of material fact as to whether valid arbitration agreements exist. Accordingly, the record before the Court is insufficient to demonstrate that the agreements are enforceable. In the event the Court does not immediately deny OTG's motion, Plaintiffs request that the Court dismiss the Motion to Compel Arbitration without prejudice (or hold it in abeyance) and allow Plaintiffs to take discovery on the contract formation dispute relating to the arbitration agreements.

Specifically, Plaintiffs request permission to serve written discovery and take a 30(b)(6) deposition of a corporate representative with knowledge of OTG's processes for gathering signatures for arbitration agreements from tipped workers at each airport throughout the relevant time period. Plaintiff's proposed discovery is precisely targeted to supplement the scant record before the Court.

---

[16] *See* Ex. 1 (Decl. of Erick Ramos) ¶ 6; Ex. 2 (Decl. of Gregory Butler) ¶ 8; Ex. 3 (Decl. of Henri Culquicondor) ¶ 8; Ex. 4 (Decl. of Katherine Szmurlo) ¶ 8; Ex. 5 (Decl. of Naket Jadix Trinidad) ¶ 8; Ex. 6 (Decl. of Rosemarie Magrino) ¶ 8; Ex. 7 (Decl. of Syed Hossain) ¶ 6; Ex. 8(Decl. of Corina Liranzo) ¶ 8; Ex. 9 (Decl. of Brijesh Katal) ¶ 8; Ex. 10 (Decl. of Shapphire Palmer) ¶ 8; Ex. 11 (Decl. of Dynasia Brown) ¶¶ 5-6; Ex. 12 (Decl. of Blanca Nieves) ¶ 7.

## IV.   If the Court Finds That Any Opt-In Plaintiff Must Arbitrate, It Should Stay Such Opt-In Plaintiff's Claims Pending Arbitration, Not Dismiss Them.

If the Court is inclined to grant OTG's Motion, Plaintiffs request that it stay the Opt-in Plaintiffs' claims pending arbitration, not dismiss them. *See* 9 U.S.C. § 3 ("[T]he court . . . shall on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (holding that "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested").  "As the Second Circuit has observed, a stay permits the parties to move their dispute 'out of court and into arbitration as quickly and easily as possible.'" *Charter Commc'ns, Inc. v. Garfin*, No. 20 Civ. 7049, 2021 WL 694549, at *14 (S.D.N.Y. Feb. 23, 2021) (quoting *Katz*, 794 F.3d at 346).  "A stay would also allow the Court, at a later stage, to address any claim by Plaintiffs that they were not able to vindicate all their statutory rights due to costs or fees imposed on them in arbitration." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016).  Accordingly, Courts within this Circuit routinely choose to stay the proceedings pending the conclusion of the arbitration process.[17]

## CONCLUSION

For the foregoing reasons, OTG's motion should be denied in its entirety, and in the alternative, OTG's Motion to Compel should be denied without prejudice (or held in abeyance)

---

[17]   *See, e.g.*, *Occilien v. Related Partners, Inc.*, No. 19 Civ. 7634, 2021 WL 184399, at *9 (S.D.N.Y. Jan. 19, 2021) ("When all claims have been referred to arbitration and a stay is requested, the Court must grant the stay."), *reconsideration denied*, No. 19 Civ. 7634, 2021 WL 1222289 (S.D.N.Y. Apr. 1, 2021); *TIG Ins. Co. v. Am. Home Assurance Co.*, No. 18 Civ. 10183, 2020 WL 605974, at *4 (S.D.N.Y. Feb. 7, 2020) (rejecting defendant's request to dismiss case and stating "[t]he Second Circuit has made clear that staying—as opposed to dismissing—an action in which all claims have been referred to arbitration is the proper course.").

11

and Plaintiffs' request for discovery on contract formation should be granted. If the Court decides to grant OTG's Motion and orders that any Opt-in Plaintiff must arbitrate, it should stay instead of dismiss the Opt-in Plaintiffs' claims pending arbitration.

Dated: September 24, 2021
      New York, NY

                        Respectfully submitted,

                        */s/ Molly A. Brooks*
                        Molly A. Brooks
                        **OUTTEN & GOLDEN LLP**
                        Molly A. Brooks
                        Amy L. Maurer
                        685 Third Avenue, 25th Floor
                        New York, NY 10017
                        Telephone: (212) 245-1000
                        mb@outtengolden.com
                        amaurer@outtengolden.com

                        Hannah Cole-Chu*
                        **OUTTEN & GOLDEN LLP**
                        601 Massachusetts Ave. Suite 200W
                        Washington, D.C. 20001
                        Telephone: (202) 847-4400
                        hcolechu@outtengolden.com

                        *Attorneys for Plaintiffs and the Putative Classes and Collective*

                        *Admitted pro hac vice

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 24, 2021, the foregoing was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and, will be sent electronically to the registered participants identified on the Notice of Electronic Filings.

/s/ *Molly A. Brooks*
Molly A. Brooks
**OUTTEN & GOLDEN LLP**
Molly A. Brooks
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mb@outtengolden.com