USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/29/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
DAFINIS FILHO, RAQUEL ERNEST and
CHANTEL LYNCH, *on behalf of themselves and
others similarly situated*,

                                 **Plaintiffs,**

      -against-

OTG MANAGEMENT, LLC,

                                 **Defendant.**
------------------------------------------------------------------- x

19-CV-08287 (ALC) (SN)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiffs Dafinis Filho, Raquel Ernest and Chantel Lynch, on behalf of themselves and others similarly situated, bring this suit against Defendant OTG Management, LLC ("OTG") pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and New York and New Jersey wage and hour laws. Defendant OTG now moves to compel arbitration and dismiss certain opt-in plaintiffs who signed arbitration agreements. For the reasons that follow, the Court grants Defendant's motion to compel arbitration.

## BACKGROUND

      Defendant OTG owns and operates bars, restaurants, and retail stores in airport terminals, including Newark Liberty Airport in New Jersey ("EWR"), John F. Kennedy Airport in New York ("JFK"), and LaGuardia Airport in New York ("LGA"). ECF No. 1 ("Compl.") ¶ 1. Plaintiffs were employed at Defendant's restaurants in EWR and JFK between 2013 and 2018. *Id*. ¶¶ 8–21. On March 30, 2021, Magistrate Judge Sarah Netburn conditionally certified a collection active under the FLSA as to all servers, bartenders, and tipped employees who were supervised or managed by Defendant's agents and who operated out of EWR, LGA, or JFK since September 5, 2016. *See* ECF No. 39. Plaintiffs sent notice to putative collective members ("Opt-in Plaintiffs"), directing

them how to opt in to the lawsuit. *See, e.g.*, ECF No. 47. On October 19, 2021, Magistrate Judge Netburn permitted those putative members who submitted their opt-in forms past the deadline to join the collective action as Opt-in Plaintiffs. *See* ECF No. 115.

A subset of Opt-in Plaintiffs ("Arbitration Opt-in Plaintiffs") entered into arbitration agreements with Defendant. The agreement in relevant part states:

> [T]he dispute resolution procedure set forth in this Agreement applies to any and all claims, grievances, and/or causes of action . . . arising out of or in connection with Employee's employment relationship with Employer, the terms and conditions of employment, or termination of employment with Employer . . . including, but not limited to, claims arising under federal, state or local laws and regulations, including . . . the Fair Labor Standards Act . . . [and] any state laws affecting an employee's rights . . . .

ECF No. 95-1 at ¶ 3. The agreement specified that claims would be determined by arbitration in accordance with the Comprehensive Arbitration Rules & Procedures of JAMS. *Id*. at ¶ 4. On August 31, 2021, Defendant filed the instant motion, arguing that the Arbitration Opt-in Plaintiffs must be dismissed and their claims should be handled in arbitration proceedings pursuant to the arbitration agreements they signed.

Defendant's motion to compel originally applied to 458 Opt-in Plaintiffs. On October 27, 2021, March 8, 2022, and June 14, 2022, the Court approved the inclusion in this motion of 99 additional Arbitration Opt-in Plaintiffs who were not included in the motion upon filing. *See* ECF Nos. 117, 133, 139.

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") governs arbitration agreements. *See* 9 U.S.C. § 2. There is "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and citations omitted); *see also Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)

("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." (internal quotation marks and citations omitted)).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The moving party must "mak[e] a *prima facie* initial showing that an agreement to arbitrate existed," and if the movant satisfies its burden "by a showing of evidentiary facts," then the burden shifts to the non-movant to show the agreement is invalid or inapplicable. *Marcus v. Collins*, No. 16-CV-4221, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016) (internal quotation marks and citations omitted).

Arbitration agreements are treated as any other contract; thus, they are governed by state law principles of contract formation. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Defendant contends, and Plaintiffs do not dispute, that New York law governs the arbitration agreements entered into by Arbitration Opt-in Plaintiffs who worked at JFK and LGA, while New Jersey law governs the arbitration agreements entered into by the Arbitration Opt-in Plaintiffs who worked at EWR.

## DISCUSSION

Plaintiffs do not dispute that the claims in this action are within the scope of the arbitration agreements. Therefore, the Court only addresses the validity of the arbitration agreements.

Under New York law, a contract is valid if there is "offer, acceptance, consideration, mutual assent and intent to be bound." *Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*, No. 15-CV-89, 2015 WL 3542548, at *3 (S.D.N.Y. June 5, 2015) (quoting *Rensselaer Polytechnic Inst. v. Varian, Inc.*, 340 F. App'x 747, 749 (2d Cir. 2009)). "In the absence of fraud or other

3

wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and citations omitted). Similarly, New Jersey law requires "mutual assent, consideration, legality of the object of the contract, capacity of the parties and formulation of memorialization." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006). New Jersey courts apply "the general rule that where a party affixes [her] signature to a written instrument, . . . a conclusive presumption arises that [she] read, understood and assented to its terms and [she] will not be heard to complain that [she] did not comprehend the effect of [her] act in signing." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) (internal quotations and citations omitted). Thus, the Third Circuit has stated that "if all it took to avoid a signed contract was to claim ignorance of its content or legal effect, contracts would not be worth the paper on which they are written." *Id*. (internal quotation marks and citations omitted).

The Court finds that Defendant has met its *prima facie* burden by submitting a complete version of the arbitration agreement, the signature page for each of the Arbitration Opt-In Plaintiffs, and a declaration that all of the Arbitration Opt-In Plaintiffs entered into "substantively identical" arbitration agreements. ECF No. 95 ¶ 5.

The burden thus shifts to Plaintiffs. Plaintiffs' primary dispute is not that the Arbitration Opt-in Plaintiffs did not sign the arbitration agreements.[1] Rather, attaching declarations of 12 Arbitration Opt-in Plaintiffs "demonstrat[ing] they never formed contracts with OTG because

---

[1] As discussed below, one of the 12 declarants explicitly denies that the arbitration agreement contains their signature, while two declarants state that they "cannot confirm that this is my true signature" and that "[t]he signature on this document does not look like my true signature." *See* ECF Nos. 107-8, 107-12, 107-13.

4

they did not understand what they were signing," Plaintiffs contend that the Arbitration Opt-in Plaintiffs did not receive the complete arbitration agreement; therefore, they did not assent to the arbitration agreements. ECF No. 107 at 2. While the Second Circuit recently held that a sworn declaration attesting to the invalidity of the declarant's signature can defeat a motion to compel, the Circuit specified that to succeed, the declarant "must categorically and specifically den[y] that the signature was hers" and noted that the successful declaration had additionally "pointed to other circumstantial evidence as to its inauthenticity." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 47 (2d Cir. 2022). Inversely, the Court stated that a declaration will not prevail "merely by making assertions that are based on speculation or are conclusory." *Id.* (internal quotation marks and citations omitted).

Applying these principles to the instant case leads the Court to conclude that the declarations are insufficient and the claims should proceed to arbitration. First, it is not enough for Plaintiffs to claim that the Arbitration Opt-in Plaintiffs did not know what they are signing because "[a] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract." *In re Lehman Brothers Inc.,* 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Second, "[w]here a party merely states that she cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a declaration ordinarily fails to create a triable issue of fact." *Barrows*, 36 F.4th at 51.

Here, eleven of the twelve declarants state that they do not remember signing or are uncertain if the signature is theirs. These Plaintiffs fail to carry their burden. The remaining declaration simply states that the declarant did not sign agreement because the signature "does not look [sic] my signature" and because "the printed name is spelled differently than mine," but

provides no additional details. ECF No. 107-8 ¶ 5. Without additional supporting allegations, this assertion is too conclusory to carry Plaintiff's burden; thus, the declaration is also insufficient.

Accordingly, finding that Plaintiffs have failed to prove the invalidity of the arbitration agreements, the Court grants Defendant's motion to compel.[2]

While the motion seeks dismissal of the Arbitration Opt-In Plaintiffs' claims, Plaintiffs request that the Court instead stay the claims. In accordance with the FAA, the Court grants Plaintiffs request and stays the claims pending the arbitration. *See* 9 U.S.C. § 3 ("[T]he court . . . shall on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration of the Arbitration Opt-In Plaintiffs' claims and stays the Arbitration Opt-In Plaintiffs' claims pending arbitration. The parties shall submit a letter regarding the status of arbitration every 90 days, with the first submission due 90 days from the date of this Order. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 93.

**SO ORDERED.**

**Dated: September 29, 2022**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[2] The Court notes that the Second Circuit recently held that an individual is covered by the FAA's exemption for those who work in the transportation industry "if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement." *Bissonnette v. LePage Bakeries Park St., LLC*, --- F.4th ----, 2022 WL 4457998, at *5 (2d Cir. Sept. 26, 2022). Accordingly, "not everyone who works in a transportation industry is a transportation worker;" "the commerce" of the plaintiff commercial truck drivers who delivered baked goods "is in breads, buns, rolls, and snack cakes--not transportation services." *Id*. So too here, while Plaintiffs may work in airports, they are restaurant and bar workers whose commerce is in food and drinks, not transportation services, and thus they are not excluded from the FAA.