**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DAFINIS FILHO, RAQUEL ERNEST, and CHANTEL LYNCH, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**OTG Management, LLC,**<br><br>**Defendant.** | Case No. 19-CV-8287 (ALC) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT, APPOINTMENT OF CLASS COUNSEL, AND
<u>APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................................... 1

    I.    Factual Allegations ............................................................................................. 1

    II.   Overview of Litigation, and Settlement Negotiations ...................................... 2

SUMMARY OF SETTLEMENT TERMS....................................................................................... 4

    I.    Monetary Settlement Terms............................................................................... 4

    II.   Class Definition ................................................................................................. 5

    III.  Allocation Plan ................................................................................................... 6

    IV.  Releases for Proposed Class Members .............................................................. 7

    V.   Attorneys' Fees and Costs and Service Awards ............................................... 7

    VI.  Settlement Administration ................................................................................. 7

ARGUMENT ......................................................................................................................... 9

    I.    Preliminary Approval of the Class Action Settlement Is Appropriate. ........... 9

       A.  Litigation Would Be Complex, Costly, and Long (Factor 1)......................... 11

       B.  The Court Cannot Assess the Reaction of the Class Until After
           Notice is Issued (Factor 2)........................................................................... 12

       C.  Discovery Has Advanced Far Enough to Allow the parties to
           Resolve the Case Responsibly (Factor 3). ................................................... 12

       D.  The Risk of Establishing Liability and Damages for the Class
           Through Trial Favors Approval (Factors 4 and 5). ...................................... 13

       E.  The Risk of Obtaining Class Certification Favors Approval (Factor 6). ....... 14

       F.  The Court Should Give Little Weight to Whether Defendant Can
           Withstand a Greater Judgment (Factor 7)..................................................... 15

       G.  The Settlement Is Substantial, Even in Light of the Best Possible
           Recovery and the Attendant Risks of Litigation (Factors 8 and 9). ............ 15

    II.   Conditional Certification of the Class Is Appropriate. ................................... 17

       A.  Numerosity Is Satisfied. ................................................................................ 17

       B.  Commonality Is Satisfied. ............................................................................. 17

       C.  Typicality Is Satisfied.................................................................................... 18

       D.  Adequacy of the Named Plaintiffs Is Satisfied. ............................................ 19

       E.  Certification Is Proper Under Rule 23(b)(3). ................................................ 20

ii

1.  Common Questions Predominate. .............................................................................. 20

2.  A Class Action Is a Superior Mechanism. ................................................................ 21

III.  Plaintiffs' Counsel Should Be Appointed as Class Counsel. ......................................... 22

IV.  The Proposed Notice and Claim Form, and Distribution Process,
Are Appropriate. ............................................................................................................. 23

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................. 11, 13, 15, 16

*Ballinger v. Advance Magazine Publrs., Inc.*,
    2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) .................................................. 16

*Capilupi v. People's United Fin., Inc.*, No. 15 Civ. 5247,
    2018 U.S. Dist. LEXIS 167550 (E.D.N.Y. Sept. 27, 2018) ............................................ 22-23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................... 10, 11, 16

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ..................................................... 18

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ......................................................................................... 17

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................... 22

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659,
    2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ................................................... 19

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................................ 11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174, 182 (W.D.N.Y. 2005) ................................................................... 16, 18

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................... 17

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) .................................................. 11

*Goldberg v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................................10

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) .................................................................................. 21

*Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472,
    2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ............................................ 18, 19

iv

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014) ............................................... 23

*Jacob v. Duane Reade, Inc.*,
  289 F.R.D. 408 (S.D.N.Y. 2013) ................................................... 23

*Karic v. Major Auto. Cos., Inc.*, No. 09 Civ. 5708,
  2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) .............................. 12-13

*Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600,
  2019 U.S. Dist. LEXIS 156295 (E.D.N.Y. Sept. 10, 2019) ............................ 23

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169, 175-76 (S.D.N.Y. 2014) .......................................... 20

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ...................................................... 19

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072, 1078 (2d Cir. 1995) ................................................. 9

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ................................................... 20

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713,
  2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 2, 2010) ............................... 9

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
  471 F.3d 24 (2d Cir. 2006) ........................................................ 20

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................. 13, 14

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................... 13

*In re PaineWebber Inc. Ltd. P'ships Litig.*, ..................................... 13
  117 F.3d 721 (2d Cir. 1997).

*Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812,
  2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014) ....................... 21, 22, 23

*Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637,
  2015 U.S. Dist. LEXIS 15966 (E.D.N.Y. Feb. 9, 2015) ............................ 18, 23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................... 19

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ............................. 21

*Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431,
    2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2013) .................................................. 9, 10

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) .................................................. 15

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
    2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010) ........................................................ 9

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237,
    2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .................................................. 19

*Tyson Foods Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................................................... 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) .............................................................................................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................................. 9, 10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .......................................................................................... 12, 13

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143,
    2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .................................................. 10

## RULES

Federal Rule of Civil Procedure 23 ...................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch ("Plaintiffs"), on behalf of themselves and others similarly situated, seek approval of a proposed settlement with Defendant OTG Management, LLC ("OTG" or "Defendant," collectively with Plaintiffs, the "parties"), resolving claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New Jersey Wage and Hour Law ("NJWHL").

As explained more fully below, the proposed settlement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval.  The Settlement provides a maximum payment of $1,550,000.  This is an excellent result for the Plaintiffs and the proposed Class and Collective in the face of significant risk to a class-wide recovery.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Molly A. Brooks ("Brooks Decl."); (2) preliminarily certify the proposed Class and appoint Plaintiffs' Counsel as Class Counsel under Fed. R. Civ. P. 23; (3) approve the proposed Notice and Claim Form and direct its distribution; (4) appoint Analytics LLC as the Settlement Administrator; and (5) schedule a fairness hearing on final approval of the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

OTG is a privately-owned company that owns and operates restaurants and bars within LaGuardia Airport, John F. Kennedy Airport, and Newark Liberty Airport.  ECF No. 1 ¶ 1. Plaintiffs and the proposed Class Members are current and former servers, bartenders, and/or other tipped workers ("Tipped Workers") who worked at OTG's restaurants at LaGuardia

Airport, John F. Kennedy Airport, and Newark Liberty Airport during the relevant time period asserted in the Complaint. *Id.* ¶ 4.

Plaintiffs allege that OTG violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New Jersey Wage and Hour Law ("NJWHL") by (1) failing to pay Tipped Workers the full minimum wage required under the FLSA, NYLL, and/or NJWL; (2) failing to pay Tipped Workers for all regular and overtime hours worked in violation of the FLSA, NYLL, and/or NJWL; (3) retaining a portion of Tipped Worker's tips in violation of the FLSA, NYLL, and/or NJWL; and (4) failing to provide Tipped Workers with adequate wage notices and wage statements in violation of the NYLL.  OTG denies these allegations and denies any wrongdoing, liability or damages.  It is OTG's position that it properly compensated Plaintiffs and other Tipped Workers and complied with all applicable federal and state law with respect to its Tipped Workers.

## II.    Overview of Litigation, and Settlement Negotiations

Plaintiffs filed this class and collective action on behalf of themselves and other Tipped Workers on September 5, 2019.  ECF No. 1.  On March 5, 2020, Plaintiffs filed their Motion for Court-Authorized Notice pursuant to Section 216(b) of the Fair Labor Standards Act.  ECF No. 21.  On March 30, 2021, the Court granted in part Plaintiffs' Motion for Court-Authorized Notice and permitted notice to be sent to Tipped Workers who worked for OTG at LaGuardia, Newark, and/or John F. Kennedy airports since September 5, 2016.  ECF No. 39.  On June 24, 2021, Plaintiffs sent notice to 2,153 putative collective members, and 709 individuals joined the case as Opt-in Plaintiffs ("Opt-in Plaintiffs").

OTG informed Plaintiffs that approximately 557 of the Opt-in Plaintiffs had signed arbitration agreements, and on August 27, 2021, OTG filed a Motion to Compel those Opt-in

Plaintiffs to arbitration and dismiss their claims from the case.  ECF No. 93.  The Court granted

that Motion to Compel on September 29, 2022.  ECF No. 147.  Accordingly, the Court held that

557 Opt-in Plaintiffs' claims must be litigated in arbitration, while 152 Opt-in Plaintiffs

remained in the Collective.  *Id.* at 6.

In the fall of 2021, after the opt-in period closed and the Court had ruled on OTG's

motion to compel arbitration, Plaintiffs' counsel reached out to OTG to invite it to consider

attending mediation.  Brooks Decl. ¶ 14.  OTG agreed, and the parties engaged Stephen P.

Sonnenberg, Esq., a well-respected mediator with significant experience involving employment

law disputes.  *Id.*  The parties requested and the Court granted a stay of discovery pending the

mediation.  ECF. No. 118 & 119.  Prior to the first mediation with Mr. Sonnenberg, OTG

produced an updated class list, pay and hours data for Class Members, and a sample of tip and

wage notices provided to Class Members.  Brooks Decl. ¶ 15.  Plaintiffs produced documents

from the Named Plaintiffs and seven Opt-in Plaintiffs in response to three documents requests

from OTG.  *Id.*  The parties attended a full-day mediation on December 20, 2021 but were

unable to come to an agreement at that time.  *Id.* ¶ 16.

Following the December 2021 mediation, the Court lifted the discovery stay and the

parties commenced discovery.  *Id.* ¶ 17.  The parties executed, and the Court approved an

electronically stored information (ESI) protocol, ECF. No. 113, and the parties negotiated a

sampling protocol to govern opt-in discovery.  Brooks Decl. ¶ 17.  Both parties served and

responded to written discovery requests, producing over 4,000 pages of documents.  *Id*.  In

addition to the Named Plaintiffs, 12 Opt-in Plaintiffs responded to OTG's separate Requests for

Production and Interrogatories.  *Id.*  Additionally, OTG took the depositions of the three Named

and the parties were in the process of scheduling depositions of a sample of Opt-in Plaintiffs, OTG human resources employees, managers, and 30(b)(6) depositions. *Id.*

On October 4, 2022, the Court directed the parties to meet and confer on whether a settlement conference would be productive. ECF No. 149. Subsequently, a settlement conference with Magistrate Judge Sarah Netburn was scheduled for December 21, 2022 and the Court ordered a stay of all discovery deadlines. ECF Nos. 151 & 152. The parties attended the settlement conference on December 21, 2022, followed by a second full-day conference on January 27, 2023, and a third session on March 14, 2023. Brooks Decl. ¶ 18. The parties reached an agreement in principle following the March 14 settlement conference. *Id.* ¶ 19. The parties then negotiated the Settlement Agreement and Release and fully executed the Agreement on June 8, 2023. *Id.*

## SUMMARY OF SETTLEMENT TERMS[1]

### I.    Monetary Settlement Terms

OTG has agreed to pay a Maximum Total Amount of $1,550,000 into a Settlement Fund. Ex. 1 ("Settlement Agreement") § 1.21. This total includes payments to Participating Class Members; employee tax withholdings; employer payroll taxes; Court-approved service awards to the Named Plaintiffs; Court-approved attorneys' fees and costs; and costs of settlement administration. *Id.* Any uncashed checks remaining from the "Gross Settlement Fund" shall be redistributed to Participating Class Members, if economically feasible, and, if not, awarded to *cy pres* designee, Make the Road New York. *Id.* § 3.5(B).

---

[1]    All capitalized terms used in this Brief are defined in the Settlement Agreement and Release attached to the Brooks Decl. as Exhibit 1.

## II.    Class Definition

The following groups of current and former OTG employees are defined as Class

Members by the Settlement Agreement:

    a. **Opt-Out Class Members** includes Federal 216(b) Claimants, Rule 23 New York Class Members, and Rule 23 New Jersey Class Members.

        i. **Federal 216(b) Claimants** includes all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport, John F. Kennedy Airport, and/or Newark Liberty Airport any time between September 6, 2016 to February 1, 2023, and who filed a Consent to Join the FLSA collective.

        ii. **Rule 23 New York Class Members** are all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport and/or John F. Kennedy Airport any time between September 6, 2013 to February 1, 2023, and who meet any one of the following criteria: (a) did not sign an arbitration agreement with Defendant; (b) signed a retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration; or (c) are Federal 216(b) Claimants.

        iii. **Rule 23 New Jersey Class Members** are all current and former tipped workers employed by a Defendant Entity at Newark Liberty Airport any time between September 6, 2013 to February 1, 2023, and who meet any one of the following criteria: (a) did not sign an arbitration agreement with Defendant; (b) signed a Retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration; or (c) are Federal 216(b) Claimants.

    b. **Opt-In Class Members** includes all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport, John F. Kennedy Airport, and/or Newark Liberty Airport any time between September 6, 2013 to February 1, 2023, and (a) who did not file a Consent to Join the FLSA collective; or (b) who signed an arbitration agreement with OTG and have not signed a retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration.

*Id.* § 1.3.

Based on OTG's records, the parties estimate there are approximately 2,679 total Class

Members.  Brooks Decl. ¶ 22.

## III.    Allocation Plan

Under the Allocation Formula, Class Members will be paid based on the number of

workweeks they worked in the Relevant Period, which is from September 6, 2013 to February 1,

2023.  Settlement Agreement §§ 1.43, 3.4.  The Settlement Amount for each Participating Class

Member will be determined by the Settlement Administrator pursuant to the following formula:

> a.   Each Participating Opt-Out Class Member (*i.e.*, all Federal 216(b)
>       Claimants, Rule 23 New York Class Members, and Rule 23 New Jersey
>       Class Members), will be assigned two (2) points for each full week in
>       which the individual was employed as a Tipped Worker during the
>       Relevant Period.
>
> b.   Each Participating Opt-in Class Member will be assigned half (.5) of a
>       point for each full week in which the individual was employed as a Tipped
>       Worker during the Relevant Period.
>
> c.   To calculate each Participating Class Member's proportionate Settlement
>       Amount, the Settlement Administrator will:
>
> > a.   Add all points for all Class Members together to obtain the
> >       "Denominator";
> >
> > b.   Divide the number of points for each Class Member by the
> >       Denominator to obtain each Class Member's "Portion of the Net
> >       Settlement Fund";
> >
> > c.   Multiply each Class Member's Portion of the Net Settlement Fund
> >       by the Net Settlement Fund to determine each Eligible Settlement
> >       Participant's Settlement Amount.

Settlement Agreement § 3.4.

As the Participating Opt-In Class Members have all signed arbitration agreements with

OTG and have not retained Plaintiffs' Counsel to litigate those claims, the Allocation Formula

reflects that this group of Class Members would have a substantially higher degree of risk in

achieving recovery for their claims outside of this settlement.   Brooks Decl. ¶ 23.

**IV.     Releases for Proposed Class Members**

Participating Federal 216(b) Claimants will release OTG from all FLSA claims that arose or accrued during the Relevant Period.  Settlement Agreement §§ 1.39, 4.1(A).  Participating Rule 23 New York Class Members, Participating Rule 23 New Jersey Class Members, and Participating Opt-In Class Members will release OTG from claims that arose or accrued under the New York Labor Law and/or the New Jersey Wage and Hour Law during the Relevant Period, depending on their work location.  *Id.* §§ 1.40, 1.41, 1.42, 4.1(B)-(D).  Additionally, by cashing their Settlement Checks, Participating Rule 23 New York Class Members and Rule 23 New Jersey Class Members, also will release OTG from all FLSA claims that arose or accrued during the Relevant Period.  *Id.* §§ 4.2, 4.3.

**V.     Attorneys' Fees and Costs and Service Awards**

Under the Settlement Agreement, Plaintiffs' Counsel will request Court-approval of attorneys' fees in the amount of $500,000.00 (representing one-third of the Gross Settlement Amount), plus reimbursement of actual case-related costs and expenses.  *Id.* § 3.2(A).  Plaintiffs will make this application to the Court at final approval.

The Settlement Agreement also provides that the Named Plaintiffs will apply to the Court to receive service awards in the amount of $12,000 each.  *Id.* §§ 1.44, 3.3(A).  The Agreement is not conditioned on the approval of the service awards and provides that the "outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval."  *Id.* § 3.3(B).

**VI.     Settlement Administration**

Plaintiffs' Counsel has selected Analytics Consulting LLC as the Settlement

Administrator.  Brooks Decl. ¶ 24; Settlement Agreement § 1.46.  The Settlement Administrator will distribute the Notices and Claim Forms, reminders, settlement checks, and Court-approved Service Awards and Court-approved attorneys' fees and costs, if approved, and otherwise administer the settlement, including making all appropriate payroll tax payments.  Settlement Agreement § 2.4(A).  Within 21 days of the Court granting Preliminary Approval Order, the Settlement Administrator shall distribute the Court-approved Notice by U.S. mail, email, and text message, where available.  *Id.* § 2.5.  The Settlement Administrator will send Notice Reminders by email, text message, and U.S. First Class Mail 30 days after the initial mailing of Notices.  *Id.* § 2.9.  The Settlement Administrator also will maintain a case website and email account to answer Settlement Class Members' questions.  *Id.* § 2.4(A).

Opt-Out Class Members will have 60 days from the date of mailing to object to or opt out of the settlement.  *Id.* §§ 1.2, 2.7(D), 2.7(E).  Opt-In Class Members who wish to obtain a payment from the settlement must submit a claim form during that same 60-day period.  *Id.* §§ 1.2, 2.8(B).  For any Notices returned as undeliverable, the Settlement Administrator will take all reasonable steps to obtain the correct address, including two skip traces, and shall attempt to re-mail the Notice.  *Id.* § 2.6.

Within seven days of the Effective Date, Defendant will pay the Maximum Total Amount into a Qualified Settlement Fund, and within 14 days of the Funding Date, the Settlement Administrator will distribute checks to all Settlement Class Members.  *Id.* §§ 1.15, 3.1(B), 3.1(C).  Each Settlement Class Member will have 120 days to cash their check.  *Id.* §§ 1.4, 3.4(E).  The Settlement Administrator will distribute a reminder postcard by e-mail, text message, and U.S. mail 30 days after the initial mailing of Settlement Checks.  *Id.* § 3.4(F).  Any uncashed amounts will be redistributed to participating Class Members.  *Id.* § 3.5(A).  If

redistribution of the funds is impractical on the basis that the amount to be distributed is similar

to or less than the cost of a second distribution, however, the remaining funds will be donated to

the *cy pres* designee, Make the Road New York.  *Id.* § 3.5(B).

## ARGUMENT

### I.    Preliminary Approval of the Class Action Settlement Is Appropriate.[2]

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.

Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor

of settlements, particularly in the class action context" (quoting *In re PaineWebber Ltd. P'ships

Litig*., 147 F.3d 132, 138 (2d Cir. 1998))).  The approval of a proposed class action settlement is

a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67

F.3d 1072, 1078 (2d Cir. 1995).  In exercising discretion, "courts should give 'proper deference

to the private consensual decision of the parties.'"  *Torres v. Gristede's Operating Corp*., No. 04

Civ. 3316, 2010 U.S. Dist. LEXIS 75362, at *10 (S.D.N.Y. June 1, 2010) (quoting *Clark v.

Ecolab, Inc.*, Nos. 04 Civ. 4488, 06 Civ. 5672, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y.

Nov. 27, 2009)).

Review of a class settlement proceeds in "two stages."  Fed. R. Civ. P. 23(e); *Soler v.

Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647, at *4-5 (S.D.N.Y. Mar. 14,

2013).  First, the "court makes a preliminary evaluation of fairness," and then the Court

determines whether notice to the class is justified by the parties' showing that the court will

---

[2]    Plaintiffs will seek approval of the settlement of the FLSA claims with their final approval motion.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns.  *See McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 2, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").

likely be able to approve the settlement as fair, reasonable, and adequate. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *4-5 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019)). Then, after notice and an opportunity to raise objections are given to the class, the court holds a fairness hearing. *Id*. at *4.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. 4 Newberg and Rubenstein on Class Actions (Sixth) § 13:10; *Soler*, 2023 U.S. Dist. LEXIS 42647, at *5 (citing same). Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. *Wal-Mart Stores*, 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id*. at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotation marks omitted). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *6 (E.D.N.Y. Feb. 18, 2011) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)) (alterations in original)).

The first step in the settlement process simply allows notice to be issued to the class and for class members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). Although the Court need not fully

evaluate the *Grinnell* factors to conduct its initial evaluation of the settlement, for purposes of

evaluating the settlement's fairness, it is useful for the Court to consider these criteria.

> The *Grinnell* factors are:
>
> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  Here, the relevant *Grinnell* factors weigh in favor

of preliminary approval.

### A.    Litigation Would Be Complex, Costly, and Long (Factor 1).

By reaching a favorable settlement prior to class certification, dispositive motions, trial,

or appeals, Plaintiffs avoid significant expense and delay and ensure timely individual relief for

the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays

and multitude of other problems associated with them."  *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche*

*Bank*, 236 F.3d 78 (2d Cir. 2001).  Particularly in complex wage and hour litigation like this one,

involving both federal and state statutory rights, protracted litigation is costly and burdensome,

including motion practice and potential appeals over class certification.  *See Gilliam v. Addicts*

*Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *11 (S.D.N.Y. Mar. 24,

2008).

This case is no exception. The parties have already engaged in significant discovery over

a period of several years and were set to embark on depositions of numerous opt-in Plaintiffs and corporate representative witnesses, as well as class certification, decertification, and summary judgment motion practice. Brooks Decl. ¶ 25.  If the Court denied summary judgment, a complex trial would have been necessary to evaluate OTG's defenses to Plaintiffs' allegations, including the extent of off-the-clock and overtime work performed by Tipped Workers, the time Tipped Workers spent on different types of work, and the allocation of Tipped Workers' tips.  *Id*. Preparing for trial, particularly a class trial, would have consumed tremendous amounts of time and resources.  *Id*.  Additionally, any judgment would likely be appealed, thereby extending the duration of the litigation.  *Id*.  The settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### B.       The Court Cannot Assess the Reaction of the Class Until After Notice is Issued (Factor 2).

Because Class Members have not been notified of the settlement at this stage, the Court will be in a better position to more fully analyze this factor after notice issues and Class Members have had an opportunity to opt out or object to the settlement.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

### C.       Discovery Has Advanced Far Enough to Allow the parties to Resolve the Case Responsibly (Factor 3).

As discussed above, the parties have completed ample discovery to determine the strengths and potential weakness of their claims and defenses.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also Karic v. Major Auto. Cos., Inc.*, No. 09 Civ.

5708, 2016 U.S. Dist. LEXIS 57782, at *19 (E.D.N.Y. Apr. 27, 2016) (same).  "[T]he pretrial

negotiations and discovery must be sufficiently adversarial that they are not designed to justify a

settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith*

*Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alterations in original).

      As discussed above, the parties have exchanged a significant amount of information, both

through discovery (written and depositions) and in preparation for multiple days of mediation

with two different mediators.  Brooks Decl. ¶¶ 15-18.  Based on their exchange of information,

the parties were well equipped to evaluate the strengths and weaknesses and "had an adequate

appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*,

391 F.3d at 537.  Thus, this factor supports preliminary approval.  *See, e.g.*, *Morris v. Affinity*

*Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases) (granting

preliminary approval even where only targeted, pre-mediation discovery had occurred).

      **D.**    **The Risk of Establishing Liability and Damages for the Class Through Trial**
                **Favors Approval (Factors 4 and 5).**

      Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y. 1997), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721

(2d Cir. 1997).  In weighing the risks of establishing liability and damages, "[t]he court must

only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation

omitted).  Here, Plaintiffs recognize the substantial risks of the litigation, including the

possibility that if this action is not settled now, it might not result in any recovery or might result

in a recovery that is less favorable.

Plaintiffs faced risks in establishing liability and damages on a class basis.  Brooks Decl. ¶ 26.  OTG likely would have argued that differences in timekeeping instructions among managers, airports, and restaurant locations would prevent the class certification and would warrant decertification of the collective.  *Id.*  In addition, even if Plaintiffs prevailed in obtaining class certification and in maintaining collective certification, the fact-intensive nature of Plaintiffs' off-the-clock and minimum wage claims involves risk at trial.  *See, e.g.*, *Morris*, 859 F. Supp. 2d at 620 ("[T]he fact-intensive nature of Plaintiffs' off-the-clock claim presents risk. The proposed settlement eliminates this uncertainty.").  Plaintiffs would have to establish the total amount of time Tipped Workers at different airports and restaurants each spent performing side work, as well as establishing the amount of time that each Tipped Worker worked off the clock, which are complicated and fact intensive analyses.  Brooks Decl. ¶ 26

Additionally, approximately 2,110 Class Members have signed arbitration agreements with OTG.  *Id.* ¶ 22.  Arbitrating their claims on an individual basis would have presented significant risk and would have required the investment of significant time and financial resources.  *Id.* ¶ 27.

Finally, OTG has consistently maintained that at all times it has complied with all applicable federal and state wage and hour laws, which means there is a real risk that OTG could simply prevail at any trial and/or arbitration based on its ability to demonstrate such compliance.

In contrast to these known risks, the settlement ensures that OTG will promptly provide monetary relief to Class Members who choose to participate.

E.    **The Risk of Obtaining Class Certification Favors Approval (Factor 6).**

The risk of obtaining class certification and maintaining collective certification is also present.  The Court has not yet certified the class, and such a determination would likely be

reached only after further significant discovery and briefing/motion practice.  Plaintiffs believe

that there is a strong case for class certification, however OTG would likely argue that there are

material differences in policies and work performed by Tipped Workers at various airports and

restaurants, and that such material differences would preclude class certification, or would

warrant decertification of the collective.  *See Torres v. Gristede's Operating Corp.*, No. 04 Civ.

3316, 2010 U.S. Dist. LEXIS 139144, at *18 (S.D.N.Y. Dec. 21, 2010) (finding "[t]he risk of

maintaining class status throughout trial" in a class and collective action wage and hour

settlement "weigh[ed] in favor of final approval").

Should the Court certify the Class, OTG would likely later challenge certification and

move to decertify, requiring another round of briefing.  OTG might also seek permission to file

an interlocutory appeal under Rule 23(f).  Risk, expense, and delay permeate such a process.

Settlement eliminates this risk, expense, and delay.  This factor also favors preliminary approval.

**F.     The Court Should Give Little Weight to Whether Defendant Can Withstand
       a Greater Judgment (Factor 7).**

Here, there is no known risk that OTG would not be able to withstand a greater judgment,

but the "ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

Accordingly, this factor is neutral and does not preclude the Court from granting Preliminary

Approval.

**G.     The Settlement Is Substantial, Even in Light of the Best Possible Recovery
       and the Attendant Risks of Litigation (Factors 8 and 9).**

The settlement amount represents substantial value given the risks of litigation, even

though the recovery would most likely be greater if Plaintiffs prevailed on the merits.  The

determination of whether a settlement amount is reasonable "is not susceptible of a mathematical

equation yielding a particularized sum." *In re Holocaust Litig*., 80 F. Supp. 2d at 178 (quoting *In re Michael Milken & Assoc. Sec. Litig*., 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (internal quotation marks omitted)); *see also Ballinger v. Advance Magazine Publrs., Inc*., 2014 U.S. Dist. LEXIS 179538, at *7 (S.D.N.Y. Dec. 29, 2014) ("The inquiry . . . is to see whether the settlement falls below the lowest point in the range of reasonableness." (quoting *In re Gache*, Nos. 97 Civ. 5025, 97 Civ. 5034, 97 Civ. 5036, 1998 U.S. App. LEXIS 22378, at *3 (2d Cir. Apr. 16, 1998) (internal quotation marks omitted)). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (internal quotation marks omitted).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp*., 495 F.2d at 455 n.2. Here, the settlement provides for monetary compensation for every Participating Class Member from a fund of $1,550,000. This is a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing class certification, having the collective action decertified, losing on the merits, and losing on appeal. If every Settlement Class Member participates, they would each receive approximately $574 gross payment. Brooks Decl. ¶ 28. The final per person number will also likely be higher, as it is determined by the number of Class Members who choose to participate in the Settlement. *Id*.

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant Grinnell factors.

**II.     Conditional Certification of the Class Is Appropriate.**

For settlement purposes, Plaintiffs seek to certify the Class under Federal Rule of Civil

Procedure 23(e).  OTG does not oppose class certification for the purpose of settlement only.

Under Rule 23, a class action may be maintained if all the prongs of Rule 23(a) are met, as well

as one of the prongs of Rule 23(b).  For settlement purposes, Plaintiff seeks to certify the

proposed Settlement Class under Rule 23(b)(3).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of
> the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or

fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  *Id*. at (b)(3).

**A.     Numerosity Is Satisfied.**

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of

Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  According to information

produced by Defendant, there are approximately 2,679 Class Members.  Brooks Decl. ¶ 22.  The

proposed Class easily satisfies this requirement.

**B.     Commonality Is Satisfied.**

The proposed Class also satisfies the commonality requirement, the purpose of which is

to test "whether the named plaintiff's claim and the class claims are so interrelated that the

interests of the class members will be fairly and adequately protected in their absence."  *Gen.

Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiffs allege that all Class Members are unified by common factual allegations and legal theories – they assert that Defendant failed to pay the correct minimum wage, failed to pay them for all regular and overtime hours worked, misappropriated tips, and failed to provide wage notices and wage statements.  These common questions are sufficient to satisfy the commonality requirement for settlement purposes.  *See Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 15966, at *6 (E.D.N.Y. Feb. 9, 2015) (commonality met where class members "share[d] common issues of fact and law, including whether [d]efendant . . . failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked") (citation omitted); *Hernandez v. Merrill Lynch & Co*., No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, at *7-8 (S.D.N.Y. Nov. 15, 2012) ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because they and the class members share common issues of fact and law, including whether Defendants failed to pay overtime premiums in violation of federal and state wage and hour laws[.]") (citation omitted); *Clark v. Ecolab Inc*., Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *16 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked").

**C.    Typicality Is Satisfied.**

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v.*

*Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, each Class Representative worked for OTG as a Tipped Worker and it is Plaintiffs' position that they suffered the same alleged injuries as the Class Members he or she seeks to represent – non-payment of the correct minimum wage, non-payment of overtime, tip misappropriation, and improper wage statements and wage notices. *See Hernandez*, 2012 U.S. Dist. LEXIS 165771, at *8 (finding typicality where plaintiffs "alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected the class members in the same way").

**D.    Adequacy of the Named Plaintiffs Is Satisfied.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.,* No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting Martens, 181 F.R.D. at 259) (internal quotation marks omitted).

Plaintiffs contend that they do not have interests that are antagonistic to or at odds with

Rule 23 Class Members' interests.  *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175-76

(S.D.N.Y. 2014) (adequacy requirement met where there was no evidence that named plaintiffs'

and class members' interests were at odds).  Plaintiffs have also selected counsel who are

adequate to represent the classes' interests.  *See* Section III, *infra*.

      **E.**      **Certification Is Proper Under Rule 23(b)(3).**

      Rule 23(b)(3) requires that common questions of law or fact not only be present, but also

that they "predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v.

Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

623 (1997)) (internal quotation marks omitted).  For the purposes of settlement, these

requirements are met.

      **1.**      **Common Questions Predominate.**

      Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole, . . . predominate over those issues that are

subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d

124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other

grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig*.), 471 F.3d 24 (2d

Cir. 2006).  The essential inquiry is whether "liability can be determined on a class-wide basis,

even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are

"unified by a common legal theory" and by common facts, predominance is satisfied.  *See

McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs' common contentions – that they and other Tipped Workers employed by OTG were subject to the same policies in violation of the FLSA, NYLL, and/or NJWHL – predominate over any issues affecting only individual Class Members.  *See, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214, at *53 (E.D.N.Y. Sept. 16, 2014) (holding that predominance satisfied where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies[]"); *Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556, at *13 (S.D.N.Y. Apr. 16, 2012) (holding that predominance satisfied when "plaintiffs were subject to the same company-wide policy that violated federal labor laws").  No individualized issues inhibit the Court's ability to determine this common merits question.

### 2.    A Class Action Is a Superior Mechanism.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp*., 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend that these factors favor certification for settlement purposes.  Individual class members have not expressed an interest in controlling the prosecution of the action and Plaintiffs are not aware of any cases that have been brought against Defendant by class members on an individual basis or the same claims.  Brooks Decl. ¶ 29.  Concentrating the litigation in this Court will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar

issues and claims.  *See, e.g.*, *Perez*, 2014 U.S. Dist. LEXIS 130214, at *67 ("[A] class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses."); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) ("[C]lass action is superior . . . because it allows for a more cost-efficient and fair litigation of common disputes.").

## III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.

O&G should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  "No single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

O&G satisfies these criteria.  It has done substantial work identifying, investigating, negotiating, and settling Plaintiffs' and putative Class Members' claims.  Brooks Decl. ¶¶ 30.  Additionally, O&G is experienced and nationally recognized for its expertise in litigating complex class and collective actions, including wage and hour cases like this one.  *Id.* ¶ 9; *see also*, *Capilupi v. People's United Fin., Inc.*, No. 15 Civ. 5247, 2018 U.S. Dist. LEXIS 167550, at *6-7 (E.D.N.Y. Sept. 27, 2018) (O&G attorneys "are well qualified, experienced, and have aggressively litigated this action, thereby demonstrating their adequacy as counsel for the

class."); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 15966, at *9 (E.D.N.Y. Feb. 9, 2015) ("O&G has substantial experience prosecuting and settling nationwide wage and hour class and collective actions, and are well-versed in wage and hour law and class action law and are well-qualified to represent the interests of the class."); *Perez*, 2014 U.S. Dist. LEXIS 130214, at *69 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Jacob v. Duane Reade, Inc*., 289 F.R.D. 408, 423 (S.D.N.Y. 2013) (appointing O&G as class counsel because it has "experience in handling class actions, sufficient knowledge of the pertinent law, and sufficient resources to commit to this representation"), *aff'd*, 602 F. App'x 3 (2d Cir. 2015); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 U.S. Dist. LEXIS 156295, at *4 (E.D.N.Y. Sept. 10, 2019) (O&G attorneys "are experienced class action and employment lawyers with good reputations among the class action and employment bars"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248, 255 (S.D.N.Y. 2014) (appointing O&G class counsel in nationwide Title VII litigation and noting that O&G "bring[s] to the case a wealth of class action litigation experience").

**IV.    The Proposed Notice and Claim Form, and Distribution Process, Are Appropriate.**

Plaintiffs' proposed Notices and Claim Forms fully comply with due process and Rule 23(c)(2)(B).  The proposed Notices, which are attached to the Settlement Agreement as Exhibits B-E, comply with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;

     (iv)     that a class member may enter an appearance through an attorney if the member so desires;

     (v)     that the court will exclude from the class any member who requests exclusion;

     (vi)     the time and manner for requesting exclusion; and

     (vii)     the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notices satisfy each of these requirements.  The Notices describe the settlement's terms, inform Class Members about the fees and costs allocation, explains how to opt out, object, or submit a claim form, and will provide the date, time, and place of the fairness hearing.  *See* Settlement Agreement, Exhibits B-E.  The Claim Form asks only for basic information in a simple fashion, and provides easy access to a digital version of the same document through a website.  Settlement Agreement, Exhibit A. The Notice is written in plain language and organized and formatted to be as clear as possible.  Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator will send the Notices by mail, e-mail, and text message, create and administer a website, take reasonable steps to obtain correct addresses for Class Members whose notice is returned as undeliverable, attempt re-mailings for those Class Members, and send reminder notices by mail, e-mail and text message.  *See* Settlement Agreement § 2.6, 2.9.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the proposed Settlement Class, appoint Plaintiffs' Counsel as Class Counsel, approve the proposed Notice, appoint Analytics Consulting LLC as Settlement Administrator, and schedule a fairness hearing on final approval of the settlement.

Dated: June 8, 2023
     New York, NY

Respectfully submitted,

*/s/ Molly A. Brooks*

Molly A. Brooks
**OUTTEN & GOLDEN LLP**
Molly A. Brooks
Amy L. Maurer
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mb@outtengolden.com
amaurer@outtengolden.com

Hannah Cole-Chu*
**OUTTEN & GOLDEN LLP**
601 Massachusetts Ave. Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
hcolechu@outtengolden.com

*Attorneys for Plaintiffs and the Putative Classes and Collective*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2023, the foregoing was filed

electronically through the ECF system, is available for viewing and downloading from the ECF

system and, will be sent electronically to the registered participants identified on the Notice of

Electronic Filings.

/s/ *Molly A. Brooks*
Molly A. Brooks
**OUTTEN & GOLDEN LLP**
Molly A. Brooks
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mb@outtengolden.com

26