# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAFINIS FILHO, RAQUEL ERNEST, and CHANTEL LYNCH, on behalf of themselves and all others similarly situated,**<br><br>                **Plaintiffs,**<br><br>    **-against-**<br><br>**OTG Management, LLC,**<br><br>              **Defendant.** | Case No. 19-CV-8287 (ALC) (SN) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF <u>CLASS AND COLLECTIVE ACTION SETTLEMENT</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 1

    I.    Factual Allegations ....................................................................................... 1

    II.    Overview of Litigation and Settlement Negotiations .............................. 2

SUMMARY OF SETTLEMENT TERMS ................................................................... 4

    I.    Monetary Settlement Terms ......................................................................... 4

    II.    Class Definition ............................................................................................ 4

    III.    Allocation Plan .............................................................................................. 5

    IV.    Releases for Proposed Class Members ....................................................... 6

    V.    Attorneys' Fees and Costs and Service Awards ....................................... 7

    VI.    Notice of Settlement to Class Members ...................................................... 7

ARGUMENT ................................................................................................................ 11

    I.    Judicial Policy Favors Settlement ............................................................ 11

    II.    The Rule 23 Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects. ..................................................... 11

        A.    The Settlement Is Procedurally Fair. ........................................ 12

        B.    The Settlement Is Substantively Fair. ....................................... 14

            i.    Grinnell Factors 1, 3, 4, 5, 6, 7, 8 and 9 ...................... 15

            ii.    Grinnell Factor 2. ............................................................ 16

            iii.    Rule 23(e)(2) Additional Considerations. .................... 18

        C.    The Settlement Notice Satisfied Rule 23. ................................. 20

        D.    Final Certification of the Settlement Class under Rule 23(b)(3) is Appropriate. ........................................................................... 21

    III.    The FLSA Settlement Should Be Approved .......................................... 22

        A.    The Settlement Is Fair and Reasonable and Should Be Approved. .......... 22

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 15

*Ayers v. SGS Control Servs.*,
   Nos. 03 Civ. 9078, 06 Civ. 7111, 2008 U.S. Dist. LEXIS 69307 (S.D.N.Y. Sept. 8, 2008) . 17

*Banford v. Entergy Nuclear Operations, Inc.*,
   649 F. App'x 89 (2d Cir. 2016) ............................................................................ 24

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................ 22

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ............................................................................... 25

*Chevalier v. Staffpro, Inc.,*
   No. 20 Civ. 7006, 2021 U.S. Dist. LEXIS 46965, (S.D.N.Y. Mar. 12, 2021)........................23

City of *Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................... 12, 14, 16

*DeLeon v. Wells Fargo Bank, N.A.*,
   No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ......................... 12

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ............................................................................... 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................ 12

*D'Angelo v. Hunter Bus. Sch., Inc.*,
   No. 21 Civ. 3334, 2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) ...................... 17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ...................... 12

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) .............................................................. 22, 23

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ........................................................................................ 22

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................... 13

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) ........................ 24

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 19

*Maywalt v. Parker & Parsley Petroleum Co.*,
    864 F. Supp. 1422 (S.D.N.Y. 1994) ................................................................ 17

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ................................................................ 12

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 11

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ..................... 20

*Rodriguez v. It's Just Lunch Int'l*,
    No. 07 Civ. 09227, 2019 U.S. Dist. LEXIS 228270 (S.D.N.Y. Mar. 2, 2020) ............... 17-18

Seijas v. Republic of Arg.,
    No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398 (S.D.N.Y. Apr. 27, 2017) ........................... 18

*Siler v. Landry's Seafood House – N.C., Inc.*,
    No. 13 Civ. 587, 2014 U.S. Dist. LEXIS 90088 (S.D.N.Y. June 30, 2014) ........................... 23

*Soler v. Fresh Direct, LLC*,
    No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023) ....................... 20

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ............... 24-25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................ 11, 12, 19

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 17

## STATUTES

29 U.S.C. § 216 ................................................................................................ 22

## RULES

Federal Rule of Civil Procedure 23 ................................................................ *passim*

## OTHER

Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide, https://
www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-
language-guide (last visited August 3, 2023)…………………………………………………20

## INTRODUCTION

Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch ("Plaintiffs"), on behalf of themselves and others similarly situated, seek final approval of their proposed settlement with Defendant OTG Management, LLC ("OTG" or "Defendant," collectively with Plaintiffs, the "parties"), resolving claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New Jersey Wage and Hour Law ("NJWHL").

The proposed $1,585,823.99 settlement is fair, reasonable, and adequate and satisfies all the criteria for final approval. The settlement follows several years of vigorously-contested litigation, including a 216(b) motion, a motion to compel arbitration, the exchange of discovery, depositions, and two full-day mediations conducted at arm's-length over more than a year. The response from Participants ("Participants") about the settlement has been overwhelmingly positive. Six hundred and fifty-nine (659) of the 1,638 Opt-in Class Members chose to submit claim forms and participate in the settlement and none of the 1,685 Opt-out Class Members chose to opt out. *See* Declaration of Molly Brooks ("Brooks Decl."), Ex. 4 (Declaration of Shari Lynne Grayson for Analytics LLC ("Grayson Decl.")) ¶¶ 14, 26. Only one Class Member submitted an objection, which, for the reasons discussed *infra*, Plaintiffs respectfully request the Court overrule. Consistent with the Court's ruling in June 2023 preliminarily approving the settlement, ECF No. 165, the Court can readily confirm that the Settlement is "fair, reasonable, and adequate."

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

OTG is a privately-owned company that owns and operates restaurants and bars within LaGuardia Airport, John F. Kennedy Airport, and Newark Liberty Airport. ECF No. 1 ¶ 1.

Plaintiffs and the Class Members are current and former servers, bartenders, and/or other tipped workers ("Tipped Workers") who work or worked at OTG's airport restaurants and/or bars at LaGuardia Airport, John F. Kennedy Airport, and Newark Liberty Airport between September 6, 2013, and February 1, 2023. *Id.* ¶ 4; *see also* Ex. 1 ("Settlement Agreement") § 1.3.

Plaintiffs allege that OTG violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New Jersey Wage and Hour Law ("NJWHL") by (1) failing to pay Tipped Workers the full minimum wage required under the FLSA, NYLL, and/or NJWL; (2) failing to pay Tipped Workers for all regular and overtime hours worked in violation of the FLSA, NYLL, and/or NJWL; (3) retaining a portion of Tipped Worker's tips in violation of the FLSA, NYLL, and/or NJWL; and (4) failing to provide Tipped Workers with adequate wage notices and wage statements in violation of the NYLL.  OTG denies these allegations and denies any wrongdoing, liability, or damages.  It is OTG's position that it properly compensated its Tipped Workers and complied with all applicable laws with respect to its Tipped Workers.

## II.    Overview of Litigation and Settlement Negotiations

In March 2019, Plaintiffs contacted OTG, notifying it of Plaintiffs' claims, and invited it to engage in pre-suit settlement discussions.  After an initial conferral, it became clear that the parties would not be able to reach agreement.  Plaintiffs filed this class and collective action on behalf of themselves and other Tipped Workers on September 5, 2019.  ECF No. 1.  On March 5, 2020, Plaintiffs filed their Motion for Court-Authorized Notice pursuant to Section 216(b) of the Fair Labor Standards Act.  ECF No. 21.  On March 30, 2021, the Court granted in part Plaintiffs' Motion for Court-Authorized Notice and permitted notice to be sent to Tipped Workers who worked for OTG at LaGuardia, Newark, and/or John F. Kennedy airports since September 5, 2016.  ECF No. 39.  On June 24, 2021, Plaintiffs sent notice to 2,153 putative collective

members, and 709 individuals joined the case as Opt-in Plaintiffs ("Opt-in Plaintiffs").  Brooks Decl. ¶ 12.

OTG informed Plaintiffs that approximately 557 of the Opt-in Plaintiffs had signed arbitration agreements, Brooks Decl. ¶ 13, and on August 27, 2021, OTG filed a Motion to Compel those Opt-in Plaintiffs to arbitration and dismiss their claims from the case.  ECF No. 93.  The Court granted that Motion to Compel on September 29, 2022.  ECF No. 147.

In the fall of 2021, after the opt-in period closed and the Court ruled on OTG's motion to compel arbitration, Class Counsel invited OTG to consider attending mediation.  Brooks Decl. ¶ 14.  OTG agreed, and the parties engaged Stephen P. Sonnenberg, Esq., a well-respected mediator with significant experience involving employment law disputes.  *Id*.  The parties requested and the Court granted a stay of discovery pending the mediation.  ECF. No. 118 & 119.  Prior to the first mediation with Mr. Sonnenberg, the parties exchange pertinent data and information.  Brooks Decl. ¶ 15.  The parties attended a full-day mediation on December 20, 2021, but were unable to come to an agreement at that time.  *Id.* ¶ 16.

Following the December 2021 mediation, the parties commenced discovery.  *Id.* ¶ 17.  Both parties served and responded to written discovery requests, producing over 4,000 pages of documents.  *Id*.  In addition to the Named Plaintiffs, 12 Opt-in Plaintiffs responded to OTG's separate requests for production and interrogatories.  *Id*.  OTG took the depositions of the three Named Plaintiffs and, at the time the Court stayed the action for settlement discussions, the parties were in the process of scheduling depositions of a sample of Opt-in Plaintiffs, OTG human resources employees, managers, and 30(b)(6) depositions.  *Id*.

On October 4, 2022, the Court directed the parties to meet and confer on whether a settlement conference would be productive.  ECF No. 149.  The parties attended a settlement

conference with Magistrate Judge Sarah Netburn on December 21, 2022, followed by additional conferences on January 27, 2023 and March 14, 2023.   Brooks Decl. ¶ 18.   The parties reached an agreement in principle following the March 14 settlement conference.   *Id.* ¶ 19.   The parties then negotiated the Settlement Agreement and fully executed it on June 8, 2023.   *Id*.

## SUMMARY OF SETTLEMENT TERMS[1]

### I.      Monetary Settlement Terms

OTG has agreed to pay a Maximum Total Amount of $1,550,000 into a Settlement Fund, plus an additional $35,823.99 to cover settlement payments to 176 additional Class Members, for a total of $1,585,823.99.   Settlement Agreement § 1.21; Brooks Decl. ¶¶ 21, 29; *see also* ECF No. 165.   This total includes payments to Participants; employee tax withholdings; employer payroll taxes; Court-approved service awards to the Named Plaintiffs; Court-approved attorneys' fees and costs; and costs of settlement administration.   Settlement Agreement § 1.21; Brooks Decl. ¶ 21.   Any uncashed checks remaining from the "Gross Settlement Fund" shall be redistributed to Participants, if economically feasible, and, if not, awarded to *cy pres* designee, Make the Road New York.   Settlement Agreement § 3.5(B).

### II.     Class Definition

The following groups of current and former OTG employees are defined as Class Members by the Settlement Agreement:

> a.   **Opt-Out Class Members** includes Federal 216(b) Claimants, Rule 23 New York Class Members, and Rule 23 New Jersey Class Members.
>
>> i.   **Federal 216(b) Claimants** includes all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport, John F. Kennedy Airport, and/or Newark Liberty Airport any time between September 6, 2016 to February 1, 2023, and who filed a

---

[1]      All capitalized terms used in this Brief are defined in the Settlement Agreement and Release attached to the Brooks Decl. as Exhibit 1.

Consent to Join the FLSA collective.

    ii.   **Rule 23 New York Class Members** are all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport and/or John F. Kennedy Airport any time between September 6, 2013 to February 1, 2023, and who meet any one of the following criteria: (a) did not sign an arbitration agreement with Defendant; (b) signed a retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration; or (c) are Federal 216(b) Claimants.

    iii.   **Rule 23 New Jersey Class Members** are all current and former tipped workers employed by a Defendant Entity at Newark Liberty Airport any time between September 6, 2013 to February 1, 2023, and who meet any one of the following criteria: (a) did not sign an arbitration agreement with Defendant; (b) signed a Retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration; or (c) are Federal 216(b) Claimants.

    b.   **Opt-In Class Members** includes all current and former Tipped Workers employed by a Defendant Entity at LaGuardia Airport, John F. Kennedy Airport, and/or Newark Liberty Airport any time between September 6, 2013 to February 1, 2023, and (a) who did not file a Consent to Join the FLSA collective; or (b) who signed an arbitration agreement with OTG and have not signed a retainer agreement with Plaintiffs' Counsel to bring their claims in arbitration.

*Id.* § 1.3. As discussed further below, the Settlement Administrator sent notice to a total of 3323 Class Members.

## III.   Allocation Plan

Under the Allocation Formula, Class Members will be paid based on the number of workweeks they worked in the Relevant Period, which is from September 6, 2013, to February 1, 2023, for Rule 23 New York Class Members, Rule 23 New Jersey Class Members, and Opt-In Class Members, and from September 6, 2016, to February 1, 2023, for Federal 216(b) Claimants. Settlement Agreement §§ 1.3, 1.43, 3.4. The Settlement Amount for each Participating Class Member will be determined by the Settlement Administrator pursuant to the following formula:

    a.  Each Participating Opt-Out Class Member (*i.e.*, all Federal 216(b) Claimants, Rule 23 New York Class Members, and Rule 23 New Jersey Class Members), will be assigned two (2) points for each full week in which the individual was employed as a Tipped Worker during the Relevant Period.

    b.  Each Participating Opt-in Class Member will be assigned half (.5) of a point for each full week in which the individual was employed as a Tipped Worker during the Relevant Period.

    c.  To calculate each Participating Class Member's proportionate Settlement Amount, the Settlement Administrator will:

        a.  Add all points for all Class Members together to obtain the "Denominator";

        b.  Divide the number of points for each Class Member by the Denominator to obtain each Class Member's "Portion of the Net Settlement Fund";

        c.  Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Participant's Settlement Amount.

*Id.* § 3.4. As the Participating Opt-In Class Members have all signed arbitration agreements with OTG and have not retained Class Counsel to litigate those claims, the Allocation Formula reflects that this group of Class Members would have a substantially higher degree of risk in achieving recovery for their claims outside of this settlement. Brooks Decl. ¶ 23.

## IV.   Releases for Proposed Class Members

Participating Federal 216(b) Claimants will release OTG from all FLSA claims that arose or accrued during the Relevant Period. Settlement Agreement §§ 1.39, 4.1(A). Participating Rule 23 New York Class Members, Participating Rule 23 New Jersey Class Members, and Participating Opt-In Class Members will release OTG from claims that arose or accrued under the New York Labor Law and/or the New Jersey Wage and Hour Law during the Relevant Period. *Id.* §§ 1.40, 1.41, 1.42, 4.1(B)-(D). By cashing their Settlement Checks, Participating

Rule 23 New York Class Members and Rule 23 New Jersey Class Members, will release OTG from all FLSA claims that arose or accrued during the Relevant Period.  *Id.* §§ 4.2, 4.3.

## V.      Attorneys' Fees and Costs and Service Awards

Under the Settlement Agreement, Class Counsel will request Court-approval of attorneys' fees in the amount of $500,000.00, plus reimbursement of actual case-related costs and expenses.[2]  *Id.* § 3.2(A).  The Settlement Agreement also provides that the Named Plaintiffs will apply to the Court to receive service awards in the amount of $12,000 each.  *Id.* §§ 1.44, 3.3(A).  The Agreement is not conditioned on the approval of the service awards and provides that the "outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval."  *Id.* § 3.3(B).  Plaintiffs seek approval of attorneys' fees, costs, settlement administrator expenses, and Service Awards for the Named Plaintiffs in Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's Fees and Costs, filed concurrently with this Motion.

## VI.     Notice of Settlement to Class Members

After the Court granted preliminary approval of the Settlement, ECF No. 165, including approval of Plaintiffs' proposed Notices, Claim Form, and Reminder Postcard, and approved Analytics LLC ("Analytics") as the Settlement Administrator, Class Counsel began coordinating with the Settlement Administrator to disseminate notice to the Class Members.  Brooks Decl. ¶ 25; Grayson Decl. ¶ 3; Settlement Agreement § 1.46.  On June 23, 2023, OTG provided a Class List to the Settlement Administrator reflecting Class Members' names, Last Known Addresses, Last Known Email Address, Last Known Phone Number, Social Security Numbers, and the dates

---

[2]      The $500,000 payment is one third of the Gross Settlement Amount, which does not include the $50,000 allocated for employer payroll taxes (among other items), Settlement Agreement § 1.21, and $35,823.99 for the 176 late-added Class Members, ECF No. 166.

of employment during the Relevant Period.  Grayson Decl. ¶ 5.  The Class List contained data

for 3,151 Class Members.  *Id*. ¶¶ 5-6.  The Settlement Administrator processed and updated the

mailing addresses in the Class List utilizing the National Change of Address Database

("NCOA") maintained by the U.S. Postal Service.  *Id*. ¶ 7.  The Settlement Administrator

formatted the Notices, created a settlement administration website at

https://otgtippedworkercase.com/, and set up a Call Center phone line to process Class Member

inquiries.  *Id*. ¶ 8.  Prior to sending notice, the parties reviewed and approved the settlement

administration website, notices, claim form, envelopes, settlement administrator script for

answering questions for Class Members, and text message language.[3]  Brooks Decl. ¶ 26.

On July 5, 2023, consistent with the terms of the Settlement Agreement, the Settlement

Administrator sent the Court-approved Notices via email, text message, and U.S. mail to the

Class Members.  Grayson Decl. ¶ 9.  The Notices informed Class Members where and how to

submit claims (for Opt-in Class Members), their right to request exclusion from or object to the

Settlement (for Opt-out Class Members), and the implications of each such actions.  Grayson

Decl. Exs. 1-4.  The Notices also advised Class Members of applicable deadlines and other

events, including the Final Fairness Hearing, and how they could obtain additional information.

*Id*.  The Settlement Administrator mailed the Notices to 3,023 Class Members, emailed the

Notices to 2,911 Class Members, and sent notice by text message to 3,103 Class Members.  *Id*.

¶¶ 9-11.  The earliest Bar Date for Class Members for whom U.S. mail notice was not

---

[3]     The Court's preliminary approval order included the instruction to remove all references
to District Judge Andrew L. Carter from the Notices.  ECF No. 165 ¶ 7.  Due to oversight by the
parties, the Notices that were sent did not omit this information.  The parties apologize for this
error.

undeliverable was 60 days, until September 5, 2023.[4]  *Id.* ¶ 19.

Of the 3,023 Class Members that received notice by U.S. mail, 354 Notices were returned as undeliverable.  Grayson Decl. ¶ 19.  Using an advanced address search, the Settlement Administrator located 107 updated addresses and re-mailed the Notices accordingly.  *Id.*  In all, 92% (or 2,955) Class Members received notice by mail and 99.8% (or 3,317) Class Members received notice by at least one method of approved notice (U.S. mail, email, or text message). *Id.* ¶¶ 19-20.  The Settlement Administrator sent a Reminder Notice to Opt-in Class Members via email, text message, and U.S. mail on August 3, 2023.  *Id.* ¶ 15.

In late August 2023, shortly before the September 5 Bar Date, Counsel for OTG contacted Plaintiffs' Counsel and informed them that, due to an unintentional clerical error, 176 Class Members were excluded from the Class List.  Brooks Decl. ¶ 27; *see also* ECF No. 166. The parties conferred and OTG agreed to bear the costs related to sending notice to the new Class Members and increase the settlement fund by a proportional amount to ensure that all estimated Class Members' recoveries will be unaffected by the addition of the 176 Class Members.  Brooks Decl. ¶ 28; *see also* ECF No. 166.  The increase to the settlement fund was $35,823.99, amounting to a new total gross settlement amount of $1,585,823.99.[5]  Brooks Decl. ¶ 29.  The Court approved the proportional increase on September 7, 2023.  ECF No. 167.  The Court also approved sending notice to the new Class Members, reset the Final Fairness Hearing from October 23, 2023 to January 9, 2024, and approved a proposed notice from the parties

---

[4]     If notices mailed via U.S. mail were returned as undeliverable, and the Settlement Administrator was able to locate an updated mailing address and re-mail the notice, the Bar Date for that individual was either the original Bar Date or 30 days from the date of re-mailing, whichever was later.  Settlement Agreement § 1.2, Exs. A-D.

[5]     This amount does not include the cost of sending the new Court-approved notices in September, which was $11,665 and OTG paid directly to the Settlement Administrator.

notifying Class Members that the hearing date was rescheduled.  ECF No. 167.

On September 22, 2023, the Settlement Administrator sent (1) settlement notices to the 176 new Class Members via U.S. mail, email and text message and (2) notice of the rescheduling of the hearing to 1,508 Opt-In Class Members.[6]  Grayson Decl. ¶¶ 13, 16.  The earliest Bar Date for the 176 new Class Members was 60 days, or November 23, 2023.  *Id.* ¶ 22.

In total, 1,685 or 100% of Opt-out Class Members chose to participate in the settlement (by not submitting an Opt-Out Statement) and 659 or 40.2% Opt-in Class Members submitted Claim Forms, for a combined participation rate of 70.5%.  *Id.* ¶¶ 14, 26, 27.  The Settlement Administrator fielded 103 calls and 131 emails from Class Members regarding the Settlement.  *Id.* ¶ 25.  Class Counsel responded to inquiries from 66 Class Members.  Brooks Decl. ¶ 30.

No Class Member opted out of the Settlement.  Brooks Decl. ¶ 31.  One Class Member submitted a statement both opting out and objecting to the Settlement because she believes her settlement share is too low.  Grayson Decl. ¶¶ 23-24; Brooks Decl. ¶ 31; Grayson Decl. Ex. 15 (Rodgers Objection).  Settlement Administrator and Class Counsel contacted the Class Member and notified the Objector that she could not both opt out and object.  Grayson Decl. ¶ 24; Brooks Decl. ¶ 32.  The Objector chose not to opt out of the Settlement and instead participate and assert

---

[6]     The Court's September 7, 2023 Order approved the parties' proposed notice regarding the change of the Final Fairness Hearing date.  ECF No. 167.  The parties coordinated with the Settlement Administrator to send out the notice in September 2023.  Grayson Decl. ¶ 13.  However, just recently, on December 29, 2023, Class Counsel learned that the Settlement Administrator, in error, only sent the notice to the Opt-in Class Members.  Brooks Decl. ¶ 28.  This error should not result in prejudice to any party.  The January 9, 2024 Final Fairness Hearing date appears on the settlement website.  *OTG Tipped Worker Case*, https://otgtippedworkercase.com/.  Further, no Class Member except Objector Rodgers submitted an objection stating an intention in appearing at the Final Fairness Hearing, and Objector Rodgers was informed of the change of the date of the Final Fairness Hearing.  *See* Settlement Agreement § 2.7(D)(i) (stating that objectors must state intention to appear at Fairness Hearing); Brooks Decl. ¶ 33.

her objection.  Brooks Decl. ¶ 33.  For the reasons discussed *infra*, Class Counsel respectfully requests that the Court overrule this objection.

If the Court grants final approval of the Settlement, the parties will proceed as follows. Within seven days of the Effective Date, OTG will pay the Maximum Total Amount ($1,550,000) plus the additional amount of $35,823.99, into a Qualified Settlement Fund, and within 14 days of the Funding Date, the Settlement Administrator will distribute checks to all Settlement Class Members.  *Id.* §§ 1.15, 3.1(B), 3.1(C).  They will have 120 days to cash their check.  *Id.* §§ 1.4, 3.4(E).  The Settlement Administrator will distribute a reminder postcard by e-mail, text message, and U.S. mail 30 days after the initial mailing of Settlement Checks.  *Id.* § 3.4(F).  Any uncashed amounts will be redistributed to Participants.  *Id.* § 3.5(A).  If redistribution of the funds is economically impractical; however, the remaining funds will be donated to the *cy pres* designee, Make the Road New York.  *Id.* § 3.5(B).

## ARGUMENT

## I.    Judicial Policy Favors Settlement.

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and quotations omitted), *superseded by statute on other grounds as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Public policy considerations strongly favor settlement in class actions.  *Wal-Mart*, 396 F.3d at 116.

## II.   The Rule 23 Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine whether "the class representatives and class counsel have adequately represented the class," and whether "the proposal was negotiated at arm's length."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts must consider whether "the relief provided for the class is adequate," considering specific factors enumerated in Rule 23(e)(2)(C), and whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  To guide analysis of these requirements, courts consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In making its fairness determination, courts recognize the "unique ability of class and defense counsel to assess the potential risks and rewards of litigation. . . . "  *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *6-7 (S.D.N.Y. May 7, 2015).

## A.    The Settlement Is Procedurally Fair.

To find a settlement procedurally fair, reviewing courts "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted); *superseded by statute on other grounds as stated in Moses*, 79 F.4th at 243; *see also* Fed. R. Civ. P. 23(e)(2)(B).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ.

10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).  Additionally, the court must determine whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P 23(e)(2)(B).  "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

Here, the settlement negotiations between the parties reflect a procedurally fair process. The negotiations were adversarial, stopping and starting over more than a year; involving two full-day mediations and multiple follow-on sessions, conferrals, and communications; including multiple settlement proposals; and were facilitated by experienced, neutral mediators.  Brooks Decl. ¶¶ 14-19.  Specifically, the Parties attended two full-day mediation sessions, first with a private mediator and later with Magistrate Judge Netburn, who assisted the parties in a third and fourth session before they reached agreement.  *Id.* ¶ 18.  The Named Plaintiffs were engaged in the settlement process over the course of the negotiations, including meeting with Class Counsel ahead of each mediation and remaining available for phone calls during each mediation session to discuss the status of the negotiations.  Following each mediation, the Named Plaintiffs conferred with Class Counsel regarding settlement strategy and next steps.  *Id.* ¶ 56.

At all times during this process, the parties' respective counsel argued and bargained vigorously on behalf of their clients.  *Id.* ¶ 34.  These arm's-length negotiations involved counsel well-versed in wage and hour and class action law, and "qualified, experienced and able to conduct the litigation."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.  Plaintiffs are represented by lawyers who are recognized as national leaders in complex employment matters,

who have been appointed as class counsel and successfully prosecuted numerous class actions. *See* Brooks Decl. ¶¶ 3-9, 75(a)-(c).  These experienced litigators have endorsed the Settlement. The interests of Plaintiffs are not antagonistic to the Class: they suffered the same injuries and have an "interest in vigorously pursuing the claims of the class."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).[7]  The Court should affirm the procedural fairness of the settlement.

### B.    The Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided an analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 448.  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  In addition, Rule 23(e) directs the Court to consider whether "the relief provided for the class is adequate," considering specific factors overlapping with the *Grinnell* factors,[8] and whether "the proposal treats class members equitably to each other."  Fed. R. Civ. P. 23(e)(2)(C), (D).

---

[7]    Plaintiffs also respectfully direct the Court to their Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's Fees and Costs, filed concurrently with this Motion, which sets out Plaintiffs' efforts on behalf of the Class, and incorporate by reference the arguments therein.

[8]    Those factors are: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing

Here, all *Grinnell* factors strongly weigh in favor of final settlement approval, as addressed in Plaintiffs' Motion for Preliminary Approval and the Court's Preliminary Approval Order. *See* ECF Nos. 163, 165. For the Court's convenience, Plaintiffs summarize those points here, while expanding on *Grinnell* factor 2.

### i. *Grinnell Factors 1, 3, 4, 5, 6, 7, 8 and 9.*

*Grinnell* factor 1 is satisfied because by reaching a favorable settlement before engaging in additional, time-consuming discovery, briefing dispositive motions, and trying the case, because Plaintiffs avoid significant expense and delay and ensure timely relief for the Class. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); Brooks Decl. ¶ 36. *Grinnell* factor 3 is satisfied because the parties completed some discovery, including depositions of the Named Plaintiffs and the exchange of detailed damages data, and thus had more than sufficient information to evaluate the strengths and potential weakness of their claims. *See* ECF No. 163 at 12-13; *see also* Brooks Decl. ¶¶ 15, 17. *Grinnell* factors 4 and 5 are satisfied because, although Plaintiffs believe their claims are meritorious, they also recognize the legal and procedural obstacles they would face in establishing liability and recovering damages at trial. *See* ECF No. 163 at 13-14; *see also* Brooks Decl. ¶¶ 36, 37. *Grinnell* factor 6 is satisfied because OTG would have an opportunity to oppose class certification, move to decertify the FLSA collective and any certified Rule 23 classes, move for summary judgment, and mount a vigorous defense at trial, and Settlement

---

class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

eliminates these risks.  Brooks Decl. ¶ 37.  As to *Grinnell* factor 7, OTG's ability to withstand a greater judgment is a neutral factor, but the Settlement eliminates the risk that Plaintiffs and Settlement Class Members may not recover anything.  *See id.* ¶ 38.

As to *Grinnell* factors 8 and 9, related to the range of reasonableness of the Settlement fund in light of the potential recovery and the risks of continued litigation, these factors also weigh in favor of approval because the outcome negotiated by Class Counsel is significant in light of the risks of the continued litigation.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  Here, the settlement provides for monetary compensation for every Participating Class Member from a fund of $1,585,823.99.  This is a substantial recovery for Class Members, particularly in light of the risks of litigation.  These risks included the risk of losing class certification, having the collective action decertified, losing on the merits, and losing on appeal.  Participants will receive an average payment of approximately $357.35.  Grayson Decl. ¶ 28.

### ii.    *Grinnell Factor 2.*

With respect to *Grinnell* factor 2, Plaintiffs can now apprise the Court that the Class's reaction is exceedingly positive.  The Class Notice, which was sent to approximately 3,323 Class Members, detailed the relief of the settlement, disclosed Class Counsel's fee request and the Named Plaintiffs' service award request, and provided clear instructions on how to exercise one's right to participate (for Opt-in Class Members) or exclude oneself or object to the Settlement (for Opt-Out Class Members).  In response, as of the close of the settlement notice period, no Class Members opted out and only one Class Member objected.  Grayson Decl. ¶¶ 22-

23.  The objection represents less than 1% of the Class.  A number of Class Members affirmatively reached out to Class Counsel and indicated their support.  Brooks Decl. ¶ 30.

The single objection, from Class Member Haille Rodgers ("Objector Rodgers"), a Federal 216(b) Claimant, provides no basis to reject the Settlement under any of the *Grinnell* factors or Rule 23(e).  On its face, her objection appears to take issue with the circumstances of her termination from OTG.  Grayson Decl. Ex. 15 (Rodgers Objection).  These issues are unrelated to the subject matter of this action, and the objection should be overruled on that basis alone.  *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1432 (S.D.N.Y. 1994) (overruling objection to settlement based on potential claims not pled in the action as irrelevant).

To the extent Objector Rodgers' objection is to the *amount* she is set to receive under the allocation formula in the Settlement, the objection should be overruled because she does not provide any persuasive reason why the settlement should be derailed for the other 3,322 Class Members.  All Participants are receiving settlement payments according to an equitable allocation formula based on class definition and number of workweeks, as part of a Settlement of a protracted litigation with significant risk to any recovery at all.  Brooks Decl. ¶ 22.  The objection does not take into account the "risks, costs, protraction and vagaries of litigation," *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 Civ. 3334, 2023 U.S. Dist. LEXIS 131029, at *15 (E.D.N.Y. July 28, 2023), and provides no reason "to overcome the deference that should be given to the rational allocation of benefits that has been negotiated by counsel for the parties." *Ayers v. SGS Control Servs.*, Nos. 03 Civ. 9078, 06 Civ. 7111, 2008 U.S. Dist. LEXIS 69307, at *17 n.4 (S.D.N.Y. Sept. 8, 2008) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 65 (S.D.N.Y. 2003)).  The objection should be overruled.

17

Even accounting for the lone objection, "the fact that the vast majority of class members neither objected nor opted out is a strong indication" of the settlement's fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008); *see also Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 09227, 2019 U.S. Dist. LEXIS 228270, at *14 (S.D.N.Y. Mar. 2, 2020) ("[T]he extremely low number of objectors as a percentage of the Classes strongly supports approval of the settlement."); *Seijas v. Republic of Arg.*, No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398, at *25 (S.D.N.Y. Apr. 27, 2017) ("The low number of objectors supports settlement approval." (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 118).

> ### iii.     Rule 23(e)(2) Additional Considerations.

The settlement also meets the substantive requirements of Rule 23(e)(2) because the monetary and non-monetary relief provided to the Class is more than adequate, and the Parties' agreement treats Class Members equitably to each other. *See* Fed. R. Civ. P. 23(e)(2)(C), (D).

*First*, the relief provided to the Class is fair and reasonable for the reasons discussed as to *Grinnell* factors 1, 4, 5, and 6, especially in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). The Settlement provides Class Members with a fair and reasonable monetary recovery in exchange for a release covering the claims in the Litigation.

*Second*, the proposed method of distributing the relief to Class Members is effective and Class Members are "treat[ed] . . . equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). Participants' shares of the Settlement are calculated based on the number of workweeks during the Relevant Period. Settlement Agreement § 3.4. The method of processing claims was fair as well: the Settlement Administrator sent each Class Member the Court-approved notice, including an estimate of each Class Members' settlement amount. *Id.* §§ 2.4(B), 2.5-2.8, Exs. A-D. Class Members had 60 days from the date of mailing (or 30 days

from the date of any remailing) to object to or opt out of the Settlement, and the Settlement

Administrator sent a Reminder Postcard 30 days into the notice period.  *Id.* § 2.9; Exs. A-G;

Grayson Decl. ¶ 15.  Any additional funds left over from the Settlement will be redistributed to

Class Members or paid to *cy pres* recipient Make the Road.  *Id.* § 3.5(B); Brooks Decl. ¶ 21; *see*

*also Grinnell* factors 8 & 9.

*Third*, the relief is adequate because the terms of the proposed award of attorneys' fees,

including timing of payment, is reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed

further in Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's

Fees and Costs, Class Counsel's request for an attorneys' fee award amounting to one-third of

the total settlement is a reasonable amount.  Class Counsel "create[d] a settlement fund for the

benefit of a class [and] are entitled to be compensated for their services," *Maley v. Del Global*

*Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  The "(1) the time and labor expended

by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ;

(4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public

policy considerations" all indicate that the fee request is reasonable and fair (again, as further

discussed in Plaintiffs' motion seeking attorneys' fees).  *Wal-Mart Stores, Inc.*, 396 F.3d at 121

(quoting *Goldberger*, 209 F.3d at 50).  Class Counsel's request for attorneys' fees is to be

considered independently from the Court's consideration of "the fairness, reasonableness, and

adequacy of the Settlement" and the outcome of the fee request will not have any effect on the

Settlement.  Settlement Agreement § 3.2(B).

*Fourth*, the agreement required to be identified under Rule 23(e)(3) (the Settlement

Agreement) was made public on June 8, 2023, the date Plaintiffs filed for preliminary approval

of the settlement.  ECF No. 164-1.  Following the Court's grant of preliminary approval, the

Settlement Agreement was available for viewing, downloading, and/or printing by Class

Members on the Settlement website hosted by the Settlement Administrator.  *See* Fed. R. Civ. P.

23(e)(2)(C)(iv); *see also* Grayson Decl. ¶ 17.

    In sum, the *Grinnell* factors – including Plaintiffs' well-developed understanding of the

strengths and weaknesses of the case and the significant risks, expense, and delay of further

litigation – and a consideration of Rule 23(e)(2) conclusively support a finding that the

Settlement is fair, adequate, and reasonable.

### C.    The Settlement Notice Satisfied Rule 23.

    The Notices here, which the Court approved in granting preliminary approval, satisfied

each of the Rule 23(c)(2)(B) requirements and complied with the procedures set forth in the

Court's Preliminary Approval Order.  ECF No. 165; *see also* Fed. R. Civ. P. 23(c)(2)(B).  The

Notice was written in plain language and organized and formatted to be as clear as possible.

Fed. R. Civ. P. 23(e).  It is based on the model notices provided by the Federal Judicial Center

("FJC").[9]  *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132,

at *4, *6 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices).  The

Notice included the Settlement's terms and the proposed attorneys' fees and costs; was sent with

an individualized estimate of each Class Member's Settlement Share; explained how to opt out

or object – or how to submit a Claim Form; and provided the date and time of the Fairness

Hearing.  *See* ECF No. 163 (Settlement Agreement), Exs. A-G (Notices); *see also Soler v. Fresh

Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023), at *18-

19 (approving similar notice).  When the Court rescheduled the Fairness Hearing date, the

---

[9]    *See* FJC, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited August 3, 2023).

Settlement Administrator sent an additional court-approved notice to all Class Members

notifying them of the change, ECF No. 167, and updated the settlement website accordingly. *See*

*Important Dates*, OTG Tipped Worker Case, https://otgtippedworkercase.com/important-

deadlines/ (last viewed Dec. 19, 2023).  This information was adequate to put Class Members on

notice of the proposed settlement and satisfied the requirements of Rule 23(c)(2)(B).

 Class Counsel's efforts to ensure that Class Members received notice of the proposed

settlement (both the original and supplemental notices) have been exhaustive.  First, the Parties

retained Analytics, an established firm specializing in class action settlement administration.

Brooks Decl. ¶ 24; Grayson Decl. ¶ 3.  Before sending the Class Notice and Supplemental

Notice, Analytics ran all addresses through the National Change of Address Database ("NCOA")

maintained by the U.S. Postal Service.  Grayson Decl. ¶ 7.  Analytics then sent the Notice by

U.S. Mail, e-mail, and text message to Class Members. *Id.* ¶¶ 9-11.  For Notices returned as

undeliverable, Analytics conducted an advanced address searched and remailed the notice if an

updated address was found. *Id.* ¶¶ 7, 19.  For the individuals for whom the Settlement

Administrator was not able to locate an updated address, all but six of these individuals received

notice by email or text message. *Id.* ¶¶ 14, 21.  As described above, at minimum, the Class

Notice reached approximately 3,317 of 3,323 Class Members. *Id.* ¶¶ 14, 21.  In sum, the

dissemination of the Class Notice complied fully with the Rule 23 requirements.

 **D.** **Final Certification of the Settlement Class under Rule 23(b)(3) is Appropriate.**

 On June 13, 2023, the Court preliminarily approved the Settlement.  ECF No. 165.  In its

Order, the Court found that Plaintiffs meet "all of the requirements for class certification under

Federal Rule of Civil Procedure 23(a) and (b)(3)" and provisionally certified the Class under

Fed. R. Civ. P. 23(e).  ECF No. 165 ¶¶ 4, 5.  The Court also appointed Outten & Golden LLP as

Class Counsel pursuant to Fed. R. Civ. P. 23(g).  *Id.* ¶ 6.  Since that time, nothing has changed to alter the Court's provisional ruling.  The Class definitions remain the same and cover individuals to whom the Court ordered 216(b) notice in 2021.[10]  Settlement Agreement § 1.3; ECF No. 1; Brooks Decl. ¶ 22.  Moreover, no Class Member has challenged the Court's finding that the elements of Rule 23 are met for purposes of settlement class certification.  For these reasons, final certification of the Settlement Class under Rule 23(b)(3) is appropriate.

## III.    The FLSA Settlement Should Be Approved.

The FLSA portion of the Settlement should also be approved as fair and reasonable.  For Settlements that release FLSA claims, courts routinely employ a one-step approval process because collective actions under 29 U.S.C. § 216(b) do not implicate the same due process concerns as Rule 23 class actions.  *Flores v. Mamma Lombardi's of Holbrook, Inc*., 104 F. Supp. 3d 290, 304 (E.D.N.Y. 2015) (noting that "under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date" (quoting *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 U.S. Dist. LEXIS 6069, at *22 (S.D.N.Y. May 1, 2014))); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA . . . .").  Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23.").

### A.    The Settlement Is Fair and Reasonable and Should Be Approved.

---

[10]    Plaintiffs' Complaint covers all OTG Tipped Workers nationwide, ECF No. 1, but the Court only permitted notice to be sent to Tipped Workers at JFK, La Guardia, and Newark Airports.  ECF No. 39.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes, and regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Flores*, 104 F. Supp. 3d at 304-05 (quoting *Siler v. Landry's Seafood House – N.C., Inc.*, No. 13 Civ. 587, 2014 U.S. Dist. LEXIS 90088, at *19 (S.D.N.Y. June 30, 2014)).  "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved."  *Siler*, 2014 U.S. Dist. LEXIS 90088, at *19 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13.44 (5th ed. 2018) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").  To determine whether an FLSA settlement is "fair and reasonable," courts consider "the totality of the circumstances," including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel;' and (5) the possibility of fraud or collusion."  *Chevalier v. Staffpro, Inc.*, No. 20 Civ. 7006, 2021 U.S. Dist. LEXIS 46965, at *2 (S.D.N.Y. Mar. 12, 2021) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

The Settlement in this case meets the standard for approval.  The Collective Fund of $1,585,823.99, is substantial, especially in light of the considerable risks Plaintiffs and the Participants faced.  Brooks Decl. ¶ 42.  Participants will receive an average estimated gross payment of $357.35.  Grayson Decl. ¶ 28.  This result is particularly strong because it resolves

the claims of approximately 2,110 individuals who do not have claims in this lawsuit at all because they were compelled to arbitration.  ECF No. 147; Brooks Decl. ¶ 37.

The proposed allocation of the Settlement is also reasonable.  It reflects a proportion of damages owed to Participants based on the number of workweeks they worked for OTG during the Relevant Period, which is a reasonable approximation of each Participant's potential recovery.  Settlement Agreement § 3.4; *see, e.g.*, *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *8-9, *47 (S.D.N.Y. May 23, 2014) (approving an allocation formula based in part on number of workweeks class members were employed during the class period).

Second, Plaintiffs faced significant litigation risks, including maintaining the FLSA Collective.  Brooks Decl. ¶ 43.  OTG would have aggressively pursued discovery from Plaintiffs and the FLSA Collective to demonstrate that they – tipped workers – were not similarly situated with respect to their wage claims, and would have moved to decertify the collective.  *Id.* ¶ 43.  If Plaintiffs succeeded in opposing motion, they would face significant risk to surviving the dispositive motions phase and at trial.  *Id.* ¶ 44.  Even if Plaintiffs could maintain collective treatment through trial, at the damages phase Plaintiffs would have to defeat OTG's arguments challenging the number of hours Plaintiffs are owed in unpaid wages, and that the fluctuating workweek applies to any damages calculations.  *See Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89, 90-93 (2d Cir. 2016); Brooks Decl. ¶ 44.  Plaintiffs have achieved a strong result by resolving the FLSA claims of individuals who opted into the lawsuit.

Third, the Settlement was the result of more than four years of litigation before the district court and substantial arm's-length negotiations between experienced counsel assisted by a private mediator and Magistrate Judge Netburn.  Brooks Decl. ¶ 45; *see also, e.g.*, *Torres v.*

*Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144, at *21 (S.D.N.Y.

Dec. 21, 2010) (settlement is result of "contested litigation and arm's length negotiation . . .

[after] the parties engaged in a 19-hour mediation session with an experienced mediator").

Recognizing the uncertain legal and factual issues involved, the parties reached the Settlement

pending before the Court only after attending multiple mediation sessions with two different,

experienced neutrals.  Brooks Decl. ¶¶ 14-19.

Fourth, in addition to the aforementioned reasons for approval, the settlement complies

with the Second Circuit's guidance in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d

Cir. 2015).  The Settlement has been subject to this Court's judicial review and approval, and it

does not contain any of the types of provisions that the Second Circuit found objectionable in

*Cheeks*, such as overly restrictive confidentiality provisions, overbroad releases, or excessive

attorneys' fees.  *See id.* at 206-07.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

Unopposed Motion for Final Approval of Class and Collective Settlement.


Dated: January 2, 2024                              Respectfully submitted,
      New York, New York

                                       Molly A. Brooks
                                       Amy L. Maurer
                                       OUTTEN & GOLDEN LLP
                                       685 Third Avenue, 25th Floor
                                       New York, NY 10017
                                       Telephone: (212) 245-1000
                                       mb@outtengolden.com
                                       amaurer@outtengolden.com

Hannah Cole-Chu*
OUTTEN & GOLDEN LLP
1225 New York Ave NW Suite 1200
Washington, DC 20005
Telephone: (202) 847-4400
hcolechu@outtengolden.com

*Attorneys for Plaintiffs and the Putative Classes
and Collective*

*Admitted *pro hac vice*