# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAFINIS FILHO, RAQUEL ERNEST, and CHANTEL LYNCH, on behalf of themselves and all others similarly situated,**<br><br>     **Plaintiffs,**<br><br>  **-against-**<br><br>**OTG Management, LLC,**<br><br>     **Defendant.** | Case No. 19-CV-8287 (ALC) (SN) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARDS AND CLASS COUNSEL'S FEES AND COSTS

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ........................................................................................................................ 4

I.    The Requested Service Awards Are Reasonable and Should Be Approved. .................... 4

   A.    Named Plaintiffs Expended Significant Time and Effort, Critical to the
         Settlement, Adding Important Value to the Case .................................................... 5

   B.    The Ultimate Recovery Supports the Requested Award ......................................... 7

   C.    The Named Plaintiffs Assumed Risk by Participating in this Case ........................ 8

   D.    The Extensive Mediations Overseen by an Experienced Mediator and the
         Court Reduces the Risk of Collusion Between the Parties ..................................... 9

II.   Class Counsel's Request for Fees in the Amount of One-Third of the Settlement
      Fund Is Fair and Reasonable .......................................................................................... 10

   A.    The Fee Award is Reasonable Under the Percentage of the Fund Method .......... 12

   B.    The Fee Award is Supported by a Lodestar Cross-Check ................................... 12

   C.    The Fee Award Is Supported by the Second Circuit's *Goldberger* Factors ......... 15

         1.    Class Counsel have Expended Extensive Time and Labor on this
               Case of the Highest Quality (*Goldberger* Factors 1 and 4) ..................... 16

         2.    The Magnitude and Complexity of this Litigation, and the Risk
               Class Counsel took in Prosecuting Plaintiffs' Wage and Hour
               Claims, Warrant the Requested Attorneys' Fees (*Goldberger*
               Factors 2 and 3) ........................................................................................ 17

         3.    The Requested Fees are Reasonable in Relation to the Settlement
               (*Goldberger* Factor 5) ............................................................................. 18

         4.    Public Policy Considerations Support the Reasonableness of Class
               Counsel's Requested Fees (*Goldberger* Factor 6) ................................... 19

III.  Class Counsel are Entitled to Reimbursement of Costs .................................................. 21

IV.   The Settlement Administrator Fee Should Be Approved ................................................ 22

CONCLUSION ..................................................................................................................... 23

i

## TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE(S)**

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 18

*Bazignan v. Team Castle Hill Corp.*,
  No. 13 Civ. 8382, 2015 U.S. Dist. LEXIS 27420 ................................................. 14

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................... 16-17

*Braunstein v. E. Photo. Labs., Inc.*,
  600 F.2d 335 (2d Cir. 1975) ........................................................................ 21

*Bredbenner v. Liberty Travel, Inc.*,
  Nos. 9 Civ. 905 et al., 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ......................... 13

*Chang v. Philips Bryant Park LLC*,
  No. 17 Civ. 8816, 2019 U.S. Dist. LEXIS 185297 (S.D.N.Y. Oct. 23, 2019) ................ 22-23

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................. 13

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ........................................................................ 17

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *30
  (S.D.N.Y. May 11, 2010).............................................................................6

*Connolly v. Weight Watchers N. Am. Inc.*,
  No. 14 Civ. 1983, 2014 U.S. Dist. LEXIS 102088 (N.D. Cal. July 21, 2014) ......................... 8

*Delijanin v. Wolfgang's Steakhouse Inc.*,
  2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021) ...................................... 12

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ................................................................................ 19

*In re Dorn*,
  No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 156546 (S.D.N.Y. Sept. 21, 2011) .................. 20

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................ 18

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010)..........................................................6

*Fikes Wholesale, Inc. v. VISA U.S.A., Inc.*,
  62 F.4th 704 (2d Cir. 2023) .................................................................. 10, 11, 14

*Fleisher v. Phx. Life Ins. Co.*,
  No. 11 Civ. 8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ......................... 22

*Flores v. Anjost Corp.*,
   284 F.R.D. 112, 2012 U.S. Dist. LEXIS 85171 (S.D.N.Y. 2012) .......................................... 12

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ........................................................................ 23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174, 187 (W.D.N.Y. 2005), ........................................................................ *passim*

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007) ....................... 18

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ....................... 19

*Goldberger v. Integrated Res.*,
   Inc., 209 F.3d 43 (2d Cir. 2000) ................................................................ 11, 12, 17

*Gonzalez v. Pritzker*,
   No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) ................. 22, 4

*Grace v. Ludwig*,
   484 F.2d 1262 (2d Cir. 1973) ................................................................................ 20

*Guippone v. BH S&B Holdings, LLC*,
   No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ....................... 9

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) .............. 20-21, 9

*Hernandez v. Merrill Lynch & Co.*, *No. 11 Civ. 8472, 2013 U.S. Dist. LEXIS 42681*
   *(S.D.N.Y. Mar. 21, 2013)* ........................................................................ 4, 19

*Hesse v. Godiva Chocolatier*,
   No. 19 Civ. 972, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ......................... 13

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ..................... 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................ 21

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ............... 12, 14

*Khait v.Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ........................... 5

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................................ 10

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ......................................... 14

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 11

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11 Civ. 05669, 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16, 2012) ...................... 4

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................................................ 4

*Meijer, Inc. v. 3M*,
    No. 4 Civ. 5871, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. Aug. 14, 2006) .................... 12-13

*Mohney v. Shelly's Prime Steak*,
    No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ................. 18-19

*de Munecas v. Bold Food, LLC*,
    No. 09 Civ. 440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) ........................ 20

*Norwest Fin., Inc. v. Fernandez*,
    121 F. Supp. 2d 258 (S.D.N.Y. 2000) ................................................................................ 14

*Palacio v. E*TRADE Fin. Corp.*,
    No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) ........................ 20

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ................. 17, 6-7

*Pearlman v. Cablevision Sys. Corp.*,
    No. 10 Civ. 4992, 2019 U.S. Dist. LEXIS 142222, at *26-27 (E.D.N.Y. Aug. 20, 2019)....6, 7

*In re Penthouse Exec. Club Comp. Litig.*,
    No. 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065 (S.D.N.Y. Apr. 29, 2013) .................... 9-10

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................................... 20

*Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*,
    297 F.3d 253 (3d Cir. 2002) .............................................................................................. 15

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010) ............................ 20

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996) ....................................................................................... 17

*Ramos v. Marksue Realty Corp.*,
    586 F. Supp. 488 (S.D.N.Y. 1984) ..................................................................................... 21

*Rasulev v. Good Care Agency, Inc.*,
    No. 16 Civ. 1993, 2017 U.S. Dist. LEXIS 221519 (E.D.N.Y. July 28, 2017) ...................... 20

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................................. 5, 6

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................................................ 14

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70, 883 N.E.2d 990, 854 N.Y.S.2d 83 (N.Y. 2008) ........................................... 21

*Sand v. Greenberg*,
   No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010) ............................ 20

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) .............. 12, 13, 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16 Civ. 6728, 2020 U.S. Dist. LEXIS 128998 ......................................... 21-22

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F. Supp. 525 (E.D. Pa. 1990) ............................................................... 5

*Stock v. Xerox Corp.*,
   516 F. Supp. 3d 308 (W.D.N.Y. 2021) ................................................................ 22

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ......................................................... 12, 19

*Thornton v. East Texas Motor Freight*,
   497 F.2d 416 (6th Cir. 1974) ................................................................ 5

*Times v. Target Corp.*,
   No 18. Civ. 2993, 2019 U.S. Dist. LEXIS 189101, at *13 (S.D.N.Y. Oct. 29, 2019) ............ 6

*Tiro v. Pub. House Invs., LLC, Nos. 11 Civ. 7679, 11 Civ. 8249*,
   2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) .................................... 8

*Torres v. Gristede's Operating Corp.*,
   No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890 (S.D.N.Y. Aug. 6, 2012), ...................... 22

*Velez v. Majik Cleaning Serv.*,
   Inc., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007) ............. 4-5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................. 11, 15-16

*Willix, Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .............. 6, 20, 21

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ..................... 22

## OTHER

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
   10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ............................................................. 5

## INTRODUCTION

Following this Court's preliminary approval of the parties' settlement, and in conjunction with Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement ("Final Approval"), Plaintiffs respectfully move this Court to approve service awards to Named Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch and the requested attorneys' fees and costs associated with the successful prosecution of this action.

First, service awards of $12,000 to Named Plaintiffs Filho, Ernest, and Lynch are appropriate in recognition of the valuable services they rendered on behalf of the Class. The proposed awards are reasonable in light of the relevant precedent, the time and effort Named Plaintiffs spent in furtherance of this action, the result they helped obtain, and the lack of evidence of any collusion between counsel.

Second, Class Counsel requests that the Court award $500,000 in attorneys' fees – representing a portion of the fees Class Counsel have incurred in prosecuting this vigorously-contested case – out-of-pocket costs and expenses of $34,822.70, and settlement administrator fee of $30,598.00. Class Counsel's fees and costs request is fair and reasonable. The requested attorneys' fees represent approximately one-third of the monetary settlement for the Class. This is the percentage to which the Named Plaintiffs agreed in their retainer agreements if the case was settled on a collective or individual basis and is in line with attorneys' fees awarded in this Circuit for employment cases. Declaration of Molly Brooks ("Brooks Decl.") ¶ 62.

Outten & Golden LLP ("O&G"), as Class Counsel, has been without compensation, and its entitlement to payment has been wholly contingent upon achieving a good result. *See id.* ¶ 61. Class Counsel have spent approximately 3,366 attorney, paralegal, and support staff hours investigating, litigating, and negotiating the settlement of this case. *Id.* ¶ 63; Ex. 2 (Lodestar and

Hours Summary Chart).  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $1,739,857.50.  Brooks Decl. ¶ 64.  The requested fee represents approximately 28.7% of Class Counsel's actual lodestar to date.  *Id.*

Lastly, Class Members were apprised of this request for service awards and attorneys' fees and costs in the Court-approved Notices of Settlement ("Notices"), and no Class Member objected to these aspects of the Settlement.  *Id.* ¶ 65; Ex. 4 (Declaration of Shari Lynne Grayson for Analytics LLC ("Grayson Decl.")) ¶¶ 23-24; Grayson Decl. Ex. 15.

For the reasons set forth below, Plaintiffs submit that the attorneys' fees and costs Class Counsel seek are fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken, the significant societal interest in encouraging the attorneys to litigate wage and hour issues, and the substantial result here.

## FACTUAL BACKGROUND

For a detailed statement of this case's history, including the pleadings, class litigation, and settlement negotiations, Plaintiffs refer the Court to their Memorandum of Law in Support of Final Approval, filed contemporaneously with the current motion.  This factual background will focus on the work and contributions of the Named Plaintiffs.

Named Plaintiffs Filho, Ernest, and Lynch made important contributions to the prosecution and fair resolution of this action on behalf of the Class over several years of litigation.  Brooks Decl. ¶ 46.  All three Named Plaintiffs were continuously involved in the prosecution of the case, including a pre-suit investigation and negotiation dating back to early 2019.  *Id.* ¶ 47.  They each brough particular value to the case because none of the Named Plaintiffs executed arbitration agreements with OTG, and Plaintiff Filho's work in New Jersey allowed Plaintiffs to plead a New Jersey Rule 23 class, and Plaintiffs Ernest and Lynch's work in

New York allowed Plaintiffs to plead a New York Rule 23 Class.  *Id.* ¶ 48.

All three Named Plaintiffs participated in multiple interviews during the investigation stage, to aid Class Counsel in assessing the claims, preparing the demand letter, conferring with counsel with OTG prior to filing the lawsuit, and eventually filing the complaint.  Brooks Decl. ¶ 49.  Each Named Plaintiff carefully considered whether to serve as class representative, with the understanding that their names would be on publicly filed court documents and that they would have the responsibility to make decisions in the best interest of the class.  *Id.* ¶ 50.

All three Plaintiffs searched for and provided documents related to their employment with OTG early on in the litigation, and then conducted multiple rounds of additional searches once discovery began in earnest.  Brooks Decl. ¶ 51.  Each Named Plaintiff submitted a declaration in support of Plaintiffs' 216(b) motion and participated in additional interviews with Class Counsel while drafting the declarations.  *Id.* ¶ 52.

The Named Plaintiffs spent a significant amount of time speaking with Class Counsel to allow them to gather information for the initial disclosures and Named Plaintiffs' interrogatory responses.  *Id.* ¶ 53.  Each of the Named Plaintiffs took time off of work to attend approximately three multi-hour deposition preparation sessions and took a day off of work to appear for an all-day deposition.  *Id.* ¶ 54.  Throughout the litigation, the Named Plaintiffs were involved in discussing strategy for each stage of the case.  *Id.* ¶ 55.

During months of settlement negotiations, all three individuals provided Class Counsel with crucial factual information and consulted about settlement strategy.  *Id.* ¶ 56.  They also were in frequent contact with Class Counsel as to the status of negotiations and next steps.  *Id.* ¶ 57.  The Named Plaintiffs reviewed the Settlement Agreement with Class Counsel, and executed it.  *Id*. ¶ 58.

<u>**ARGUMENT**</u>

**I.**    <u>**The Requested Service Awards Are Reasonable and Should Be Approved.**</u>

The requested service awards of $12,000 each to Named Plaintiffs Filho, Ernest, and

Lynch are reasonable given the significant contributions they made to the investigation,

litigation, negotiation, and resolution of the case.  Courts, including the Second Circuit,

consistently hold that in class actions, named plaintiffs and class members who perform

additional work may appropriately receive service awards as compensation for the work they

perform and the serious risks they bear for the benefit of the class.  *See, e.g.*, *Masters v.*

*Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (affirming, in part, district

court's decision granting incentive awards to named plaintiffs, trial witnesses, and class

representatives; recognizing awards were "related to the individual's personal risk and additional

efforts to benefit the lawsuit"); *see also Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472,

2013 U.S. Dist. LEXIS 42681, at *30 (S.D.N.Y. Mar. 21, 2013) (citing cases).

"Service awards are common in class action cases."  *Gonzalez v. Pritzker*, No. 10 Civ.

3105, 2016 U.S. Dist. LEXIS 131277, at *13 (S.D.N.Y. Sept. 20, 2016) (citing *Reyes v.*

*Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 U.S. Dist. LEXIS 115984, at *18 (S.D.N.Y. Aug.

16, 2011)); *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 05669, 2012 U.S. Dist.

LEXIS 166383, at *22 (E.D.N.Y. Nov. 16, 2012).  This is because named plaintiffs play a crucial

role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *See, e.g.*,

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23

(S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current

employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit

of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."

(internal quotation marks omitted) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187

(W.D.N.Y. 2005))); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An*

*Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class*

*Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

     Service awards also serve the important interest of encouraging litigants to bring class

actions, furthering the public policy underlying the statutory scheme – especially in cases of

public benefit.  *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We

also think there is something to be said for rewarding those [employees] who protect and help to

bring rights to a group of employees who have been the victims of [employer wrongdoing].");

*see also In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)

(approving $5,000 award because named plaintiffs "rendered a public service" and "conferred a

monetary benefit" on the shareholder class).

     In examining the reasonableness of service payments, district courts consider several

factors including: (1) the time and effort expended by the plaintiffs in assisting the prosecution of

the case or in bringing added value; (2) the ultimate recovery in vindicating statutory rights; (3)

the personal risk incurred by the plaintiffs; and (4) the potential for collusion between the parties.

*See Frank*, 228 F.R.D at 174; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

    **A.**    **Named Plaintiffs Expended Significant Time and Effort, Critical to the
Settlement, Adding Important Value to the Case.**

     Courts recognize that service awards are "important to compensate plaintiffs for the time

and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming

and continuing as a litigant, and any other burdens sustained by the plaintiff." *Khait v.Whirlpool*

*Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010) (citing

*Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *18

(S.D.N.Y. Mar. 31, 2009); *Roberts*, 979 F. Supp. at 200-01 ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery."); *see also Times v. Target Corp.*, No 18. Civ. 2993, 2019 U.S. Dist. LEXIS 189101, at *13 (S.D.N.Y. Oct. 29, 2019) (approving $2,500 to one plaintiff and $20,000 to another); *Pearlman v. Cablevision Sys. Corp.*, No. 10 Civ. 4992, 2019 U.S. Dist. LEXIS 142222, at *26-27 (E.D.N.Y. Aug. 20, 2019) (citing *Khait*) (awarding $15,000 service awards each to five named plaintiffs and $10,000 service awards each to ten other named plaintiffs); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonable based on the participation of the two individuals in the action to date); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011) (finding service awards of $30,000, $15,000, and $7,500 to various plaintiffs to be reasonable); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *30 (S.D.N.Y. May 11, 2010) (awarding $10,000 service awards each to seven class representatives).

Named plaintiffs bring important factual knowledge to wage and hour class actions, including information about employer timekeeping and compensation policies and practices that affect class members. *See Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *5 (S.D.N.Y. Feb. 9, 2010) (awarding service payments where

plaintiffs met with counsel, reviewed documents, formulated case theory, identified and located other class members, and attended court proceedings); *Frank*, 228 F.R.D. at 187 (recognizing that plaintiffs are the "primary source of information concerning the claims").

As discussed above, the Named Plaintiffs contributed significant time and effort to the case by: providing Class Counsel with factual information regarding the claims in the case to enable Class Counsel to file the complaint; preparing and filing declarations in support of Plaintiffs' 216(b) motion; assisting Class Counsel in preparing the initial disclosures; providing relevant documents in their possession; working with Class Counsel to provide interrogatory responses; dedicating more than a dozen hours to preparing and appearing for their depositions; assisting during months of investigation and negotiations; helping Class Counsel to prepare for three mediation sessions and assisting in the factual investigation and settlement negotiations; and reviewing and executing the settlement agreement. Brooks Decl. ¶¶ 46-58. The time, effort, and contributions that Named Plaintiffs Filho, Ernest, and Lynch made on behalf of the Class support the requested service payments.

### B. The Ultimate Recovery Supports the Requested Award.

This litigation was hard-fought and involved substantial risk, and the Settlement that the Named Plaintiffs helped achieve supports the requested service awards. OTG mounted a strong defense to the claims Plaintiffs asserted at every stage of the litigation. Brooks Decl. ¶ 34. Additionally, and importantly, the Settlement resolves claims on behalf of hundreds of individuals who were dismissed from the lawsuit and compelled to arbitration. Brooks Decl. ¶ 13. Given the outcome achieved, and the key role of the Named Plaintiffs in securing that settlement, the requested service awards are reasonable and fair.

**C.      The Named Plaintiffs Assumed Risk by Participating in this Case.**

In the workplace context, where individuals are often rejected for employment if they are considered "trouble makers," workers who sue companies are particularly vulnerable to retaliation.  *See Frank*, 228 F.R.D. at 187-88 (purpose of representative fee includes compensation for the multiple retaliation risks borne in filing suit against former employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *42 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs "face potential risks of being blacklisted as 'problem' employees").  "Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny" and that service awards are "particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 U.S. Dist. LEXIS 129258, at *33 (S.D.N.Y. Sept. 10, 2013) (quoting *Frank*, 228 F.R.D. at 187).

Although the Named Plaintiffs were not employees of OTG when they participated in this case, all three nevertheless faced the risk that their current or future employers might discriminate or retaliate against them for being involved in this case if and when they learned of their involvement in the lawsuit, which has been on the public record since September 2019. Brooks Decl. ¶ 59; *see also Connolly v. Weight Watchers N. Am. Inc.*, No. 14 Civ. 1983, 2014 U.S. Dist. LEXIS 102088, at *13 (N.D. Cal. July 21, 2014) (noting that workers take on "the risk of being stigmatized or disfavored by their current or potential future employers by suing their employer").

Even where, as here, there has been no evidence of retaliation, named plaintiffs in wage

and hour litigation merit recognition for assuming the potential risk by connecting their names to the case. *See Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that [defendant] has or will take retaliatory action towards either [named plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."). The very "fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone*, 2011 U.S. Dist. LEXIS 126026, at *20. Especially where, as here, "a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *27 (S.D.N.Y. May 23, 2014).

### D. The Extensive Mediations Overseen by an Experienced Mediator and the Court Reduces the Risk of Collusion Between the Parties.

Lastly, the service payment is reasonable in light of the parties' extensive settlement negotiations, overseen by a third-party mediator and Magistrate Judge Sarah Netburn, which supports a finding that the parties were not in collusion during the settlement process.

Courts find collusion less likely when settlement negotiations are conducted by a third-party mediator. *See In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y. Apr. 29, 2013) (finding proposed class settlement non-collusive, as a settlement "reached with the help of third-party neutrals enjoys a 'presumption that the settlement achieved meets the requirements of due process'" (quoting *Johnson v. Brennan*, No.

10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *22 (S.D.N.Y. Sept. 16, 2011))).  Where there

is no evidence of "any collusion between counsel," such a finding supports awarding service

payments.  *Pearlman*, U.S. Dist. LEXIS 142222, at *27 ("These awards, along with the rest of

the Settlement, were negotiated under Mediator Holwell's supervision, which carries a

presumption that the amounts are reasonable and the result of arm's-length negotiations.");

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (granting service awards

where there "do[es] not appear to have been the result of any collusion between counsel").

      Here, the parties agreed to, and participated in, four mediation sessions and a follow-on

session over the course of more than a year.  Brooks Decl. ¶¶ 16-18.  Throughout the entire

process, the parties met and conferred (via telephone and email) with the mediator to facilitate

the settlement discussions.  *Id.* ¶ 19.  Only after three full-day mediation sessions, and a fourth

follow-on session, did the parties finally have an agreement in principle, and it was another

nearly four months until the parties negotiated and executed the long-form agreement.  *Id.* ¶¶ 16-

19.  Such extensive negotiation and mediation overseen by a third-party mediator dispels the

worry that the settlement was a product of collusion and supports the service award requested

here.

## II.   Class Counsel's Request for Fees in the Amount of One-Third of the Settlement Fund Is Fair and Reasonable.

      Class Counsel are entitled to reasonable attorneys' fees to compensate them for their

work on behalf of the Class.  *See Fikes Wholesale, Inc. v. VISA U.S.A., Inc.*, 62 F.4th 704, 723

(2d Cir. 2023) ("It is well-established under the common fund doctrine that 'attorneys who create

a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that

fund.'" (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d

Cir. 2010))).  As explained below, their request of one-third of the settlement fund is within the

average for fee awards approved by courts, including in this Circuit in similar cases.  In

accordance with the retainer agreements providing for fees at one-third, and case law in this

Circuit, an award of $500,000 in attorneys' fees and reimbursement of actual litigation expenses

is reasonable and appropriate.  In setting a reasonable fee, district court judges may use "either

the lodestar amount . . . or a percentage of the fund."  *Fikes*, 62 F.4th at 723.  Under either

method, the requested fees are appropriate.

### A.       The Fee Award is Reasonable Under the Percentage of the Fund Method.

"Class counsel who create a settlement fund for the benefit of a class are entitled to be

compensated for their services from that settlement fund."  *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  "What constitutes a reasonable fee is properly

committed to the sound discretion of the district court."  *Goldberger v. Integrated Res., Inc.*, 209

F.3d 43, 47 (2d Cir. 2000).  The Second Circuit confirmed this year that the "trend in this

Circuit" is to "apply[] the percentage method," *Fikes*, 62 F.4th at 723, which "directly aligns the

interests of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396

F.3d 96, 122 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002

U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002)).  A common fund percentage fee

may be "less than, equal to, or greater than the lodestar."  *Fikes*, 62 F.4th at 727 (quoting *Fresno

County*, 925 F.3d at 68).

Here, the Court should use the percentage-of-the-fund method and award fees equal to

one-third of the settlement amount for the Class because Class Counsel's work succeeded in

reaching a settlement benefiting Plaintiffs and Class Members.  A percentage-of-the-fund fee

award will encourage other plaintiffs' lawyers to prosecute public interest cases like this one.

*See infra* Part II.C.4 (discussing public interest considerations).  Courts appropriately compensate counsel with one-third of the settlement fund in similar settlements, and in other class action settlements more generally.  *See Delijanin v. Wolfgang's Steakhouse Inc.*, 18 Civ. 7854, 2021 U.S. Dist. LEXIS 27462, at *20 (S.D.N.Y. Feb. 12, 2021) (approving one-third fee award in FLSA collective action); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 2012 U.S. Dist. LEXIS 85171, at *22 (S.D.N.Y. 2012) (same; "Class Counsel's request for one third of the settlement fund is reasonable and consistent with the norms of class litigation in this circuit." (citations omitted)).

The percentage method is also closely aligned with market practice because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *42 (quoting *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003)); *see also Sewell*, 2012 U.S. Dist. LEXIS 53556, at *29 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys").

**B.      The Fee Award is Supported by a Lodestar Cross-Check.**

When applying the percentage method to set an attorneys' fee award, as Class Counsel request here, courts may (but are not required to) employ the lodestar method as a "cross-check" of reasonableness.  *Goldberger*, 209 F.3d at 50.  "[T]he resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."  *Meijer, Inc. v. 3M*, No. 4 Civ. 5871, 2006 U.S. Dist. LEXIS 56744, at *79 (E.D. Pa. Aug. 14, 2006)

(quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).

"In determining the lodestar for cross-check purposes, the Court need not engage in a 'full-blown lodestar inquiry,' or 'mathematical precision.'" *Bredbenner v. Liberty Travel, Inc.*, Nos. 9 Civ. 905 et al., 2011 U.S. Dist. LEXIS 38663, at *61-62 (D.N.J. Apr. 8, 2011) (quoting *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006)).  "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013) (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).  "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *37 (quoting *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 175 (W.D.N.Y. 2011)).  The cross-check should also consider the fact that Class Counsel will spend additional time "responding to objections, overseeing the settlement administration process, and potentially litigation of appeals," and thus the lodestar will continue to increase for years after fees are requested, with Class Counsel receiving no additional compensation. *Hesse v. Godiva Chocolatier*, No. 19 Civ. 972, 2022 U.S. Dist. LEXIS 72641, at *41 (S.D.N.Y. Apr. 20, 2022).

Here, the accompanying attorney declaration sets forth the hours of work and billing rates used to calculate the lodestar.  As described in that declaration, Class Counsel and its staff have devoted a total of approximately 3,366 hours to this action, resulting in an aggregate lodestar of $1,739,857.50.  Brooks Decl. ¶¶ 63, 64; *see also* Brooks Ex. 2 (Lodestar and Hours Summary

Chart).[1]  Class Counsel's requested fee of $500,000 represents only approximately 28.7% of its actual lodestar to date – a negative multiplier.  Brooks Decl. ¶ 66; *cf. Fikes*, 62 F.4th at 726-27 (affirming district court fee award with 2.45 multiplier); *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *37 (stating that fee requests with multipliers of 2 or 3 to be reasonable); *In re Lloyd's*, 2002 U.S. Dist. LEXIS 22663, at *81 (S.D.N.Y. Nov. 26, 2002) (multiplier of 2 "at the lower end of the range" of reasonable).  These hours are more than reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff working on the case.  *Id.* ¶ 68.

Courts in this Circuit have repeatedly approved hourly rates like Class Counsel's as reasonable.  *See* Brooks Decl. ¶ 67.  Further, the rates sought by Class Counsel are routinely paid by clients seeking hourly attorney work, including on wage and hour matters.  *See id.* ¶ 67; *Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2000) (rejecting challenge to reasonableness of fee request where counsel provided declaration indicating that client was "billed on the basis of services provided at fixed hourly rates which were charged at [counsel's] usual and customary rates"); *see also Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382, 2015 U.S. Dist. LEXIS 27420, *11 (S.D.N.Y. Mar. 5, 2015) (attorney's "customary hourly rate" among factors to be considered in determining lodestar (quoting *Arbor Hill*, 522 F.3d at 186 n.3))); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (stating that actual rates charged to clients provides "strong evidence of what the market will bear" and collecting cases).

At all times, Class Counsel used a small team of core attorneys in order to minimize

---

[1]      Class Counsel are prepared to provide detailed time entries upon request of the Court.

duplication of efforts and maximize billing judgment and made every effort to have the work

performed by the attorney or paralegal with the lowest hourly rate who was able to perform it

effectively.  Brooks Decl. ¶ 68.  In addition, Class Counsel's contemporaneous time records were

carefully reviewed and duplicative work, as well as *de minimis* time billed by attorneys and staff

who had little participation in the action, was removed (for example, Class Counsel proactively

removed any attorneys or staff who worked fewer than five hours on this matter).  *Id.*

As outlined above and in the exhibits attached to the Brooks Declaration, Class Counsel's

time was spent on tasks necessary to the successful prosecution of this wage and hour class

action.  *Id.* ¶ 69.  The lawyers involved in negotiating the settlement collectively have decades of

experience with wage and hour litigation and settlements, and all of that experience was brought

to bear to achieve the results of this case.  *Id.*  ¶¶ 9, 74.  Even so, Class Counsel prosecuted the

claims at issue efficiently and effectively, making every effort to prevent the duplication of

work.[2]

### C.  The Fee Award Is Supported by the Second Circuit's *Goldberger* Factors.

Regardless of which method is used, courts in this Circuit routinely consider six factors

identified by the Second Circuit in *Goldberger* in evaluating the reasonableness of an attorneys'

fee award: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of

the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested

fee in relation to the settlement; and (6) public policy considerations."  *Wal-Mart Stores, Inc.*,

---

[2]     It is standard practice for multiple lawyers to work on a case, particularly a class action
and settlement of this scope and complexity, and to seek attorneys' fees.  *See Planned
Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (multiple fee
awards appropriate because "magnitude of the case mandated the help of numerous attorneys for
both Parties[]" and staffing was appropriate given "complexity and specialized medical
knowledge necessary for the proper presentation of this case").

396 F.3d at 121 (quoting *Goldberger*, 209 F.3d at 50).  These factors support the fees requested here.

> **1.      Class Counsel have Expended Extensive Time and Labor on this Case of the Highest Quality (*Goldberger* Factors 1 and 4).**

As described above, Class Counsel expended significant effort to achieve this settlement. Class Counsel engaged in a substantial investigation that included a thorough investigation into OTG's compensation and timekeeping practices and interviews with multiple witnesses.  Brooks Decl. ¶ 10.  Following the filing of their Complaint, Plaintiffs vigorously prosecuted this action, by filing an early 216(b) motion; overseeing the opt-in notice administration, during which more than 700 individuals joined the case; opposing OTG's motion to compel arbitration – including by interviewing dozens of witnesses and collecting a dozen declarations regarding OTG's arbitration program; briefing a request to include late opt-in plaintiffs in the collective; engaging in extensive ESI negotiations; preparing and defending the depositions of the Named Plaintiffs; reviewing documents; collecting documents and interrogatory responses from Opt-in Plaintiffs, fielding hundreds of inquiries from class members over the duration of the case, preparing for three full-day mediations; negotiating the term sheet and long-form settlement agreement. Brooks Decl. ¶¶ 12-19, 70.  Thereafter, Class Counsel spent significant time working to secure preliminary approval of the settlement and supervise the notice process.  *Id.* ¶¶ 24-30.

The requested fee, however, is not based solely on time and effort already expended.  It is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  Brooks Decl. ¶ 71.  In Class Counsel's experience, overseeing the final steps of the settlement process will require an ongoing substantial commitment.  *Id.*; *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions,

answering questions from the claims administrator, and negotiating and sometimes litigating

disagreements with defendants about administering the settlement and distributing the fund.");

*Parker*, 2010 U.S. Dist. LEXIS 12762, at *7-8 ("[A]s class counsel is likely to expend significant

effort in the future implementing the complex procedure agreed upon for collecting and

distributing the settlement funds, the multiplier will diminish over time.").  Class Counsel

anticipate that they will incur significant additional fees interacting with the settlement

administrator and fielding Class Members' questions.  Brooks Decl. ¶ 72.  Class Counsel's

lodestar will also grow as they continue to finalize the settlement process, prepare for the

Fairness Hearing, and handle Class Member questions after approval.  *Id.* ¶ 73.

Accordingly, these factors support the reasonableness of Class Counsel's fee request.

### 2. The Magnitude and Complexity of this Litigation, and the Risk Class Counsel took in Prosecuting Plaintiffs' Wage and Hour Claims, Warrant the Requested Attorneys' Fees (*Goldberger* Factors 2 and 3).

The size and difficulty of the issues in a case is a significant factor to be considered in

making a fee award.  *See Goldberger*, 209 F.3d at 51, 53; *In re Prudential Sec. Inc. Ltd. P'ship*

*Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996).  Moreover, uncertainty that an ultimate

recovery will be obtained is highly relevant in determining the reasonableness of an award.  *See*

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974), *abrogated on other*

*grounds by Goldberger*, 209 F.3d at 49.  "[D]espite the most vigorous and competent of efforts,

success is never guaranteed."  *Id.* at 471.

Here, Class Counsel respectfully posit that they achieved excellent results in this complex

wage and hour matter, while risking the possibility of receiving nothing for their efforts.  Cases

for unpaid wages based on off-the-clock work are complex, fact-intensive cases that typically

require a significant record to establish the propriety of class certification, liability, and damages.

Brooks Decl. ¶ 76.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with more than 3,000 putative Class Members, and fact-intensive FLSA, NYLL, and NJWHL claims involving the OTG's liability for work Class Members performed off-the-clock.  Brooks Decl. ¶ 77.

Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Brooks Decl. ¶ 61.  As shown by the history of this litigation and as discussed at length in Plaintiffs' Final Approval brief, wage and hour cases of this type are, by their very nature, complicated, time-consuming, and subject to risk.  Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class Counsel stood to gain nothing in this case if it was unsuccessful.  *Id.*  In addition, when taking on this case, Class Counsel faced the risk that the Court would not certify the state law classes, or would decertify the classes – or the FLSA collective – at the close of discovery after extensive discovery and briefing.  In sum, both the complexity and magnitude of the instant claims, as well as the risk undertaken, support finding that Class Counsel's fees are reasonable.

### 3.    The Requested Fees are Reasonable in Relation to the Settlement (*Goldberger* Factor 5).

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at *52 n.41 (E.D.N.Y. Sept. 18, 2007).  Here, a fee of one-third of the settlement fund is reasonable and "consistent with the 'trend in the Second Circuit.'"  *Mohney*,

2009 U.S. Dist. LEXIS 27899, at *16 (citing *Wal-Mart Stores. Inc.*, 396 F.3d at 121 and

collecting cases); *see also Hernandez*, 2013 U.S. Dist. LEXIS 42681, at *31 (awarding

attorneys' fees of one-third of the settlement fund); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05

Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (same).  In contrast to

class settlements of hundreds of millions of dollars, a one-third award of attorneys' fees in this

case would not be a windfall to Class Counsel.  While courts sometimes apply a "sliding-scale"

approach by lowering the percentage awarded in "megafund" cases in order to prevent a windfall

to plaintiffs' attorneys, the $1,500,000 class fund in this case does not trigger such an issue.  *See,*

*e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *25

(S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue

in the same way as would a $100 million settlement . . . .").  In fact, Class Counsel is only

receiving a portion of their total lodestar.

Here, because courts in this Circuit have routinely granted requests for one-third of the

fund in cases with settlement funds similar to this one, the size of the settlement weighs in favor

of granting the requested fee award.

### 4.  Public Policy Considerations Support the Reasonableness of Class Counsel's Requested Fees (*Goldberger* Factor 6).

Public policy considerations also weigh in favor of granting Class Counsel's request.  In

rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have

taken into account the social and economic value of class actions, and the need to encourage

experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F.

Supp. 2d at 399.  Courts have recognized that fee awards serve the dual purposes of encouraging

"private attorney[s] general" to seek redress for violations and discouraging future misconduct of

a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).

Class actions are also an invaluable safeguard of public rights.  *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (many plaintiffs "would have no realistic day in court if a class action were not available"); *c.f. Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973) (noting that courts look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized").  An award of attorneys' fees ensures that plaintiffs' claims will be heard.  *See Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions."  *Id.*; *see also de Munecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 U.S. Dist. LEXIS 87644, at *8-9 (S.D.N.Y. Aug. 23, 2010) (substantively same, citing cases); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *3 (S.D.N.Y. Jan. 7, 2010) (attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

Specific to Plaintiffs' claims, "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."  *Willix*, 2011 U.S. Dist. LEXIS 21102, at *16 (citing *Frank*, 228 F.R.D. at 189); *see also Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993, 2017 U.S. Dist. LEXIS 221519, at *1 (E.D.N.Y. July 28, 2017) (same); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 88019, at *16 (S.D.N.Y. June 22, 2012) (same); *In re Dorn*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 156546, at *16 (S.D.N.Y. Sept. 21, 2011) (same); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (same).  "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Henry*, 2014 U.S. Dist. LEXIS 72574, at *42 (quoting *Willix*, 2011 U.S. Dist. LEXIS 21102, at

*16).  "Adequate compensation for attorneys who protect wage and hour rights furthers the

remedial purposes of the FLSA and the NYLL," and the same is true for the analogous NJWHL

claims.  *Willix*, 2011 U.S. Dist. LEXIS 21102, at *17; *see also Braunstein v. E. Photo. Labs.,

Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (FLSA); *Ramos v.

Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y. 1984) (NYLL); *Samiento v. World

Yacht Inc.*, 10 N.Y.3d 70, 883 N.E.2d 990, 994, 854 N.Y.S.2d 83 (N.Y. 2008) (NYLL).  For

these reasons, public policy considerations support the requested fee award.

### III.   Class Counsel are Entitled to Reimbursement of Costs.

Class Counsel request reimbursement of $34,822.70 of their out-of-pocket expenses to be

paid from the settlement fund.  "Attorneys may be compensated for reasonable out-of-pocket

expenses incurred and customarily charged to their clients, as long as they were 'incidental and

necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*,

302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citation omitted).

Here, Class Counsel's expenses were incidental and necessary to the representation of the

class and are in line with costs charged to individual clients who pay out of pocket.  Brooks Decl.

¶ 78.  These expenses include the cost of administering 216(b) notice to more than 2,000

potential collective members, mediation costs, legal research, deposition transcripts, maintaining

a case website, fees for hosting client and discovery documents on Plaintiffs' document review

platform, filing fees, attorney travel, postage, and printing.  *Id.* ¶ 79; Ex. 3 (O&G Costs

Summary).  Such expenses and costs are routinely granted.  *See, e.g.*, *In re Signet Jewelers Ltd.

Sec. Litig.*, No. 16 Civ. 6728, 2020 U.S. Dist. LEXIS 128998, at *64, 69 (S.D.N.Y. July 21,

2020) (granting reimbursement of expenses, including "expert fees, deposition costs, on-line

legal and factual research, document management and hosting, mediation fees, travel costs, and

photocopying expenses"); *Gonzalez*, 2016 U.S. Dist. LEXIS 131277, at *12-13 (granting

reimbursement of litigation costs, including expert fees); *Fleisher v. Phx. Life Ins. Co.*, No. 11

Civ. 8405, 2015 U.S. Dist. LEXIS 121574, at *76-77, *80 (S.D.N.Y. Sep. 9, 2015) (granting

reimbursement of "fees paid to experts, mediation fees, notice costs, computerized research,

document production and storage, court fees, reporting services, and travel in connection with

th[e] litigation"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS

144327, at *31-32 (S.D.N.Y. Oct. 2, 2013) (approving reimbursement of class counsel's

expenses, "including court and process server fees, postage and courier fees, transportation,

working meals, photocopies, electronic research, expert fees, and plaintiffs' share of the

mediator's fees," finding that they were "reasonable and were incidental and necessary to the

representation of the class"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 U.S.

Dist. LEXIS 127890, at *19 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013)

(awarding reimbursement of costs that included court reporter and document management fees).

The expenses incurred here are reasonable, given the scope of the litigation, the complexity of

the issues, the public interest nature of the claims, and relevant case law.

## IV.    <u>The Settlement Administrator Fee Should Be Approved.</u>

The Settlement provides for payment of the Settlement Administrator's fee.  Settlement

Agreement § 1.21.  Plaintiffs respectfully request that the Court approve payment of the

Settlement Administrator's fee of $30,598.00 to Analytics LLC.  The settlement administration

activities already undertaken and those yet to be conducted (including Settlement distribution)

are necessary to effectuate this Settlement.  Brooks Decl. ¶ 80.  Courts routinely award

administrative costs associated with providing notice to the class.  *See, e.g.*, *Stock v. Xerox

Corp.*, 516 F. Supp. 3d 308, 314 (W.D.N.Y. 2021); *Chang v. Philips Bryant Park LLC*, No. 17

Civ. 8816, 2019 U.S. Dist. LEXIS 185297, at *4 (S.D.N.Y. Oct. 23, 2019) (approving settlement agreement with provision for up to $30,000 in fees for claims administrator), *adopted,* 2020 U.S. Dist. LEXIS 4147 (S.D.N.Y. Jan. 9, 2020); *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ("Courts within this district have awarded up to $50,000 for the settlement claims administrator.").

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully requests that the Court approve service awards to Named Plaintiffs Dafinis Filho, Raquel Ernest, and Chantel Lynch, the requested attorneys' fees and costs to Class Counsel, and the settlement administrator fee.

Dated:  January 2, 2024                              Respectfully submitted,
      New York, New York

                                         _____

                                         Molly A. Brooks
                                         Amy L. Maurer
                                         OUTTEN & GOLDEN LLP
                                         685 Third Avenue, 25th Floor
                                         New York, NY 10017
                                         Telephone: (212) 245-1000
                                         mb@outtengolden.com
                                         amaurer@outtengolden.com

                                         Hannah Cole-Chu*
                                         OUTTEN & GOLDEN LLP
                                         1225 New York Ave
                                         NW Suite 1200B, Washington, DC 20005
                                         Telephone: (202) 847-4400
                                         hcolechu@outtengolden.com

                                         *Attorneys for Plaintiffs and the Putative Classes and Collective*

                                         *Admitted pro hac vice